UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

OAKLAND COUNTY VOLUNTARY
EMPLOYEES' BENEFICIARY
ASSOCIATION, et al., Individually and on
Behalf of All Others Similarly Situated,

                        Plaintiff,

     vs.

GENERAC HOLDINGS INC., et al.,

                        Defendants.

Civil No. 2:22-cv-01436-BHL

<u>CLASS ACTION</u>

---

CALIFORNIA IRONWORKERS FIELD
PENSION TRUST, on Behalf of Itself and All
Others Similarly Situated,

                        Plaintiff,

     vs.

GENERAC HOLDINGS INC., et al.,

                        Defendants.

Civil No. 2:23-cv-00081-BHL

<u>CLASS ACTION</u>

---

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION OF
RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

---

## I.  INTRODUCTION

Two related securities class action lawsuits (the "Related Actions") are pending before this Court, brought on behalf of all purchasers of Generac Holdings Inc. ("Generac" or the "Company") common stock between April 29, 2021 and November 1, 2022, inclusive (the "Class Period").  The Related Actions are *Oakland County Voluntary Employees' Beneficiary Association v. Generac Holdings Inc.*, No. 2:22-cv-01436 (filed on December 1, 2022) and *California Ironworkers Field Pension Trust v. Generac Holdings Inc.*, No. 2:23-cv-00081 (filed on January 20, 2023).  The complaints allege similar claims against identical defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires district courts to resolve consolidation before appointing a lead plaintiff in securities cases.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  As discussed below, because common questions of law and fact are involved in the Related Actions, consolidation is appropriate.  *See* Fed. R. Civ. P. 42(a).

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff."  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  Here, the City Pension Fund for Firefighters and Police Officers in the City of Tampa ("Tampa") should be appointed lead plaintiff because it filed a timely motion in response to a notice, has the largest financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u 4(a)(3)(B)(iii).  In addition, Tampa's selection of Robbins Geller Rudman & Dowd LLP to serve as lead counsel should be approved because the Firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members.

- 1 -

## II.    FACTUAL BACKGROUND

Generac designs, manufactures, and sells power generation equipment, energy storage systems, and other power products for the residential, light commercial, and industrial markets worldwide.  In April 2019, Generac acquired Pika Energy Inc. for an undisclosed sum, which accelerated the Company's expansion in the home energy-storage market.  The component acquired in the Pika Energy transaction was the SnapRS, an inline disconnect device designed to rapidly shut down power to individual solar panels as required by the National Electric Code.  In early 2020, Generac and a Mooresville, North Carolina company now known as Pink Energy (formerly PowerHome Solar) formed a partnership to market Pink Energy solar installations with Generac batteries and system components.

The complaints allege that, throughout the Class Period, defendants made false and/or misleading statements and/or failed to disclose that: (a) Generac had been suffering substantial declines in demand for its legacy generator product offerings, causing the Company to slash product prices by nearly 20% and engage in a massive acquisition spree in an attempt to offset waning demand; (b) SnapRS components being marketed and sold through a partnership with Generac suffered from serious product defect and safety issues; (c) Generac was exposed to significant impending warranty liability related to the Company's participation in the sale of SnapRS components; and (d) as a result, the strength of Generac's business metrics and financial prospects had been grossly overstated and materially misrepresented throughout the Class Period.

On November 2, 2021, Generac missed earnings estimates for the interim period ended September 30, 2021 and lowered its full year fiscal 2021 guidance, blaming the impact of supply chain challenges on margins.  Generac also announced that it was acquiring smart thermostat manufacturer ecobee Inc., which unsettled investors because it would be Generac's sixth recent acquisition and indicated a potential slowdown in the Company's core generator business.  On this

news, the price of Generac shares declined more than 10% over two trading days.

Then, on August 1, 2022, Pink Energy filed a lawsuit against Generac revealing that Generac's "defective" SnapRS components had caused millions of dollars of damage, giving rise to liability that threatened Pink Energy's solvency. The liability created by defective SnapRS components would ultimately force Pink Energy to declare bankruptcy on October 7, 2022, subjecting Generac to additional financial liability. On this news, the price of Generac shares declined further.

Thereafter, on October 19, 2022, Generac revealed that it had missed sales expectations for the third quarter of 2022 and cut its guidance for fiscal 2022. That same day, in the wake of Pink Energy's eventual bankruptcy filing, Generac revealed that it had taken "pre-tax charges totaling approximately $55 million, including approximately $37 million of clean energy product warranty-related matter and approximately $18 million of bad debt expense related to a clean energy product customer that has filed for bankruptcy." ECF 1 at ¶7; *Cal. Ironworkers*, ECF 1 at ¶13. On this news, the price of Generac shares declined by more than 25%.

Finally, on November 2, 2022, Generac released its financial results for the third quarter of 2022, and slashed its sales guidance on its solar energy business for the remainder of the year by approximately 40%. On a conference call with investors and stock analysts held that same day, Generac's CEO attributed the lowered guidance to "the loss of a major customer during the quarter, along with the specific warranty-related issue" – *i.e.*, the defective SnapRS component and the Pink Energy bankruptcy. ECF 1 at ¶8; *Cal. Ironworkers*, ECF 1 at ¶15. On this news, the price of Generac shares declined by an additional 8%, further damaging investors.

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

The PSLRA requires the Court to consolidate the Related Actions before appointing a lead

plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Consolidation pursuant to Rule 42(a) is proper when actions involve common legal and factual questions. *See* Fed. R. Civ. P. 42(a).

Here, the Related Actions assert nearly identical theories of wrongdoing on behalf of purchasers of Generac common stock during the Class Period against identical defendants for alleged violations of the same provisions of the Exchange Act. Consolidation will prevent needless duplication and possible confusion, as well as potentially inconsistent jury verdicts. There is also little or no risk of prejudice to the parties from consolidation. *See generally Goss v. Roadrunner Transp. Sys., Inc.*, 2017 WL 10742612, at *1 (E.D. Wis. May 19, 2017).

Accordingly, the Court should consolidate the Related Actions.

**B.      Tampa Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice in this case was published on December 1, 2022 via *Business Wire*. *See* Declaration of John D. Blythin in Support of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Blythin Decl."), Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa)      has either filed the complaint or made a motion in response to a notice . . .

- 4 -

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Tampa meets these requirements and should therefore be appointed as Lead Plaintiff.

### 1. This Motion Is Timely

The December 1, 2022 statutory notice published on *Business Wire* advised purported class members of the pendency of the first-filed action, the claims asserted, and the right to move the Court for appointment as lead plaintiff by January 30, 2023. *See* Blythin Decl., Ex. A. Additionally, upon the filing of the *California Ironworkers* complaint, counsel published further notice of the pendency of the action, informing the public of the supplemental allegations and the right to move the Court for appointment as lead plaintiff by January 30, 2023. *Id.*, Ex. B. Because Tampa's motion has been timely filed, it is eligible for appointment as lead plaintiff.

### 2. Tampa Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification and loss chart, Tampa purchased 235,000 shares of Generac common stock and suffered $16.2 million in losses, all of which losses are compensable, as a result of defendants' alleged misconduct. *See* Blythin Decl., Exs. C, D. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, Tampa satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. Tampa Satisfies the Rule 23 Typicality and Adequacy Requirements

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). "When identifying the presumptive lead plaintiff, courts usually examine only the 'adequacy' and 'typicality' factors under Rule 23." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 623 n.3 (E.D. Wis. 2009) (citation omitted).

"A plaintiff's claims are typical if they arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 3252221, at *4 (N.D. Ill. July 19, 2019) (cleaned up). Here, like all other class members, Tampa: (1) purchased Generac common stock during the Class Period; (2) was adversely affected by the alleged wrongdoing; and (3) suffered damages thereby. *See* Blythin Decl., Exs. C, D. Thus, Tampa's claims are typical of those of the class.

"'A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously.'" *Diplomat Pharmacy*, 2019 WL 3252221, at *4 (citation omitted). Here, Tampa has a substantial stake in the outcome of the case, indicating that it has the requisite incentive to vigorously represent the class's claims. Also, as further detailed below, Tampa has retained qualified and experienced proposed lead counsel to vigorously prosecute the case on behalf of the class. As such, the Court should find that the adequacy requirement has been met.

Because Tampa filed a timely motion, has a large financial interest in the relief sought by the class, and demonstrated its typicality and adequacy, the Court should adopt the presumption that it is the "most adequate plaintiff."

## C. The Court Should Approve Tampa's Selection of Counsel

The PSLRA entitles the lead plaintiff to select and retain counsel to represent the class,

4860-2512-2380.v2 Case 2:22-cv-01436-BHL    Filed 01/30/23    Page 7 of 10    Document 5

subject to the court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  In this case, Tampa has selected Robbins Geller.[1]

Robbins Geller, a 200-attorney nationwide law firm, regularly practices complex securities litigation in federal courts across the country.  The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues.  Courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.  *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (commenting that the "experience, ability, and reputation" of the attorneys with Robbins Geller "is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country").

Notably, Robbins Geller obtained the largest securities fraud class action recovery in this Circuit.  *See Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery ever following a trial as well as the largest securities class action recovery in the Seventh Circuit).  Further, in the last four years alone, Robbins Geller recovered more than $4 billion on behalf of investors in securities class action cases, including $1.02 billion in *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y.), $1.21 billion in *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG (D.N.J.), $809.5 million in *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314-JST (N.D. Cal.), and $350 million in *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555-DGC (D. Ariz.).  Robbins Geller has also obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Eighth,

---

[1]     For a detailed description of proposed lead counsel's track record, resources, and attorneys, please see https://www.rgrdlaw.com.  A paper copy of the Firm's resume is available upon the Court's request, if preferred.

4860-2512-2380.v2

Tenth, and Eleventh Circuits, as well as a PSLRA class action trial victory in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.[2]

Based upon its counsel's extensive experience and proven track record in securities class actions, Tampa's selection of counsel should be approved.

## IV. CONCLUSION

The Related Actions involve common factual and legal questions and should be consolidated. In addition, Tampa has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, Tampa respectfully requests that the Court grant its motion for consolidation, appointment as lead plaintiff, and approval of selection of lead counsel.

DATED: January 30, 2023   Respectfully submitted,

       ADEMI LLP
       GURI ADEMI
       JESSE FRUCHTER
       JOHN D. BLYTHIN

         S/ John D. Blythin
        JOHN D. BLYTHIN (SBN 1046105)

---

[2] *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit*)*; *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

4860-2512-2380.v2

3620 East Layton Avenue
Cudahy, WI 53110
Telephone: 414/482-8000
414/482-8001 (fax)
gademi@ademilaw.com
jfruchter@ademilaw.com
jblythin@ademilaw.com

Local Counsel

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
SCOTT H. SAHAM
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
scotts@rgrdlaw.com
dmyers@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

KLAUSNER, KAUFMAN, JENSEN
   & LEVINSON
ROBERT D. KLAUSNER
STUART A. KAUFMAN
7080 NW 4th Street
Plantation, FL 33317
Telephone: 954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
stu@robertdklausner.com

Additional Counsel for Proposed Lead Plaintiff

- 9 -