# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

|  |  |
|---|---|
| OAKLAND COUNTY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, and OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiffs,<br><br>    v.<br><br>GENERAC HOLDINGS INC., AARON JAGDFELD, and YORK A. RAGEN,<br><br>                     Defendants. | Case No. 2:22-cv-1436 (BHL)<br><br>Hon. Brett H. Ludwig<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |
| CALIFORNIA IRONWORKERS FIELD PENSION TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>GENERAC HOLDINGS INC., AARON JAGDFELD, and YORK A. RAGEN,<br><br>                     Defendants. | Case No. 2:23-cv-0081 (BHL)<br><br>Hon. Brett H. Ludwig<br><br><u>CLASS ACTION</u> |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE OFFICE OF THE TREASURER AS TRUSTEE FOR THE CONNECTICUT RETIREMENT PLANS AND TRUST FUNDS, INDUSTRIENS PENSIONSFORSIKRING A/S, AND STOREBRAND ASSET MANAGEMENT AS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, <u>AND APPROVAL OF SELECTION OF COUNSEL</u>

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  FACTUAL BACKGROUND ...................................................................................... 3

III. ARGUMENT .............................................................................................................. 5

    A.   The Related Actions Should Be Consolidated ......................................................... 5

    B.   The Institutional Investor Group Should Be Appointed Lead Plaintiff .................. 6

        1.   The PSLRA Standard for Appointing Lead Plaintiff .................................. 6

        2.   The Institutional Investor Group Is the "Most Adequate Plaintiff" ............ 7

            a.   The Institutional Investor Group Has Satisfied the
PSLRA's Procedural Requirements ................................................. 7

            b.   The Institutional Investor Group Has the Largest Financial
Interest in the Relief Sought by the Class ...................................... 8

            c.   The Institutional Investor Group Satisfies Rule 23's
Typicality and Adequacy Requirements ........................................ 9

            d.   The Institutional Investor Group Is Precisely the Type of
Lead Plaintiff Envisioned by the PSLRA .................................... 11

    C.   The Court Should Approve the Institutional Investor Group's Selection of
Counsel ................................................................................................................. 13

IV.  CONCLUSION ......................................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**                                                                                                              Pages

*In re Apache Corp.*,
   No. 4:21-CV-00575, 2022 WL 4277350 (S.D. Tex. Sept. 15, 2022) ..................................... 16

*Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,
   No. 12 C 3297, 2012 WL 5471110 (N.D. Ill. Nov. 9, 2012) ................................................. 13

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)........................................................................................ 11, 13

*Christakis v. Fifth Third Bancorp,*
   No. 20 C 2176, 2020 WL 9720422 (N.D. Ill. June 29, 2020)............................................. 9, 13

*Johnson v. Tellabs, Inc.*,
   214 F.R.D. 225 (N.D. Ill. 2002) ................................................................................... 9, 10

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ................................................. 8

*Plymouth Cty. Ret. Sys. v. Apache Corp.*,
   566 F. Supp. 3d 712 (S.D. Tex. 2021) .......................................................................... 16

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992).......................................................................................... 9

*In re Sadia S.A. Sec. Litig.,*
   No. 08 CIV. 9528 SAS, 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) .................................. 16

*W. Pa. Elec. Emps. Pension Tr. v. Plexus Corp.*,
   No. 07-C-582, 2007 WL 3342593 (E.D. Wis. Nov. 7, 2007) ....................................... 6, 10, 11

**Statutes**

15 U.S.C. § 78u-4(a) .................................................................................................... *passim*
15 U.S.C. § 78j(b) .............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................. 2, 9, 10, 11
Fed. R. Civ. P. 42(a) ...................................................................................................... 5, 6

**Other Authorities**

H.R. Conf. Rep. No. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N.
730........................................................................................................................... 11

Proposed Lead Plaintiff the Office of the Treasurer as Trustee for the Connecticut Retirement Plans and Trust Funds ("Connecticut"), Industriens Pensionsforsikring A/S ("Industriens"), and Storebrand Asset Management AS ("Storebrand," and collectively with Connecticut and Industriens, the "Institutional Investor Group") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for an order: (1) consolidating the above-captioned, related actions (together, the "Litigation"); (2) appointing the Institutional Investor Group as Lead Plaintiff for a class (the "Class") of all investors who purchased or otherwise acquired common stock of Generac Holdings Inc. ("Generac" or the "Company") between April 29, 2021, and November 1, 2022, inclusive (the "Class Period") in the above-captioned actions; and (3) approving the Institutional Investor Group's selection of Saxena White P.A. ("Saxena White") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel and the Cross Law Firm S.C. (the "Cross Firm") to serve as Local Counsel for the Class.

## I.      **PRELIMINARY STATEMENT**

The Institutional Investor Group, which is composed of three sophisticated institutional investors that collectively oversee nearly $180 billion in assets, respectfully submits that it should be appointed Lead Plaintiff on behalf of the Class. The Institutional Investor Group satisfies all of the prerequisites for lead plaintiff appointment under the PSLRA. As set forth in detail below, the Institutional Investor Group incurred losses of more than $15.6 million, as calculated under the widely accepted last-in-first-out ("LIFO") loss calculation method, in connection with its

purchases of Generac common stock during the Class Period.[1]   Accordingly, the Institutional Investor Group has a powerful economic interest in directing the litigation—an interest believed to be greater than that of any competing movant—and recovering the losses suffered by the Class.

The Institutional Investor Group also meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of those of absent class members and it will fairly and adequately represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The Institutional Investor Group is well versed regarding the obligations and responsibilities of the Lead Plaintiff as evinced by exemplary recoveries Connecticut and Industriens have achieved in other securities class actions, is not subject to any unique defenses, and has the incentive, ability, and experience to effectively supervise the prosecution of the Litigation in the best interests of the Class.  Indeed, the PSLRA's legislative history shows that the Institutional Investor Group is composed of precisely the type of institutional investors whose participation in securities class actions the PSLRA was meant to foster.  The Institutional Investor Group has demonstrated its ability to oversee this litigation and its commitment to working cohesively to efficiently prosecute this litigation by conferring before this motion was filed to establish a coordinated strategy for overseeing the prosecution of the Litigation.  *See* Joint Declaration of Douglas C. Dalena, Uffe Berg, and Bård Bringedal in Support of the Motion of the Institutional Investor Group for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel (the "Joint Decl."), Kaplan Decl., Ex. C.  In short, the

---

[1] Certifications that include the Institutional Investor Group's transactions in Generac common stock during the Class Period and assignments reflecting Storebrand's standing to pursue claims on behalf of its funds are attached as Exhibit A to the Declaration of David R. Kaplan in Support of the Institutional Investor Group's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Kaplan Decl."), filed concurrently herewith.  A chart setting forth the Institutional Investor Group's losses is attached as Exhibit B to the Kaplan Decl.

Institutional Investor Group is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

The Institutional Investor Group also respectfully requests that the Court approve its selection of Counsel. The Institutional Investor Group's choice for Lead Counsel, Saxena White and Kessler Topaz, have substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this Circuit and throughout the nation.

## II.   FACTUAL BACKGROUND

Pending before the Court are two securities class actions against (1) Generac, a power-generation equipment company,[2] (2) Aaron Jagdfeld, the Company's Chief Executive Officer, and (3) York A. Ragen, the Company's Chief Financial Officer (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Generac manufactures, markets, and distributes power-generation equipment for home and industrial use. The Company has a Residential Solar Energy Solutions division that sells products through distribution or channel partners, which included Power Home Solar, LLC d/b/a Pink Energy ("Pink Energy") during the Class Period. A key product of Generac's solar energy division is a battery-based storage product called PWRcell, which stores and manages electricity generated from solar panels and includes a rapid shutdown device called SnapRS. The SnapRS component was sold, serviced, and installed in thousands of homes through channel partners, including Pink Energy.

---

[2] Generac is headquartered in Waukesha, Wisconsin. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "GNRC."

3

Throughout the Class Period, the Company touted the success and reliability of its PWRcell systems and claimed that the systems containing the SnapRS component were compliant with applicable regulations. Generac also assured investors of its "robust product safety function," including safety standards and processes. Unbeknownst to investors, the SnapRS component contained serious safety defects that allowed solar panel components to overheat, which at times caused fires and other hazards in homes – defects that could not be fixed with firmware updates from Generac.

The Litigation alleges that during the Class Period, Defendants issued materially false and misleading statements regarding Generac's operations and financial prospects primarily related to its solar energy business. Among other things, Defendants are alleged to have misrepresented and/or failed to disclose: (1) the reliability and safety of its solar products; (2) the full scope of the economic harm flowing from the defective SnapRS units, including by not disclosing them in product liability sections of SEC filings and by not increasing warranty liability charges once Defendants knew of the SnapRS defect; and (3) the Company's outsized dependence on a single channel partner, Pink Energy.

On November 2, 2021, Generac announced disappointing earnings results for its third quarter 2021 that missed projections and lowering its guidance for the Company's fiscal full year 2021 due to purported supply chain issues. The Company also announced an acquisition of a smart thermostat manufacturer. In response to this news, the price of Generac's common stock declined $52.40 per share, or 10.3%, to close at $453.40 per share on November 3, 2021.

On August 1, 2022, Pink Energy filed a lawsuit against Generac, revealing that the Company's "defective" SnapRS components caused millions of dollars of damage, giving rise to liability that threatened Pink Energy's solvency. In response to this news, on August 1, 2022, the

price of Generac's common stock declined $3.71 per share, or 1.2%, to close at $264.99 per share. Pink Energy ultimately declared bankruptcy on October 7, 2022.

Then, on October 19, 2022, Generac published preliminary earnings for its third quarter of 2022, revealing that it had taken $55 million in charges, including approximately $37 million related to increased liability due to defective SnapRS units and approximately $18 million of bad debt expense related to Pink Energy's bankruptcy. In reaction to this news, the price of Generac's common stock declined $37.44 per share, or 25.3%, to close at $110.30 per share that day.

Finally, on November 2, 2022, Generac released its earnings results for the third quarter of 2022 and lowered sales guidance for its solar energy business for the remainder of the year by approximately 40%. On a related conference call, Defendant Jagdfeld attributed the lower guidance to the loss of Pink Energy as a customer. In response to this news, the price of Generac's common stock declined $8.99 per share, or 7.8%, to close at $105.71 per share that day.

Generac's material misrepresentations and omissions, and the revelations thereof, caused the Institutional Investor Group and the Class to incur substantial damages.

## III.  ARGUMENT

### A.    The Related Actions Should Be Consolidated

Two related securities class actions have been filed in this Court against the Defendants. The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.* Rule 42(a) of the Federal Rules of

Civil Procedure ("Rule 42(a)") allows the Court to consolidate actions that involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a).

Here, there are two related actions pending in this District against Defendants: *Oakland County Voluntary Employees Beneficiary Association v. Generac Holdings Inc.*, No. 2:22-cv-01436 (E.D. Wis. filed Dec. 1, 2022); and *California Ironworkers Field Pension Trust v. Generac Holdings Inc.*, No. 2:23-cv-00081 (E.D. Wis. filed Jan. 20, 2023). These actions present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, allege identical Class Periods, and arise out of substantially similar misstatements regarding Generac's operations and financial prospects related to its solar energy business. *See W. Pa. Elec. Emps. Pension Tr. v. Plexus Corp.*, No. 07-C-582, 2007 WL 3342593, at *1 (E.D. Wis. Nov. 7, 2007) (consolidating actions that "involve the same factual allegations and legal issues," the same claims against defendants, and the same class period). Accordingly, consolidation is appropriate under Rule 42(a) and the PSLRA, and the Institutional Investor Group respectfully requests that these actions be consolidated.

**B.      The Institutional Investor Group Should Be Appointed Lead Plaintiff**

**1.      The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B).

First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely

circulated national business-oriented publication or wire service, a
notice advising members of the purposed plaintiff class—

> (I)    of the pendency of the action, the claims asserted therein,
> and the purported class period; and

> (II)    That, not later than 60 days after the date on which the notice
> is published, any member of the purported class may move the court
> to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to
serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).
In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate
plaintiff" is the person or group of persons who: (1) filed a complaint or filed a motion to serve as
lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise
satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may
be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and
adequately protect the interests of the class" or "is subject to unique defenses that render such
plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 2.    The Institutional Investor Group Is the "Most Adequate Plaintiff"

The Institutional Investor Group respectfully submits that it is presumptively the "most
adequate plaintiff" because it has complied with the PSLRA's procedural requirements, possesses
the largest financial interest of any qualified movant, and satisfies Rule 23's typicality and
adequacy requirements.

### a.  The Institutional Investor Group Has Satisfied the PSLRA's Procedural Requirements

The Institutional Investor Group filed this Motion to serve as Lead Plaintiff in a timely
manner. The plaintiffs who filed the first complaint in the Litigation caused notice regarding the

pending nature of this case to be published on *BusinessWire*, a widely circulated, national, business-oriented news reporting wire service, on December 1, 2022. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); Notice, Kaplan Decl., Ex. D. Thus, pursuant to the PSLRA, any member of the proposed Class may apply to be appointed Lead Plaintiff within sixty days after publication of the notice, *i.e.*, on or before January 30, 2023. The Institutional Investor Group filed this motion within the required time frame.

### b. The Institutional Investor Group Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" so long as that movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As evidenced in its certifications and loss chart, during the Class Period, the Institutional Investor Group purchased 117,109 total Generac common shares, purchased 70,404 common shares on a net basis, expended more than $20.2 million on a net basis, and suffered a LIFO loss of $15,667,761. *See* Kaplan Decl., Exs. A, B; *see also Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (setting forth the four factors courts commonly consider in evaluating a movant's financial interest). The Institutional Investor Group is unaware of any other movant seeking appointment as Lead Plaintiff that has a larger financial interest in the outcome of the action and also satisfies the typicality and adequacy requirements of Rule 23. Accordingly, the Institutional Investor Group has the largest financial interest of any qualified movant seeking Lead Plaintiff status and, because it satisfies the applicable requirements of Rule 23, as discussed below, is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### c. The Institutional Investor Group Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at the lead plaintiff stage of the litigation, a lead plaintiff movant must make only a prima facie showing that the requirements of Rule 23 typicality and adequacy are met. *See, e.g.*, *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002) (noting that a movant need only make "a preliminary showing that it satisfies the requirements of Rule 23"); *Christakis v. Fifth Third Bancorp*, No. 20 C 2176, 2020 WL 9720422, at *2 (N.D. Ill. June 29, 2020) (explaining that at the lead plaintiff phase of the litigation Rule 23's "typicality and adequacy elements are the relevant . . . factors" for consideration) (quotation and citation omitted).

### i. The Institutional Investor Group's Claims Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied where a lead plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of class members and his or her claims are based on the same legal theory." *Tellabs, Inc.*, 214 F.R.D. at 228 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

The typicality requirement is satisfied here because the Institutional Investor Group, which is not subject to any unique or special defenses, seeks the same relief and advances the same legal theories as other Class members. Like all members of the Class, the Institutional Investor Group: (1) purchased Generac common stock during the Class Period; (2) at prices that were allegedly inflated due to Defendants' materially false or misleading statements or omissions; and (3) was damaged thereby when the truth was revealed. *See Plexus Corp.*, 2007 WL 3342593, at \*1 (finding "claims and defenses of [movant] are typical of those of the class, as they are based on [movant's] purchase of shares of [company's] common stock during the relevant time period and involve the same legal and factual issues"). As such, the Institutional Investor Group's claims are typical of the Class's claims and satisfy Rule 23(a)(3)'s typicality requirement.

### ii. The Institutional Investor Group Will Fairly and Adequately Protect the Interests of the Class

Pursuant to Rule 23(a)(4), a representative party must demonstrate that it "will fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied when the proposed Lead Plaintiff: (1) has "claims [that] are not antagonistic or in conflict with those of the class"; (2) "has sufficient interest in the outcome of the case to ensure vigorous advocacy"; and (3) "is represented by competent experienced counsel who [will] be able to prosecute the litigation vigorously." *Tellabs*, 214 F.R.D. at 228-29.

The Institutional Investor Group will fairly and adequately represent the interests of the proposed Class. The Institutional Investor Group's interests are aligned with those of the other Class members and are not antagonistic in any way, and there are no facts to suggest any actual or potential conflicts of interest or other antagonism between the Institutional Investor Group and the other Class members. Moreover, as institutional investors with a substantial financial interest in the litigation, the Institutional Investor Group has the resources, experience, and incentive to

faithfully represent the Class and vigorously prosecute the litigation. *See Plexus Corp.*, 2007 WL 3342593, at *2 (noting that an institutional investor's "large stake in the litigation[] makes it well suited to adequately represent the class interests").

The Institutional Investor Group has further demonstrated its adequacy through its selection of Saxena White and Kessler Topaz as proposed Lead Counsel for the Class. As discussed below, Saxena White and Kessler Topaz are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to effectively prosecute complex securities class actions and other forms of shareholder litigation both as sole lead counsel and when working together with each other and other co-lead counsel. Accordingly, the Institutional Investor Group satisfies the adequacy requirement.

### d. The Institutional Investor Group Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, the Institutional Investor Group— three large, sophisticated institutional investors—consists of the very sort of investors Congress sought, through enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. As Congress noted in its PSLRA Statement of Managers Report, the PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. No. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737 (1995)).

The Institutional Investor Group has significant resources and experience, and a substantial financial interest in this litigation. Connecticut has $47.8 billion in net assets under management that it oversees on behalf of approximately 300,000 state and municipal employees. The Office of

the Treasurer of the State of Connecticut, which includes general counsel and other dedicated staff, oversees Connecticut's investments and the prosecution of any litigation in which Connecticut is involved. Similarly, Industriens has approximately $31.5 billion in assets under management on behalf of approximately 400,000 Danish pensioners, and has a dedicated staff responsible for overseeing Industriens's investments and the prosecution of any litigation in which Industriens is involved. Likewise, Storebrand, a leading Nordic asset manager, has approximately $100 billion in assets under management and a team of professionals tasked with overseeing Storebrand's investments and the prosecution of this Litigation.

The members of the Institutional Investor Group are already operating as a cohesive group. As set forth in their Joint Declaration, the members of the Institutional Investor Group have the ability and incentive to vigorously represent the claims of the Class based on its members' past experience as serving as lead and co-lead plaintiff in securities class actions and understanding of the duties of a Lead Plaintiff pursuant to the PSLRA. *See* Joint Decl., ¶ 5; *see also, e.g.*, *In re Waste Mgmt., Inc. Sec. Litig.*, No. 4:99-cv-02183-MH (S.D. Tex.) (Connecticut securing a $457 million recovery); *Washtenaw Cty. Emps' Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-03187 (N.D. Ill.) (Industriens securing a $105 million recovery). The collaboration of the members of the Institutional Investor Group in this Litigation follows from their roles as fiduciaries to their respective members and stakeholders, and their shared goals and interests in protecting and maximizing the assets of pension funds and other institutional investors. *See* Joint Decl., ¶ 7. The Institutional Investor Group is committed to cooperating in the prosecution of this case and has put in place protocols to ensure informed decision-making. *Id.* ¶¶ 8, 10-11, 15. Moreover, before filing this motion, representatives of the Institutional Investor Group discussed, among other things, the lead plaintiff process, the merits of the claims, and the Institutional Investor Group's

common goals and strategy for the joint prosecution of this action (including making logistical arrangements to ensure seamless and efficient joint prosecution of this action and engaged oversight of counsel). *Id.* ¶¶ 9-10; *see also Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing group of institutional investors that jointly sought appointment as lead plaintiff that submitted a joint declaration establishing their ability to adequately "protect the interests of the purported class"). Recognizing that this Litigation will be best guided by institutional investors that are familiar with the requirements attendant upon a fiduciary, the Institutional Investor Group determined to join together to seek appointment as Lead Plaintiff. *See* Joint Decl., ¶¶ 6-8. The members of the Institutional Investor Group also negotiated competitive fee agreements with proposed Lead Counsel, which further demonstrates their ability to safeguard the interests of the Class. *See id.* ¶ 12; *see also Cendant*, 264 F.3d at 265 (stating that a movant's execution of a "reasonable retainer agreement" with competent class counsel is "one of the best ways for a court to ensure that . . . [it] will fairly and adequately represent the interests of the class").

Accordingly, the members of the Institutional Investor Group have already demonstrated their ability to act collaboratively, their understanding of a lead plaintiff's obligations under the PSLRA, and their willingness and ability to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Litigation.

### C. The Court Should Approve the Institutional Investor Group's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *In re Cendant*, 264 F.3d at 274; *see also Fifth Third Bancorp*, 2020 WL 9720422, at *3 ("In approving the lead plaintiff's

selection of counsel, the court reviews the selection deferentially and will only intervene if it is necessary to protect the interests of the plaintiff class.") (quotation and citation omitted). The Institutional Investor Group respectfully submits that its selection of Saxena White and Kessler Topaz as Lead Counsel and the Cross Firm as Local Counsel should be approved. *See* Firm Resumes, Kaplan Decl., Exs. E-G.

Saxena White has achieved substantial recoveries on behalf of investor classes when serving as lead counsel in securities class actions throughout the country. This includes the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 1:10-cv-00990-ER (D. Del.); the $135 million recovery in *Peace Officers Annuity and Benefit Fund of Georgia v. DaVita Inc.*, No. 1:17- cv-00304-WJM-NRN (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-01395-TJC-JBT (M.D. Fla.); the $53 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04 C 7644-RAG (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-cv-02587-ELR (N.D. Ga.); and the $31.9 million recovery in *In re Perrigo Company plc Securities Litigation*, No. 1:19-cv-00070-DLC (S.D.N.Y.). Moreover, Saxena White achieved a settlement valued at $320 million in a derivative action on behalf of Wells Fargo & Company, including a $240 million monetary component that represents the largest insurer-funded monetary recovery in a derivative settlement in history. *See In re Wells Fargo & Co. S'holder Deriv. Litig.*, No. 4:16-cv-05541-ST (N.D. Cal.). Furthermore, as a federally certified woman- and minority-owned firm specializing in representing institutional investors in securities litigation, Saxena White is deeply committed to the important goal of increasing diversity among class counsel.

Kessler Topaz also specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. The firm is actively engaged in complex litigation and has

successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Kessler Topaz is also currently serving as lead or co-lead counsel in several high-profile securities class actions across the country: *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB) (S.D.N.Y.); *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (RMD) (N.D. Ill.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.). Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd sub nom. Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Additionally, Saxena White and Kessler Topaz have experience jointly developing, prosecuting, and settling class action lawsuits under the federal securities laws. For example, both firms filed the initial complaint in *Plymouth County Retirement System v. Apache Corp.*, No. 4:21-

cv-00575 (S.D. Tex.) and, as co-lead counsel, successfully defeated defendants' motions to dismiss claims in their entirety. *See Plymouth Cty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 721 (S.D. Tex. 2021) (appointing Saxena White and Kessler Topaz as co-lead counsel); *In re Apache Corp.*, No. 4:21-CV-00575, 2022 WL 4277350, at *1 (S.D. Tex. Sept. 15, 2022), *memorandum and recommendation adopted sub nom. Plymouth Cty. Ret. Ass'n v. Apache Corp.*, No. 4:21-CV-00575, 2022 WL 17324439 (S.D. Tex. Nov. 29, 2022) (denying defendants' motions to dismiss); *cf. In re Sadia S.A. Sec. Litig.*, No. 08 CIV. 9528 SAS, 2011 WL 6825235, at *4 (S.D.N.Y. Dec. 28, 2011) (approving settlement of investors' claims).

Similarly, the Cross Law Firm is a well-established plaintiffs' law firm that has ably prosecuted numerous complex lawsuits in courts within this District and throughout the nation, and is well-qualified to serve as Local Counsel for the Class. *See* Cross Law Firm's Firm Biography, Kaplan Decl., Ex. G.

Thus, the Court may be assured by granting this Motion that the Class will receive the highest caliber of representation.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Institutional Investor Group respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint the Institutional Investor Group to serve as Lead Plaintiff for the Class; and (3) approve the Institutional Investor Group's selection of Saxena White and Kessler Topaz to serve as Lead Counsel and the Cross Firm to serve as Local Counsel for the Class.

Dated: January 30, 2023

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ David R. Kaplan*
David R. Kaplan
505 Lomas Santa Fe Drive
Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

**SAXENA WHITE P.A.**

Steven B. Singer (*admission pending*)
Rachel A. Avan (*admission pending*)
Alec T. Coquin (*admission pending*)
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com
ravan@saxenawhite.com
acoquin@saxenawhite.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

Naumon A. Amjed (*admission pending*)
Darren J. Check (*admission pending*)
Ryan T. Degnan (*admission pending*)
Karissa J. Sauder (*admission pending*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for the Office of the Treasurer as Trustee
for the Connecticut Retirement Plans and Trust*

17

*Funds, Industriens Pensionsforsikring A/S, and
Storebrand Asset Management AS, and Proposed
Lead Counsel for the Class*

**CROSS LAW FIRM, S.C.**

Mary C. Flanner
SBN: 1013095
Nola J. Hitchcock Cross
SBN: 1015817
The Lawyers' Building
845 N. 11th Street
Milwaukee, WI 53233
Telephone: (414) 224-0000
Facsimile: (414) 273-7055
mflanner@crosslawfirm.com
njhcross@crosslawfirm.com

*Proposed Local Counsel for the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 30, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ David R. Kaplan*