UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

OAKLAND COUNTY VOLUNTARY
EMPLOYEES' BENEFICIARY
ASSOCIATION, et al., Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

GENERAC HOLDINGS INC., et al.,

                    Defendants.

Civil No. 2:22-cv-01436-BHL

<u>CLASS ACTION</u>

CALIFORNIA IRONWORKERS FIELD
PENSION TRUST, on Behalf of Itself and All
Others Similarly Situated,

                    Plaintiff,

    vs.

GENERAC HOLDINGS INC., et al.,

                    Defendants.

Civil No. 2:23-cv-00081-BHL

<u>CLASS ACTION</u>

---

TAMPA'S MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTION

**TABLE OF CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION ............................................................................................................1

II.     ARGUMENT..................................................................................................................2

        A.      Tampa Is the Presumptive Lead Plaintiff...................................................3

        B.      Neither of the Competing Movants Can Trigger the Most Adequate
                Plaintiff Presumption ................................................................................7

                1.      Aside from Its Smaller Financial Interest, the Manner in Which Its
                        Lawyers Created the Store Brand Group Precludes Its
                        Appointment ................................................................................8

                2.      The Store Brand Group Is Subject to Unique Standing Defenses .............11

III.    CONCLUSION..............................................................................................................17

**Page**

**CASES**

*Baydale v. Am. Exp. Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009).................................................................12, 16

*Chandler v. Ulta Beauty, Inc.*,
2018 WL 3141763 (N.D. Ill. June 26, 2018) .......................................................................3

*Chao Sun v. Han*,
2015 WL 2364937 (D.N.J. May 14, 2015).......................................................................9, 10

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) .......................................................................4

*Dang v. Amarin Corp. PLC*,
2022 WL 15524944 (D.N.J. Oct. 27, 2022)........................................................................10

*Domanus v. Locke Lord LLP*,
847 F.3d 469 (7th Cir. 2017) ...........................................................................................13

*Duncan v. Joy Global Inc.*,
No. 2:16-cv-01229 (E.D. Wis. Dec. 20, 2018) ...................................................................6

*Foley v. Transocean Ltd.*,
272 F.R.D. 126................................................................................................................4

*G & G Prods. LLC v. Rusic*,
902 F.3d 940 (9th Cir. 2018) ..........................................................................................13

*Garnett v. RLX Tech. Inc.*,
2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021)......................................................................9

*Goss v. Roadrunner Transp. Sys., Inc.*,
2017 WL 10742612 (E.D. Wis. May 19, 2017).....................................................................3

*Gross v. AT & T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019)..................................................................14, 15

*Gumm v. Molinaroli*,
2016 WL 6680462 (E.D. Wis. Nov. 14, 2016) .....................................................................7

*Hill v. The Tribune Co.*,
2005 WL 3299144 (N.D. Ill. Oct. 13, 2015)........................................................................3

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005).........................................................................3

Case 2:22-cv-01436-BHL   Filed 02/21/23   Page 3 of 24   Document 20

*In re Bard Assocs., Inc.*,
2009 WL 4350780 (10th Cir. Dec. 2, 2009) ............................................................................11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................................7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................ *passim*

*In re The Chemours Co. Sec. Litig.*,
No. 1:19-cv-01911-CFC (D. Del.)........................................................................................15

*In re Cloudera, Inc. Sec. Litig.*,
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)......................................................................10

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................................................6

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)..........................................................................................16

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ..........................................................................................10

*In re IMAX Sec. Litig.*,
2009 WL 1905033 (S.D.N.Y. June 29, 2009) ......................................................................16

*In re Netflix, Inc., Sec. Litig.*,
2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ................................................................15, 16

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)...................................................................................10

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ..........................................................................................16

*Kinney v. Capstone Turbine Corp.*,
2016 WL 5341948 (C.D. Cal. Feb. 29, 2016)......................................................................10

*Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*,
2000 WL 486956 (D.N.J. Apr. 24, 2000) ..............................................................................6

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
No. 1:02-cv-05893 (N.D. Ill.) .................................................................................................6

- iii -

*Lifson v. Assisted Living Concepts, Inc.*,
2012 WL 12929878 (E.D. Wis. Nov. 14, 2012) ..................................................3, 6

*Maiden v. Merge Techs., Inc.*,
2006 WL 3404777 (E.D. Wis. Nov. 21, 2006) ..........................................2, 3, 8, 9

*McDermid v. Inovio Pharm., Inc.*,
467 F. Supp. 3d 270 (E.D. Pa. 2020) ...................................................................14

*Peters v. Jinkosolar Holding Co., Ltd.*,
2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) .........................................................10

*Pipefitters Loc. No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ..........................................................................15

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) ...................................................................2, 3, 5

*Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*,
2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) .........................................................14

*Plymouth Cty. Ret. Ass'n v. Innovative Tech.., Inc.*,
2021 WL 4298191 (S.D.N.Y. Sept. 21, 2021) .......................................................13

*S. Ferry LP No. 2 v. Killinger*,
271 F.R.D. 653 (W.D. Wash. 2011) ......................................................................16

*Smajlaj v. Brocade Commcn's Sys. Inc.*,
2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ........................................................16

*Sokolow v. LJM Funds Mgmt., Ltd.*,
2018 WL 3141814 (N.D. Ill. June 26, 2018) ...........................................................3

*Somogyi v. Organogenesis Holdings Inc.*,
2022 WL 3654646 (E.D.N.Y. Aug. 25, 2022) ..........................................................4

*Sprint Commnc'ns Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008) ..............................................................................................12

*Steamfitters Loc. 449 Pension Fund v. Cent. Euro. Distrib. Corp.*,
2012 WL 3638629 (D.N.J. Aug 22, 2012) .......................................................11, 16

*Takara Trust v. Molex Inc.*,
229 F.R.D. 577 (N.D. Ill. 2005) ..............................................................................3

Case 2:22-cv-01436-BHL    Filed 02/21/23    Page 5 of 24    Document 20

*Teran v. Subaye, Inc.*,
2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011)........................................................................10

*Theodore v. Purecycle Techs., Inc.*,
2021 WL 5259840 (M.D. Fla. Aug. 5, 2021) ....................................................................14, 15

*Trump v. Wis. Elections Comm'n,*
506 F. Supp. 3d 620, 631 (E.D. Wis. Dec. 12, 2020),
*aff'd*, 983 F.3d 919 (7th Cir. 2020), *cert. denied* by _ U.S. _, 141 S. Ct. 1516 (2021) ...........12

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982)................................................................................................................11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2006)...............................................................................................11, 12

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
2019 WL 1171695 (D. Kan. Mar. 13, 2019) ..............................................................................4

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(3)(B)(iii)..........................................................................................................1, 17
§78u-4(a)(3)(B)(iii)(I)..........................................................................................................2, 8
§78u-4(a)(3)(B)(iii)(II) ..........................................................................................................2

Federal Rule of Civil Procedure
Rule 23 ............................................................................................................ *passim*
Rule 44.1 .................................................................................................................13

## LEGISLATIVE HISTORY

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 683...........................................8

## I. INTRODUCTION

Three motions were filed by movants seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Only one satisfies the statutory criteria for appointment: the City Pension Fund for Firefighters and Police Officers in the City of Tampa.

Indeed, Tampa suffered a $16.27 million loss on its Generac Holdings Inc. investment during the Class Period, over $15 million greater than the Kujawiak Family's losses and $600,000 greater than the *collective* loss suffered by an aggregation of entities (Storebrand Asset Management AS ("SAM"), Industriens Pensionsforsikring A/S ("Industriens"), and Office of the Treasurer as Trustee for the Connecticut Retirement Plans and Trust Funds ("Connecticut")) which asks the Court to appoint them as a group (the "Store Brand Group"). And, as an institutional investor that suffered substantial and direct losses from the alleged fraud, Tampa is both typical and adequate and easily satisfies the requirements of Rule 23. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) ("institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements").[1] Importantly, although the statutory "most adequate plaintiff" presumption that lies in favor of Tampa is rebuttable, the statute requires "proof" that Tampa is subject to a unique defense or otherwise incapable of adequately overseeing the case. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). No such proof exists.

In recognition of that fact, the Kujawiak Family – the only movant other than Tampa and the Store Brand Group – has advised the Court it does not oppose the relief requested by Tampa.[2]

---

[1] Unless otherwise noted, all emphasis is added and citations and footnotes are omitted herein.

[2] *See* ECF 19 at 2 ("The Kujawiak Family, through its counsel, has reviewed the competing Lead Plaintiff motions and believes that Tampa, who incurred losses of over $16.2 million on its transactions in Genarac Holdings Inc. stock during the Class Period, has the largest financial interest in this case. The Kujawiak Family also believes that Tampa's claims are typical of those of other Class members, and that Tampa will adequately represent the Class. Accordingly, the Kujawiak Family withdraws their motion and supports the motion of Tampa.").

Aside from claiming a smaller financial interest than Tampa, the record in this case makes clear that the Store Brand Group – 18 separate entities from 4 different countries – was cobbled together "by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *See Cendant*, 264 F.3d at 267. Specifically, the losses of these unaffiliated and geographically dispersed entities were brought together by their proposed lead counsel to surpass the $10 million known loss target published to investors the same day the complaint was filed. *Id.* "The transparency of this maneuver is plain to see. . . . Allowing lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would 'allow and encourage lawyers to direct the litigation.'" *Maiden v. Merge Techs., Inc.*, 2006 WL 3404777, at *3 (E.D. Wis. Nov. 21, 2006). Even assuming such an admittedly lawyer-created group could qualify for the presumption (and it cannot), the Store Brand Group falls far short of the *prima facie* Rule 23 showing required by the statute based on the indeterminate standing of its members. *See* §II.B, *infra*. Consequently, the Store Brand Group's motion should be denied.

By contrast, Tampa is the ideal lead plaintiff: a single institutional investor represented by one lead counsel. Its motion should be granted.

## II. ARGUMENT

"The PSLRA was enacted to combat certain perceived abuses of securities class actions arising out of lawyer-driven lawsuits." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 622 (E.D. Wis. 2009). To that end, the PSLRA creates a presumption that the lead plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Once this presumption is triggered, it can only be rebutted upon a showing that the presumptive lead plaintiff will not fairly represent the interests of the class. *Id.*; 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

### A. Tampa Is the Presumptive Lead Plaintiff

Courts in this District and across the country almost universally agree that "the amount of loss suffered by the plaintiff" is "the most important factor" for determining a movant's financial interest. *Merge Techs.*, 2006 WL 3404777, at \*2; *see also MGIC*, 256 F.R.D. at 624 ("the best way to calculate financial interests in this case is to use each movant's estimation of the 'loss' it suffered"); *Lifson v. Assisted Living Concepts, Inc.*, 2012 WL 12929878, at \*1 (E.D. Wis. Nov. 14, 2012) (evaluating **only** approximate losses suffered); *Goss v. Roadrunner Transp. Sys., Inc.*, 2017 WL 10742612, at \*2 (E.D. Wis. May 19, 2017) (same).[3] Recognizing that reality, each of the movants represented their financial interest by calculating their out-of-pocket loss using the last-in, first-out ("LIFO") accounting methodology. *See* ECF 11 at 5 ("Tampa purchased 235,000 shares of Generac common stock and suffered $16.2 million in losses, all of which losses are compensable, as a result of defendants' alleged misconduct."); ECF 8 at 1 ("the [Store Brand Group] incurred losses of more than $15.6 million, as calculated under the **widely accepted** last-in-first-out ('LIFO') loss calculation method"); ECF 5 at 1 ("As a result of Defendants' alleged wrongdoing, the Kujawiak Family collectively suffered losses of $312,351.").[4] There can be no legitimate dispute, then, that

---

[3] *See generally Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at \*2 (N.D. Ill. June 26, 2018) ("the approximate losses suffered . . . is the most salient factor in assessing the lead plaintiff"); *Chandler v. Ulta Beauty, Inc.*, 2018 WL 3141763, at \*3 (N.D. Ill. June 26, 2018) ("losses suffered . . . is the most critical factor in determining a moving party's financial interest"); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) (in determining largest financial interest, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses"); *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at \*4 (N.D. Ill. Mar. 15, 2005) ("[S]ome of the lead plaintiff candidates who are in the middle of the pack in terms of losses . . . contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period . . . . It is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all . . . . We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.").

[4] *See Hill v. The Tribune Co.*, 2005 WL 3299144, at \*2 (N.D. Ill. Oct. 13, 2015) ("The current majority view, however, apparently is that securities fraud losses should be calculated using

-3-

Tampa possesses the "largest financial interest" in this litigation, more than $600,000 larger than any

movant seeking lead plaintiff status:

| MOVANT | CLAIMED LOSS |
| --- | --- |
| **Tampa** | $16,276,286 |
| Store Brand Group | $15,667,761 |
| Kujawiak Family | $312,351 |

*See* ECF 12-4, 9-2, 6-3.

What's more, Tampa has ***by far*** the largest loss of any ***individual*** class member seeking lead

plaintiff status – more than double the next largest single movant, and more than all other class

members seeking lead plaintiff appointment combined:



LIFO. . . . LIFO is also often used in determining the largest financial interest for purposes of the PSLRA lead plaintiff presumption."); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *5 (N.D. Ill. Apr. 18, 2012) ("[C]ourts in this district and others have preferred LIFO over FIFO as the appropriate method to calculate losses for purposes of appointment a lead plaintiff in a securities fraud case."); *see generally Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 S.D.N.Y. 2011) ("'The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO . . . may exaggerate losses.'"); *Somogyi v. Organogenesis Holdings Inc.*, 2022 WL 3654646, at *4 n.2 (E.D.N.Y. Aug. 25, 2022) ("'[T]he overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses.'"); *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 2019 WL 1171695, at *3 (D. Kan. Mar. 13, 2019) ("the overwhelming majority position and the trend among courts is in favor of LIFO over FIFO for purposes of this lead plaintiff analysis").

-4-

"Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether *that* movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *Cendant*, 264 F.3d at 262. Here, there is no question that Tampa is that movant. *See* ECF 11 at 5-6.

Tampa is a single-employer municipal defined benefit plan that operates for the benefit of police officers and firefighters employed by the City of Tampa. Tampa has more than $2.7 billion in plan assets under management administered for the benefit of more than 3,600 active and retired first responders and their beneficiaries. Tampa is overseen by an independent, nine-member Board of Trustees: three fire members elected by active and retired firefighters, three police members elected by active and retired police officers, and three members of the City administration appointed by the Mayor. Tampa is well-equipped to direct the prosecution of this action as it has a full-time staff, as well as legal personnel who have already expended, and will continue to expend, the time and resources necessary to diligently supervise this litigation. As an institutional investor, Tampa is precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA. *See MGIC*, 256 F.R.D. at 622 (explaining the most adequate plaintiff "presumption was designed to encourage institutional investors, who are more likely to have significant financial holdings at stake as well as greater sophistication and experience in securities matters, to exercise control over the litigation and over counsel"). As such, Tampa is not just highly incentivized to vigorously prosecute this action, but firmly committed to maximizing the recovery for putative class members harmed by the alleged wrongdoing.[5]

---

[5] The fact the Tampa's $16.2 million loss represents 0.60% of Tampa's own total assets illustrates its incentive to vigorously prosecute this case and maximize its recovery in line with the goals of the PSLRA. To compare, the Store Brand Group's claimed loss of $15.67 million amounts to less than 1 basis point (or less than 0.01%) of its claimed collective "$180 billion in assets" overseen. *See* ECF 9-3 at ¶5. Courts have previously expressed concern whether litigants – including one of the

As to typicality, Tampa's claims are typical of the putative class's claims – "[Tampa] purchased stock in [Generac] during the period in question at a value inflated by [Generac's] alleged violations, and suffered as a result thereof." *Lifson*, 2012 WL 12929878, at *1. In addition, Tampa's claims are based on the same legal theories and arise from the same course of conduct that forms the basis of the class's claims. As to adequacy, Tampa's Certification affirms its interest in serving as lead plaintiff and evidences its $16.2 million loss. *See* ECF 12-3. Tampa's substantial financial interest – the largest before the Court – confirms Tampa has the ability and direct financial incentive to vigorously represent the putative class. *See Lifson*, 2012 WL 12929878, at *1 (explaining that court should assess whether movant's "'claims are not antagonistic or in conflict with those of the class,'" "'has sufficient interest in the outcome of the case to ensure vigorous advocacy,'" and whether the movant is "'represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously'"). Notably, Tampa has selected a single lead counsel (Robbins Geller Rudman & Dowd LLP) that is highly qualified to prosecute this securities fraud class action, assisted by experienced local counsel (Ademi LLP). *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 789-90, 797 (S.D. Tex. 2008) (Robbins Geller as sole lead counsel obtaining the largest securities recovery of all time; court finding that "it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country."); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) (Robbins Geller as sole lead counsel securing the largest securities class action recovery ever in the Seventh Circuit); *Duncan v. Joy Global Inc.*, No. 2:16-cv-01229, Transcript at 12, 20-21 (E.D. Wis. Dec. 20, 2018) (After previously approving Robbins Geller as lead counsel, Chief Judge Pepper noting that

---

members of the Store Brand Group – are sufficiently motivated to oversee a securities class action when its loss is a "drop in the bucket" as compared to its total assets. *Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956, at *2 (D.N.J. Apr. 24, 2000) (Refusing to appoint Connecticut as sole lead plaintiff because, *inter alia*, "Connecticut's loss is a drop in the bucket compared to the billions of dollars in pension funds managed by the State Treasurer.").

- 6 -

"this is a pretty extraordinary settlement, recovery on behalf of the members of the class. . . . I've been very impressed with the level of lawyering in the case . . . and with the level of briefing . . . and I wanted to express my appreciation for that and for the work that everyone has done here. . . . [I]t's always a pleasure to work with people who are experienced and who know what they are doing . . . . [Y]our clients were all blessed to have you, [and] not just because of the outcome . . . ."). Because Tampa clearly has the largest financial interest and satisfies Fed. R. Civ. P. 23's requirements, Tampa is the presumptive lead plaintiff.

"Once the presumption has been established, the question is not whether another applicant might do a better job of protecting the interests of the class than the presumptive lead plaintiff. Rather, the question is whether anyone can **prove** the presumptive lead plaintiff will not do a fair and adequate job." *Gumm v. Molinaroli*, 2016 WL 6680462, at \*5 (E.D. Wis. Nov. 14, 2016) (cleaned up). Neither speculation nor innuendo will do. Here, no proof can or will be offered to rebut the presumption that Tampa is the most adequate plaintiff pursuant to the PSLRA. Accordingly, Tampa's motion for appointment as lead plaintiff and approval of selection of counsel should be granted.

B. **Neither of the Competing Movants Can Trigger the Most Adequate Plaintiff Presumption**

Because both competing movants claim smaller losses than Tampa and do not trigger the statutory presumption on that basis alone, the "most adequate plaintiff" inquiry begins and ends with Tampa. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (district courts should not "engage[] in a freewheeling comparison of the parties competing for lead plaintiff"); *Gumm*, 2016 WL 6680462, at \*5.

Even, assuming *arguendo* that the Store Brand Group had suffered the greatest loss (which it did not), it would still be ineligible for the PSLRA presumption.

### 1. Aside from Its Smaller Financial Interest, the Manner in Which Its Lawyers Created the Store Brand Group Precludes Its Appointment

In enacting the PSLRA, Congress explained that the lead plaintiff's role is "to empower investors so that they – ***not their lawyers*** – exercise primary control over private securities litigation." S. Rep. No. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 683. Thus, while the statute expressly permits a "group of persons" to serve as lead plaintiff (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)), as former Chief Judge Randa observed, "[a]llowing lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would 'allow and encourage lawyers to direct the litigation.'" *Merge Techs.*, 2006 WL 3404777, at *3 ("The transparency of this maneuver is plain to see, and it has been consistently rejected by other courts in similar circumstances."); *Cendant*, 264 F.3d at 267 (if the district court "determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class"). Here, there is ample evidence that the Store Brand Group is exactly the type of lead plaintiff candidate that Judge Randa and the Third Circuit warned of a group "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *Id*.

Indeed, the Store Brand Group's own filing confirms that its lawyers were aware that a competing law firm was "advising institutional investors that incurred losses in excess of ***$10 million*** on their Class Period investments in Generac common stock." *See* ECF 9-4 at 2 of 3. Recognizing that none of their respective clients could ***individually*** eclipse the advertised "in excess of $10 million" loss, the Store Brand Group's proposed lead counsel acknowledge they teamed up their clients to do so ***collectively***. *See* ECF 9-3 at ¶7 ("After . . . consulting with counsel, the [Store Brand] Group approved the filing of a joint motion for Lead Plaintiff appointment.").

To be clear, no individual member of the Store Brand Group suffered a loss greater than the known $10 million+ loss advertised in the PSLRA notice:

| Group Member | Law Firm | Claimed Loss | Combined Losses with Previously-Accumulated Class Members | Do Combined Losses Exceed $10 million? |
|---|---|---|---|---|
| Connecticut | Saxena White | $8 million | $8 million | No |
| Industriens | Kessler Topaz | $1.6 million | $9.6 million | No |
| SAM | Kessler Topaz | $6 million | $15.6 million | *Yes* |

Stated differently, had they moved alone, neither firm's clients could have made the representation in their papers that they believed they possessed the largest financial interest. Only by joining forces were they able to do so here, given the known "in excess of $10 million" target to beat.

As illustrated by Judge Randa's opinion in *Merge Techs.* with respect to a post-hoc group, courts regularly "disapprove[] of groups that are created by counsel in an effort to satisfy the largest financial loss requirement." *Chao Sun v. Han*, 2015 WL 2364937, at *3 (D.N.J. May 14, 2015); *Cendant*, 264 F.3d at 267. In fact, "a suggestion that the group was formed to box out an outside candidate for lead plaintiff," is an "indication that the group was formed in bad faith." *Garnett v. RLX Tech. Inc.*, 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021). Put another way, the Store Brand Group's counsel had direct knowledge that their only legitimate chance to be appointed lead counsel was by aggregating their individual smaller-losing clients' losses into a "group" loss that would be larger than the loss of the client of the competing law firm.

Even without evidence that a group (or its lawyers) knew the number to beat, as they did here and in *Merge Techs.*, courts are loath to allow groups of previously unaffiliated constituents to aggregate their losses when there is a competing individual movant that suffered the single largest

loss – here, Tampa.[6] *See Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012) (contrasting "a group that is able to obtain lead plaintiff status only by aggregating the much smaller losses of a number of class members," which "potentially runs afoul" of the PSLRA, with one that "comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward)"); *Dang v. Amarin Corp. PLC*, 2022 WL 15524944, at *7 (D.N.J. Oct. 27, 2022) ("the fact that the individual financial losses of the Amarin Group's members are significantly lower than those of the other individual movants suggests that the group was formed to aggregate individual financial losses"); *Chao Sun*, 2015 WL 2364937, at *4 ("Of primary concern to this Court is the fact that without aggregation of Aerts' and Xi's losses (the figures calculated according to their own methodology), Xi would have suffered less losses than Qu and would be removed from qualification as the presumptive lead plaintiff.").[7]

---

6    That SAM and Industriens representatives purportedly both serve on an "Advisory Board" of an annual "Kessler Topaz conference[]"only underscores that the members of the "group" are tethered to one another by counsel. Not only do such lawyer-driven connections not constitute a sufficient pre-existing relationship among those members, it provides no evidence of a pre-existing relationship among **all** of the "group's" members. *See* https://www.iinow.com/Institutional-Investor-Forums/Rights-and-Responsibilities-Institutional-Investors-2023; https://www.ktmc.com/conferences education/overview. *See generally Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *3 (C.D. Cal. Feb. 29, 2016) ("the Capstone Investor Group presents no evidence, other than the Ouellet brothers, that the four individuals – whose residence spans multiple states – should be presumed cohesive").

7    *See also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y. 2012) ("The Court is particularly skeptical of the proposed amalgamation, because this is not the situation where there is a pre-existing relationship or where the incurred losses of the separate [] investors [composing the group] individually exceed the losses of any other [competing individual movant]."); *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011) ("[W]e note that Hartman has a significantly greater financial interest in the case than any of the individuals that make up the Pilney Group . . . . Thus, it is particularly unnecessary to approve a lawyer-driven amalgamation in this case."); *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6-*8 (N.D. Cal. Dec. 16, 2019) (finding that a "group" of two unrelated institutional investors could not be "'the most adequate plaintiffs' where the members were 'unrelated to each other' until introduced by their lawyers"); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-23 (S.D.N.Y. 2015) ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest does just the opposite. It ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation. Moreover, it creates problems of coordination, risks duplication

- 10 -

On this basis alone, the Store Brand Group's motion should be denied.

### 2. The Store Brand Group Is Subject to Unique Standing Defenses

It is axiomatic that to serve as lead plaintiff, one must have standing to assert claims on behalf of the putative class. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc*., 454 U.S. 464, 472 (1982). As such, "[t]here is no greater impediment to a Plaintiff's ability to prosecute a case than a lack of standing." *Steamfitters Loc. 449 Pension Fund v. Cent. Euro. Distrib. Corp*., 2012 WL 3638629, at *10 (D.N.J. Aug 22, 2012); *see also In re Bard Assocs., Inc.*, 2009 WL 4350780, at *3 (10th Cir. Dec. 2, 2009) (upholding district court's adoption of "a bright line rule requiring lead plaintiff movants to establish Article III standing *by the time the lead plaintiff motions are due*").

Group member SAM is a Norway-based asset manager that did not purchase *any* Generac securities on its own behalf. Its Swedish business is managed by Storebrand Fonder AB (f/k/a/ SPP Fonder AB). The entirety of SAM's roughly $6 million in claimed losses are based on the losses suffered by 11 other legal and/or tax entities organized and operated under a mixture of Norwegian and Swedish law. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2006) (holding that an investment advisor such as SAM "lacks constitutional standing to bring suit for violations of the federal securities laws in its own name but on behalf of its clients").[8]

---

of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent.").

[8]    In contravention of the most fundamental PSLRA disclosure requirement, SAM failed to identify to the Court in its PSLRA Certification that other funds SAM managed made additional transactions and/or incurred gains in Generac securities during the Class Period. *See, e.g.*, Declaration of John D. Blythin in Support of Tampa's Memorandum of Law in Opposition to Competing Lead Plaintiff

Because it is an asset manager, to satisfy the "bedrock" Article III standing requirement, SAM was required to timely demonstrate that it suffered an "injury-in-fact," that it has "legal title to, or a proprietary interest in, the claim." *Huff*, 549 F.3d at 108 (citing *Sprint Commnc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008)). SAM's Certification confirms that it does ***not*** meet this standard. At best, SAM places the Court in a Catch-22: either undertake the requisite far-ranging inquiry requiring complex determinations of Norwegian, Swedish, and New York law without SAM's provision of the requisite law to do so; or blindly accept that SAM has legal title under some undisclosed aspect of Norwegian law simply because SAM says so.[9]

Indeed, 95% of Norway-based SAM's claimed losses were actually suffered by nine funds managed by yet another entity, Storebrand Fonder AB, a Swedish investment company (ECF 9-1 at 11 of 16 n.1). To claim these losses as part of SAM's own financial interest, the Group asks the Court to undertake an assessment of its multi-layered legal structure. ***First***, it summarily invokes the "prudential exception" for Storebrand AB to bring suit on behalf of the nine funds. *Id.* But to adjudicate the applicability of the prudential exception requires the Court to make determinations of Swedish law notwithstanding the Store Brand Group's failure to timely provide the Court with any legal basis under Swedish law to make those determinations, and without requisite notice pursuant to

Motion ("Blythin Opp. Decl."), Exs. 1-2 (reports showing that the Storebrand Global ESG Plus LUX fund, whose transactions were not disclosed in the Store Brand Group's papers, had Class Period transactions in Generac); *see Baydale v. Am. Exp. Co.*, 2009 WL 2603140, at *4 (S.D.N.Y. Aug. 14, 2009) (refusing to appoint Swedish asset manager because, *inter alia*, "LFAB refuses to disclose whether [its ultimate parent] LAB, [affiliate] LB, or any other entity owned by LAB had investments in AMEX stock during the class period. While LFAB argues that transactions by co-owned entities are irrelevant, at the very least, those transactions may result in unique defenses or conflicts relevant to the adequacy inquiry"); *id* at *4 n.3 ("LFAB also failed to disclose transactions by other funds managed by LFAB. These transactions were only disclosed after the Court questioned LFAB at oral argument.").

9    Importantly, it is SAM's burden to establish its standing, not Tampa's burden to disprove it. *Trump v. Wis. Elections Comm'n*, 506 F. Supp. 3d 620, 631 (E.D. Wis. Dec. 12, 2020) (Ludwig, J.), ("To establish standing, plaintiff bears the burden of proving that he '[] suffered an injury in fact . . . .'"), *aff'd*, 983 F.3d 919 (7th Cir. 2020), *cert. denied* by _ U.S. _, 141 S. Ct. 1516 (2021).

Fed. R. Civ. P. Rule 44.1. *See, e.g.*, *Plymouth Cty. Ret. Ass'n v. Innovative Tech.., Inc.*, 2021 WL 4298191, at *5 (S.D.N.Y. Sept. 21, 2021) (finding that foreign asset manager summarily invoking the prudential exception "has not established it has standing to sue on behalf of [its supposed fund] because, *inter alia*," "it has not filed any expert declarations about Austrian law here").[10]



_____

[10] *See Domanus v. Locke Lord LLP*, 847 F.3d 469, 475 n.1 (7th Cir. 2017) ("For American corporations, such duties are ordinarily a matter for the law of the state of incorporation under the internal affairs doctrine. . . . In this case Polish law would seem to govern such duties for those involved in the Business Park, yet plaintiffs have made no effort to inform us about applicable Polish law. *See* FED. R. CIV. P. 44.1 (party who intends to raise issue about a foreign country's law must give written notice)"); *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018) ("'Even in the internet age, it would put an extraordinary burden on the court if parties could nakedly invoke foreign law and then delegate the job of figuring it out to the judge and her clerks. By making clear that the information burden remains at all times on the party invoking foreign law, the scheme effectively instructs parties that they waive the right to rely on foreign law if they don't supply the information needed to determine it.'").

Even if the Court were to undertake that analysis and determine that Storebrand AB *was* validly invoking the prudential exception for the nine funds, the standing inquiry would not end there because Storebrand AB is *not* an entity that is seeking appointment as lead plaintiff in this action. As such, the Court would *next* have to determine whether the Assignment between Sweden-based Storebrand AB and Norway-based SAM is valid based upon, at a minimum: (a) Swedish law (which governs the assignee); (b) Norwegian law (which governs the assignor entity); and (c) New York state law, which – for whatever unexplained reason – is the choice of law provision of the relevant assignment between the Swedish entity and Norwegian entity (ECF 9-1 at 11 of 16). Given the convoluted chain of determinations that the Court must make to ascertain SAM's standing – and the Store Brand Group's failure to provide the Court with a foreign law basis to do so – the Store Brand Group has not met its burden to establish its members' standing.[11]

SAM's failure to clearly establish its standing is particularly noteworthy because European asset managers have been repeatedly rejected by courts as lead plaintiffs in PSLRA cases based on "a 'non-speculative risk' that a standing challenge from Defendants may be successful." *Gross v. AT & T Inc.*, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019); *Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*, 2021 WL 5051649, at *2 (S.D.N.Y. Nov. 1, 2021) (denying lead plaintiff presumption to European asset manager that failed to support its standing despite that entity's prior appointment as lead plaintiff in multiple cases); *Theodore v. Purecycle Techs., Inc.*, 2021 WL 5259840, at *4

---

[11]  SAM's use of assignments for multiple entities appears to be intended to keep the Store Brand Group's member count below the presumptive limit of five. "Through this maneuver, the [Store Brand] Group manages to exclude [multiple entities] from its headcount while still benefiting from [their] losses when calculating the Group's financial interest." *See, e.g.*, *McDermid v. Inovio Pharm., Inc.*, 467 F. Supp. 3d 270, 279 (E.D. Pa. 2020). Not only does this tortuous "maneuver" expose the class to standing defenses uniquely applicable to the Store Brand Group, but it further "supports the concern that lawyers manipulated the [Store Brand Group's] composition to evade the presumption "'that groups with more than five members are too large to work effectively.'" *Id.* (citing *Cendant* 264 F.3d at 267 (citing *Brief for the Securities and Exchange Commission Amicus Curiae* at 17 n. 13 (attached at 2000 WL 34002986 (3rd. Cir. 2000)).

-14-

(M.D. Fla. Aug. 5, 2021) (same); *Pipefitters Loc. No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 189-91 (S.D.N.Y. 2011) (same). In each of these cases, the movant claimed losses based on transactions that were not the movant's own and each movant failed to articulate in its motion how the movant could nonetheless vindicate those losses (and the claims associated therewith) in accordance with foreign law and Article III principles (despite the fact that those movants had been previously appointed as lead plaintiff and/or certified as a class representative.) The Store Brand Group's motion suffers the very same shortcomings here, but unlike in these other cases, SAM has not previously been appointed as a lead plaintiff or class representative.[12]

Importantly, there is no requirement at this early stage to "prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial." *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("[t]he point . . . is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole"). Indeed, it is this "***potential*** risk[]" that led to a Belgian asset manager's disqualification in *AT&T*, 2019 WL 3500496, at *2 ("Before disqualifying a potential lead plaintiff on [the] basis [of defective standing], the Court ***need not conclude that the defense is likely to or will succeed***. Rather, 'many courts have rejected appointments of lead plaintiffs based on ***potential*** risks.'") (collecting cases) (emphasis added and in original); *Theodore*, 2021 WL 5259840, at *4 (Declining to appoint foreign asset manager with $1.8 million in losses because it "does not state that it bought PureCycle shares. It states that its fund

---

[12]  To the contrary, in *In re The Chemours Co. Sec. Litig.*, No. 1:19-cv-01911-CFC (D. Del.) – the only other case it sought lead plaintiff status in – SAM claimed the losses of several of the ***same*** entities as its own losses, without disclosing the existence of an assignment or its need to rely on the prudential exception to Article III standing. *See* Blythin Opp. Decl., Ex. 3. SAM's decision to switch gears here indicates SAM and its same counsel here either: (1) are themselves unclear about SAM's standing to claim the losses of these other entities; ***or*** (2) strategically chose in *Chemours* to omit the existence of an assignment and the need to invoke the prudential exception from the court and competing movants. Either scenario undermines Storebrand AB's adequacy here.

15

Case 2:22-cv-01436-BHL    Filed 02/21/23    Page 21 of 24    Document 20

incurred a loss, but does not establish its relationship to this fund" and because its "allegations regarding an assignment from the fund are conclusory and provide no meaningful information.").[13]

The unanswered questions regarding SAM's defective standing preclude its appointment as lead plaintiff. Indeed, the overlapping determinations of Swedish, Norwegian, and New York law required to ascertain whether SAM has standing will devolve into a "needless litigation sideshow" "rais[ing] complex and novel issues of law which would require extensive factual and foreign legal analysis." *Baydale*, 2009 WL 2603140, at *3.

Conversely, appointing Tampa as Lead Plaintiff will "ensure that the lead plaintiff will not prejudice the class by subjecting the class to the delay, expense, and uncertainty of litigating unique defenses." *Steamfitters*, 2012 WL 3638629, at *10-*11, *13 (declining to appoint entities subject to standing challenges as lead plaintiff and recognizing that "the Court must decide whether standing is a unique defense that is likely to play a major role in litigation, regardless of the outcome"); *Smajlaj v. Brocade Commcn's Sys. Inc.*, 2006 WL 7348107, at *2-*3 (N.D. Cal. Jan. 12, 2006) (same).[14]

---

[13]    *S. Ferry LP No. 2 v. Killinger,* 271 F.R.D. 653, 659 (W.D. Wash. 2011) (denying certification of foreign asset manager as class representative in a PSLRA case, finding that the asset manager's "standing presents a unique legal issue that could ultimately severely prejudice the class" because "[e]ven if the Court were to conclude that the assignments cured [SAM's] standing deficiency, the Court of Appeals could hold otherwise"); *In re IMAX Sec. Litig.*, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (holding investment advisor was an atypical and inadequate class representative, regardless of whether assignments cured its deficient standing, because its standing issues "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (holding investment advisor did not satisfy the adequacy or typicality requirements); *Baydale*, 2009 WL 2603140, at *3 (denying lead plaintiff motion where movant raised complex issues of foreign law that could be averted by selecting another lead plaintiff).

[14]    The fact that another member of the Store Brand Group (*i.e.*, Connecticut) has standing does not negate the fact that SAM is subject to unique standing defenses. The law is clear that "the purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002); *Netflix*, 2012 WL 1496171, at *5 (declining to appoint a group when only one of its members was subject to unique standing defenses); *Steamfitters*, 2012 WL 3638658, at *10 ("Even if this Court were to find that [some of the group members] satisfied the constitutional requirements of standing, the other Prosperity Group members' lack of standing would

-16-

In sum, even if the Store Brand Group could somehow claim to have suffered the largest financial interest (and it assuredly cannot), it does not satisfy even the most rudimentary Rule 23 inquiry.  As such, its motion should be denied.

## III.  CONCLUSION

Tampa is the presumptively "most adequate plaintiff" based on its largest loss, its qualifications and experience, and its selection of a highly qualified law firm to serve as lead counsel.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  Tampa is the paradigmatic candidate for appointment as lead plaintiff.  Its motion should be granted.  The competing motions should be denied.

DATED:  February 21, 2023        Respectfully submitted,

ADEMI LLP
GURI ADEMI
JESSE FRUCHTER
JOHN D. BLYTHIN


              s/ John D. Blythin
        JOHN D. BLYTHIN (SBN 1046105)

3620 East Layton Avenue
Cudahy, WI  53110
Telephone:  414/482-8000
414/482-8001 (fax)
gademi@ademilaw.com
jfruchter@ademilaw.com
jblythin@ademilaw.com

Local Counsel

---

still prevent the Prosperity Group's appointment as lead plaintiff.").  Moreover, Connecticut's loss is far smaller than Tampa's and it does not qualify for appointment alone.

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
SCOTT H. SAHAM
DANIELLE S. MYERS
NICOLE Q. GILLILAND
RAPHAELLA FRIEDMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
scotts@rgrdlaw.com
dmyers@rgrdlaw.com
ngilliland@rgrdlaw.com
rfriedman@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON
ROBERT D. KLAUSNER
STUART A. KAUFMAN
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
stu@robertdklausner.com

Additional Counsel for Proposed Lead Plaintiff

- 18 -