## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| OAKLAND COUNTY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, and OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:22-cv-1436 (BHL) Hon. Brett H. Ludwig CLASS ACTION ORAL ARGUMENT REQUESTED |
| Plaintiffs, v. | |
| GENERAC HOLDINGS INC., AARON JAGDFELD, and YORK A. RAGEN, | |
| Defendants. | |
| CALIFORNIA IRONWORKERS FIELD PENSION TRUST, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:23-cv-0081 (BHL) Hon. Brett H. Ludwig CLASS ACTION |
| Plaintiff, v. | |
| GENERAC HOLDINGS INC., AARON JAGDFELD, and YORK A. RAGEN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE OFFICE OF THE TREASURER AS TRUSTEE FOR THE CONNECTICUT RETIREMENT PLANS AND TRUST FUNDS, INDUSTRIENS PENSIONSFORSIKRING A/S, AND STOREBRAND ASSET MANAGEMENT AS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     ARGUMENT ......................................................................................... 3

    A.      The Institutional Investor Group Is The Presumptive Lead Plaintiff ...................3

        1.      The Institutional Investor Group Has The Largest Financial Interest Because More Than Half Of Tampa's Claimed Losses Are Unrecoverable Under Controlling Supreme Court Case Law ....................3

            a.      Tampa's Claimed Losses Are Inflated By "In-And-Out" Transactions Not Held Across Any Corrective Disclosure, Including The November 2021 Decline........................................... 5

            b.      Tampa's Claimed Losses Are Inflated By A Corrective Disclosure That Is Unrelated To The Theory Of The Case ........... 7

        2.      Secondary Financial Metrics Also Evince The Superior Financial Interest Of The Institutional Investor Group ...............................................12

        3.      The Institutional Investor Group Satisfies The Requirements Of Rule 23 ...........................................................................................13

    B.      Tampa's Motion Should Be Denied ....................................................15

    C.      The Court Should Approve The Institutional Investor Group's Selection Of Counsel ........................................................................................15

III.    CONCLUSION.......................................................................................... 16

**Page(s)**

**Cases**

*Africa v. Jianpu Tech. Inc.*,
    No. 21-CV-1419 (JMF),
    2021 WL 1999467 (S.D.N.Y. May 19, 2021) ..................................................4, 10

*Bensley v. FalconStor Software, Inc.*,
    277 F.R.D. 231 (S.D.N.Y. 2011) ...........................................................................10

*Bo Young Cha v. Kinross Gold Corp.*,
    No. 12 Civ. 1203(PAE),
    2012 WL 2025850 (S.D.N.Y. May 31, 2012) ..........................................................6

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................................7, 8

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017)..........................................................................................13

*Chandler v. Ulta Beauty, Inc.*,
    No. 18-cv-1577,
    2018 WL 3141763 (N.D. Ill. June 26, 2018) .....................................................4, 14

*Cohen v. U.S. Dist. Court for N. Dist. of Cal.*,
    586 F.3d 703 (9th Cir. 2009) ...............................................................................15

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG)(RER),
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)......................................................4, 5, 9

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) .............................................................................5

*Darish v. N. Dynasty Minerals Ltd.*,
    No. 20-cv-5917 (ENV),
    2021 WL 1026567, (E.D.N.Y. Mar. 17, 2021)..................................................10, 11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...................................................................................... *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)....................................................................................12

*Hedick v. Kraft Heinz Co.*,
   No. 19-cv-1339,
   2019 WL 4958238 (N.D. Ill. Oct. 8, 2019).....................................................12, 15

*In re LDK Solar Sec. Litig.*,
   No. C 07-5182 WHA,
   2010 WL 3001384 (N.D. Cal. July 29, 2010).......................................................5

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) ........................................................................7

*Rieckborn v. Velti plc*,
   No. 13-cv-03889-WHO,
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ..........................................................5

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015)....................................................................4

*Saye v. NIO Inc.*,
   No. 22-CV-7252 (VSB),
   2022 WL 17666398 (S.D.N.Y. Dec. 14, 2022) ....................................................4

*Schaffer v. Horizon Pharma Plc*,
   No. 16-CV-1763 (JMF),
   2016 WL 3566238 (S.D.N.Y. June 27, 2016) .....................................................12

*Silverberg v. DryShips Inc.*,
   No. 17-CV-4547 (SJF)(ARL),
   2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018)........................................4, 12, 13

*Sokolow v. LJM Funds Mgmt., Ltd.*,
   No. 18-cv-01039,
   2018 WL 3141814 (N.D. Ill. June 26, 2018) ............................................13, 14, 15

*Topping v. Deloitte Touche Tohmatsu CPA Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)....................................................................10

*Yen Hoang v. ContextLogic, Inc.*,
   No. 21-cv-03930-BLF,
   2022 WL 1539533 (N.D. Cal. May 16, 2022) ...............................................4, 5, 9

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................. *passim*

Presumptive Lead Plaintiff the Institutional Investor Group respectfully submits this Memorandum of Law in further support of its motion for appointment as Lead Plaintiff [ECF No. 7] and in opposition to the remaining competing motion filed by the City Pension Fund for Firefighters and Police Officers in the City of Tampa ("Tampa") [ECF No. 4].[1]

## I. PRELIMINARY STATEMENT

The Institutional Investor Group has "the largest financial interest in the relief sought by the class" and is the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Specifically, the Institutional Investor Group has recoverable losses of approximately ***$15.5 million***, which, as discussed below, are nearly ***double*** the recoverable losses of the next largest movant. Further, as three large, prominent, and sophisticated institutional investors collectively responsible for overseeing nearly $180 billion in assets with a proven track record of successfully resolving securities fraud class actions, the Institutional Investor Group is ideally suited to oversee the prosecution of this complex securities fraud action.

While Tampa is the only other remaining movant, Tampa's claimed losses of just over $16 million significantly overstates Tampa's true financial interest in the Litigation. Under controlling Supreme Court precedent, Tampa's maximum recoverable losses are ***millions*** of dollars less than the Institutional Investor Group's recoverable loss. *See Dura Pharms., Inc. v. Broudo*, 544 U.S.

---

[1]     Unless otherwise noted, all references to "ECF No. __" are to docket entries in *Oakland County Voluntary Employees' Beneficiary Association, et al. v. Generac Holdings Inc., et al.*, No. 2:22-cv-1436 (BHL) (E.D. Wis.) ("*Oakland County*"), all capitalized terms are defined in the Institutional Investor Group's opening brief, *see* ECF No. 8, all emphasis is added, and all internal citations and quotation marks are omitted. A motion also was filed by Andrew and Cheryl Kujawiak [filed only in *California Ironworkers Field Pension Trust v. Generac Holdings Inc., et al.*, No. 2:23-cv-0081 (BHL) (E.D. Wis.) ("*California Ironworkers*"), ECF No. 4], but was withdrawn on February 17, 2023. ECF No. 19. Each of the movants agrees that consolidation of the *Oakland County* and *California Ironworkers* actions is appropriate. *See* ECF No. 8 at 5-6; ECF No. 11 at 3-4; *Cal. Ironworkers*, ECF No. 5 at 4-5.

336 (2005) (applying loss causation requirements to securities fraud actions).  As the Supreme Court explained in *Dura*, the federal securities statutes are not intended "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause."  *Id.* at 345.

A large portion of Tampa's claimed financial interest ignores the Supreme Court's requirements and collapses upon scrutiny.  First, more than $1.4 million of Tampa's claimed losses are not recoverable under *Dura* because they resulted from "in-and-out" sales of 25,000 shares of Generac stock that were not held over **any** alleged corrective disclosure, and thus have no causal relationship to Defendants' fraud.  *See id.* at 347 (rejecting securities fraud claims where plaintiff could not tie its economic losses to its fraud theory).  Tampa cannot debate this point.  Second, an additional $6.8 million of Tampa's claimed losses are entirely dependent upon a November 2021 decline in the price of Generac stock that, while pled in *California Ironworkers* as a corrective disclosure, has nothing to do with the core facts of the Litigation and was filed by Tampa's counsel at the eleventh hour in order to insulate Tampa from *Dura*-based arguments.  *See id*.

Thus, in order to prevail on this motion, Tampa must prove the unprovable: first, that losses that cannot be recovered in this action as a matter of law under *Dura* should nonetheless be included in determining its financial interest in the Litigation; and second, a market drop that has nothing to do with the Class's theory of fraud actually caused Tampa to suffer recoverable losses.  But Tampa can do no such thing.  When all **un**recoverable losses are properly excluded from the requisite "financial interest" analysis, the Institutional Investor Group's financial stake in this Litigation is nearly **double** Tampa's financial stake.  However, even if Tampa was somehow successful in pleading the November 2021 decline as a corrective disclosure, its motion fails because the Institutional Investor Group still has vastly larger recoverable losses.  Under any

scenario properly considering *Dura*'s loss causation requirements, the Institutional Investor Group

has the largest financial interest in the litigation and is the presumptive "most adequate plaintiff"

under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

For these reasons, and as further detailed below, the Institutional Investor Group

respectfully requests that the Court grant its motion in its entirety.

## II.   ARGUMENT

### A.   The Institutional Investor Group Is The Presumptive Lead Plaintiff

#### 1.   The Institutional Investor Group Has The Largest Financial Interest Because More Than Half Of Tampa's Claimed Losses Are Unrecoverable Under Controlling Supreme Court Case Law

The PSLRA requires the Court to appoint as lead plaintiff the member or members of the

purported plaintiff class that "has the largest financial interest in the relief sought by the class,"

and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I). While a movant's claimed out-of-pocket losses are often the

starting point for such an analysis, out-of-pocket losses are not always indicative of a movant's

true financial interest "in the relief sought by the class." *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb). Indeed,

the "relief" a class may seek under the federal securities laws is expressly limited by the PSLRA

as well as controlling case law. In particular, as set forth in the Supreme Court's seminal decision

in *Dura*, securities fraud plaintiffs must "prove that the defendant's misrepresentation (or other

fraudulent conduct) proximately caused [their] economic loss[es]." 544 U.S. at 346. As explained

by the Supreme Court, if "the purchaser sells the shares quickly before the relevant truth begins to

leak out, the misrepresentation will not have led to any [recoverable] loss." *Id.* at 342. Critically,

this loss causation requirement prevents the federal securities laws from being improperly used as

"insurance" against any and all investment related losses. *Id.* at 345.

Consistent with *Dura*'s loss causation requirement, courts have repeatedly held that, when assessing a lead plaintiff movant's financial interest, "[a]ny losses incurred based on 'in-and-out' trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered" because they are not recoverable under *Dura*. *Saye v. NIO Inc.*, No. 22-CV-7252 (VSB), 2022 WL 17666398, at *4 (S.D.N.Y. Dec. 14, 2022); *see also Yen Hoang v. ContextLogic, Inc.*, No. 21-cv-03930-BLF, 2022 WL 1539533, at *6 (N.D. Cal. May 16, 2022) (applying *Dura* principles to exclude in-and-out transactions between three pled corrective disclosures from lead plaintiff movants' claimed financial interest).[2] In fact, numerous courts have suggested that a court "would be ***abdicating its responsibility*** under the PSLRA if it were to [ignore the issue of loss causation at the lead plaintiff appointment] stage." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (quoting *Comverse*, 2007 WL 680779, at *5) (brackets in original); *see also Africa v. Jianpu Tech. Inc.*, No. 21-CV-1419 (JMF), 2021 WL 1999467, at *2 (S.D.N.Y. May 19, 2021) (same).

As detailed below, when the movants' unrecoverable in-and-out transactions are properly excluded under *Dura*, it is indisputable that the Institutional Investor Group possesses—by far—the largest financial interest in the relief sought by the Litigation.

---

[2]     *See also, e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *6 (E.D.N.Y. Mar. 2, 2007) ("exclusion of in-and-out shares follows directly from the underlying holding in *Dura*"); *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *4 (N.D. Ill. June 26, 2018) (explaining that exclusion of in-and-out transactions is consistent with "Seventh Circuit and Supreme Court cases holding that a plaintiff cannot satisfy the causation element of a securities fraud . . . relating to securities sold before the fraud was revealed"); *Silverberg v. DryShips Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 WL 10669653, at *5 (E.D.N.Y. Aug. 21, 2018) ("When evaluating financial loss, courts must consider only those losses that will actually be recoverable in the class action.").

## a. Tampa's Claimed Losses Are Inflated By "In-And-Out" Transactions Not Held Across Any Corrective Disclosure, Including The November 2021 Decline

Tampa's claimed losses of $16.2 million include more than $1.4 million in unrecoverable losses resulting from "in-and-out" transactions in which shares of Generac stock were bought and quickly sold by Tampa before a corrective disclosure revealed Defendants' fraud. Out-of-pocket market losses from these transactions "involving shares that *were not held over any corrective disclosure*" are not recoverable under *Dura* and should not be included in the movant's financial interest calculations. *ContextLogic*, 2022 WL 1539533, at *8 (excluding in-and-out transactions in which shares were bought and sold between three pled partial corrective disclosures). As one court has explained, "exclusion of in-and-out shares follows directly from the underlying holding in *Dura*." *Comverse*, 2007 WL 680779, at *6.[3]

Here, Tampa purchased 15,000 shares on February 16, 2022, and 10,000 shares on May 4, 2022, and then quickly sold all 25,000 shares on May 9, 2022, before any corrective disclosure. *See* ECF No. 12-4 (Tampa's transaction chart); *Dura*, 544 U.S. at 342 (finding no recoverable loss if an investor "sells the shares quickly before the relevant truth" is disclosed). Indeed, given that

---

[3]     *See also In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, at *3 (N.D. Cal. July 29, 2010) (recognizing that investors with transactions between corrective disclosures would be unable "to establish that [the] stock movement between the corrective disclosures was due to the alleged fraud"); *Rieckborn v. Velti plc*, No. 13-cv-03889-WHO, 2015 WL 468329, at *9 (N.D. Cal. Feb. 3, 2015) (excluding class members who suffered losses from in-and-out transactions between corrective disclosures from plan of distribution citing "the difficulty . . . of proving loss based on such trades"); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 682 (D. Colo. 2014) (finding that objector to plan of allocation who "bought and sold . . . shares between [the] corrective disclosures" lost money "for reasons unrelated to any corrective disclosure"); *Dura,* 544 U.S. at 343 (explaining that when in-and-out transactions result in a loss from a lower selling price, "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price").

neither the *Oakland County* action nor the *California Ironworkers* action alleges that **any** disclosure correcting Defendants' fraud occurred between February 2022 and May 2022, Tampa cannot credibly claim that Defendants' misrepresentations caused any compensable losses in connection with these in-and-out transactions.[4]  Accordingly, a proper analysis excluding movants' in-and-out transactions (which do not give rise recoverable losses) establishes that the Institutional Investor Group has the largest financial interest in this Litigation.[5]

| Difference in Recoverable Losses | |
|---|---|
| **Movant** | **Recoverable Loss** |
| The Institutional Investor Group | $15,458,288 |
| Tampa | $14,843,600 |

---

[4]     The *Oakland County* and *California Ironworkers* complaints collectively allege three overlapping corrective disclosures (resulting in *recoverable* losses for investors) occurring on August 1, 2022, October 19, 2022, and November 2, 2022.  *See* ECF No. 1, ¶¶ 64-70; 74-75; 78-84; *Cal. Ironworkers*, ECF No. 1, ¶¶ 62-63; 68-69; 70-72. The *California Ironworkers* complaint—and only the *California Ironworkers* complaint—alleges a fourth corrective disclosure on November 2, 2021.  *Cal. Ironworkers*, ECF No. 1, ¶¶ 52-53.  As discussed above, the *California Ironworkers* complaint was filed just days before the end of the PSLRA's deadline for investors to seek appointment as lead plaintiff.

[5]     *See* Supplemental Declaration of David R. Kaplan in Support of the Institutional Investor Group's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Kaplan Supp. Decl."), Ex. A.  The movants' *Dura*-adjusted losses are calculated on a last-in, first-out ("LIFO") basis—the most widely used method for matching movant's shares when assessing financial interests under the PSLRA.  *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the **overwhelming** trend . . . nationwide has been to use LIFO").  Accepting all four disclosures as pled, excluded unrecoverable in-and-out transactions include shares of Generac stock: (1) both purchased and sold before the corrective disclosure on November 2, 2021; (2) purchased after the corrective disclosure on November 2, 2021, but sold before the corrective disclosure on August 1, 2022; (3) purchased after the corrective disclosure on August 1, 2022, but sold before the corrective disclosure on October 19, 2022; and (4) purchased after the corrective disclosure on October 19, 2022, but sold before the corrective disclosure on November 2, 2022.

This analysis plainly reveals that, contrary to Tampa's contention that its losses were "***all . . . compensable***," *see* ECF No. 11 at 5, the inclusion of the in-and-out transactions inflated Tampa's losses by approximately 10%. In contrast, **99%** of the Institutional Investor Group's LIFO losses ($15,667,761) are recoverable under *Dura*.

> **b.** **Tampa's Claimed Losses Are Inflated By A Corrective Disclosure That Is Unrelated To The Theory Of The Case**

In addition to including more than $1.4 million in unrecoverable losses attributable to in-and-out transactions, an additional **$6.8 million** of Tampa's claimed losses is dependent upon the inclusion of a purported partial disclosure on November 2, 2021, which its counsel alleged "partially revealed the fraud." *Cal. Ironworkers*, ECF No. 1, ¶¶ 10, 52-3. Just **ten days** before the lead plaintiff deadline, Tampa's counsel filed the *California Ironworkers* action, which added a **fourth** partial disclosure (the November 2021 decline), presumably seeking to establish loss causation for millions of dollars of Tampa's out-of-pocket losses that were incurred when Tampa sold all of its shares months before the first-filed *Oakland County* action alleges Defendants' fraud was first revealed on August 1, 2022. While losses incurred on stock sales **after** a valid, fraud-related disclosure can and should be included in a movant's financial interest under the PSLRA, the late-pled November 2021 disclosure bears no causal connection to the fraud, and thus, should be cast aside under *Dura*. Judge Adelman's warnings in *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp.*, are particularly apt here: movants may "manipulate the lead plaintiff determination," and courts should thus be careful to "review the complaint and briefs" to ascertain the real gravamen of the claims. 256 F.R.D. 620, 625 (E.D. Wis. 2009). As such, the Court should not "blindly accept[]" the fourth partial disclosure alleged in *California Ironworkers*. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010) (highlighting the "risk

. . . to blindly accepting" allegations in an initial securities fraud complaint when selecting among lead plaintiff movants).

Here, *Oakland County*—the only securities class action complaint against Defendants until January 20, 2023—alleges that Defendants misled investors regarding the existence, severity, and impact of the defective SnapRS component by "continu[ing] to tout the success and reliability of Generac's solar energy products while quietly [and unsuccessfully] making minor modifications to the SnapRS," "misle[ading] investors about [Generac's] dependence on Pink Energy" to sell its solar power products, and "misle[ading] investors about [Generac's] financial condition by failing to account for its liability for warranty claims arising from the defective SnapRS." ECF No. 1, ¶¶ 1-5. Fully consistent with these alleged misrepresentations, the *Oakland County* action alleged that the truth about the defect and its impact on Generac was revealed to the market over the course of three corrective disclosures on: August 1, 2022; October 19, 2022; and November 2, 2022. *See id.* ¶¶ 6-8. These corrective disclosures are unquestionably causally connected to the fraud theory asserted in the Litigation. *See Dura*, 544 U.S. at 337. Each is highly specific to Generac's prior statements regarding SnapRS. They include the filing of a lawsuit against Generac by the Company's largest solar channel partner, Pink Energy, a $55 million charge related to the SnapRS defect and associated bad debt, and a stunning 40% reduction in solar energy product sales for 2022 related specifically to the SnapRS defect and Pink Energy's bankruptcy.

Tampa cannot establish loss causation for ***more than half*** of its $16.2 million in claimed losses because it sold the entirety of its holdings of Generac stock (leading to that portion of its losses) nearly ***three months before*** the truth about the SnapRS defect first began to surface on August 1, 2022. *See Dura*, 544 U.S. at 347; ECF No. 12-4 (Tampa's transaction chart).

Specifically, Tampa purchased 110,000 shares of Generac stock between May 2021 and May 2022, and then sold all 110,000 shares over two days on May 9, 2022, and May 10, 2022:



Tampa's claimed losses from these transactions are not compensable under the claims asserted in *Oakland County*. *See ContextLogic*, 2022 WL 1539533, at *8 (excluding in-and-out transactions that were not held over any of the three pled partial disclosures); *Comverse*, 2007 WL 680779, at *6 (finding that under *Dura* shares purchased and sold prior to alleged disclosures should be excluded from assessments of recoverable losses).

Against the backdrop of case law unquestionably limiting a large portion of Tampa's claimed financial interest, Tampa's counsel filed the *California Ironworkers* action shortly before the January 30, 2023 statutory lead plaintiff deadline and added a fourth partial disclosure that is both entirely unrelated to the theory of fraud set forth in the *Oakland County* action and implausible. Specifically, the *California Ironworkers* action asserts that the first disclosure occurred nine months earlier (November 2021) than the first corrective disclosure in the *Oakland*

*County* action (August 2022). This is nonsense. The partial disclosure on November 2, 2021 did not reference SnapRS whatsoever. Instead, it concerns a generic earnings announcement, lowered guidance, and the announcement of a sixth corporate acquisition that the complaint alleges "indicated a potential slowdown in Generac's core generator business." *Compare* ECF No. 1, ¶¶ 1-5 *with Cal. Ironworkers*, ECF No. 1, ¶¶ 6-10.[6] Such allegations are wholly insufficient, and the Court should reject this disclosure and associated contentions regarding the losses it would support. Indeed, the fact that Tampa did not sell out of its position in Generac stock for nearly six months following this alleged partial disclosure further "supports the inference that the Fund was not aware of any fraud as a result of the [earlier] disclosure and therefore felt no urgency to sell." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (S.D.N.Y. 2011) (concluding that the court could not "confidently infer that the . . . disclosure actually revealed fraud or misconduct sufficient to qualify as a partial disclosure"); *see also Topping v. Deloitte Touche Tohmatsu CPA Ltd.*, 95 F. Supp. 3d 607, 621 (S.D.N.Y. 2015) (explaining that a partial disclosure "must possess a sufficient nexus to a prior misstatement such that it reveals at least part of the falsity of that misstatement"); *Jianpu Tech.*, 2021 WL 1999467, at *2 (rejecting attempt to manufacture loss causation with additional partial disclosure that did not disclose "additional information . . . relevant to the fraud claims alleged in the Complaint").[7] The November 2, 2021 disclosure is

---

[6] In support of this facially unrelated corrective disclosure, the complaint includes scant references to generic statements regarding demand for the Company's generators. *See, e.g.*, *Cal. Ironworkers*, ECF No. 1, ¶ 46 ("[s]hipments of home standby generators were almost double compared to the prior year due to incredible demand for these products and our successful capacity-expansion efforts") (alteration in original).

[7] The *California Ironworkers* action's theory of liability that Defendants purportedly concealed declining demand for Generac's conventional generator products also appears implausible given the Company's well-publicized pivot to smart/clean energy in 2019. *See* Kaplan Supp. Decl., Ex. C [Investor Day Presentation, *available at* https://investors.generac.com/static-files/34c2f282-f588-4643-afbf-385ce64a435c (Sept. 29, 2021)]. At the same time, Defendants

simply not a "*bona fide* partial corrective disclosure" capable of supporting loss causation. *Darish v. N. Dynasty Minerals Ltd.*, No. 20-cv-5917 (ENV), 2021 WL 1026567, at *8 (E.D.N.Y. Mar. 17, 2021) (emphasis in original).[8]

As set forth in the table below and demonstrated in the accompanying loss calculation charts, when the November 2, 2021 disclosure is appropriately removed from consideration, Tampa's recoverable losses plummets further while the Institutional Investor Group's recoverable losses are unaffected:[9]



---

also emphasized the Company's "Strategic M&A" plans, which cast serious doubt on the allegation that the November 2, 2021 disclosure of a corporate acquisition revealed the Company's purportedly declining generator business. *Id.*

[8]   The movants do not agree as to the validity of the November 2, 2021 disclosure. The Institutional Investor Group's brief made clear that the disclosure was wholly unrelated to the solar energy business. *See* ECF No. 8 at 4. In addition, the Kujawiak Family, which only filed its motion for appointment as lead plaintiff in *California Ironworkers*, make absolutely *no mention* of the November 2, 2021 partial disclosure, despite a recitation of every other corrective disclosure alleged in the *California Ironworkers* complaint. *See Cal. Ironworkers*, ECF No. 5.

[9]   *See* Kaplan Suppl. Decl., Ex. B (removing effect of November 2, 2021 disclosure and excluding all resulting in-and-out transactions).

Tampa's necessary focus on the November 2021 disclosure raises serious questions about its adequacy to represent the Class and is fatal to its motion under the PSLRA. Indeed, disputes over the legitimacy of the November 2, 2021 disclosure create "a substantial risk that [Tampa] will become distracted" with attempting to prove the validity of the November 2, 2021 disclosure "to the detriment of the rest of the class." *Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at *5 n.5 (N.D. Ill. Oct. 8, 2019); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (noting adequacy is not met if the plaintiff is exposed to unique issues "which threaten to become the focus of the litigation"); *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected appointments of lead plaintiffs based on *potential* risks.") (emphasis in original).

The court's analysis in *Kraft* is particularly instructive. There, the court found that a movant was "incapable of adequately representing the class" because "a substantial portion of [its] claimed losses" were incurred in connection with claims of questionable merit. *Kraft*, 2019 WL 4958238, at *5 n.5. The court concluded that the questionable "claims are not at the heart of this lawsuit" and it was unnecessary to subject the class to the risks associated with a movant dependent on such claims. *Id.* Here, Tampa's likely focus on the fourth partial disclosure not asserted in the previously filed complaint presents similarly unnecessary risks to the Class. Irrespective of its smaller financial interest, Tampa's focus on the November 2021 disclosure renders it inadequate to serve as Lead Plaintiff. *See id.* (citing *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)).

## 2. Secondary Financial Metrics Also Evince The Superior Financial Interest Of The Institutional Investor Group

In addition to asserting the largest recoverable losses, the Institutional Investor Group also purchased more net shares and expended more net funds than Tampa. *See DryShips*, 2018 WL

10669653, at *4 (identifying four financial metrics commonly applied by courts in selecting a lead plaintiff under the PSLRA). These financial metrics further reinforce the Institutional Investor Group's status as the presumptive Lead Plaintiff.

### 3. The Institutional Investor Group Satisfies The Requirements Of Rule 23

The Institutional Investor Group also satisfies the typicality and adequacy requirements of Rule 23. *See Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018 WL 3141814, at *6 (N.D. Ill. June 26, 2018) (requiring only a "preliminary showing that it satisfies the [adequacy and typicality] requirements").

As demonstrated in its opening brief, the Institutional Investor Group's claims are typical of those of the Class. *See* ECF No. 8 at 9-11. Indeed, like all other members of the Class, the Institutional Investor Group: (1) purchased Generac common stock during the Class Period; (2) at prices that were allegedly inflated due to Defendants' materially false or misleading statements or omissions; and (3) was damaged thereby when the truth was revealed. *See LJM*, 2018 WL 3141814, at *6. Importantly, unlike Tampa, the Institutional Investor Group also held Generac shares through each and every alleged corrective disclosure of fraud, giving the Group standing to represent injured Class members with regard to every potential claim in the Litigation. Accordingly, the Institutional Investor Group's appointment would protect against the risk that the statute of repose for claims could run before there is representation for all claims alleged in the Litigation. *See, e.g.*, *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2055 (2017) (holding that statutes of repose are not subject to equitable tolling during the pendency of class action litigation).

The Institutional Investor Group also readily satisfies Rule 23's adequacy requirement because it will "fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II)(aa).  As set forth in its opening brief, the Institutional Investor Group consists of sophisticated institutional investors that collectively oversee approximately $180 billion in assets, fully understand their responsibilities under the PSLRA, have repeatedly demonstrated their ability to successfully lead securities class actions (having recovered nearly $700 million in prior class actions), and are committed to zealously representing the Class here.  *See* ECF No. 8 at 10-13.  In fact, no other movant before the Court has any experience serving as a lead plaintiff in class actions under the PSLRA.  Moreover, as evidenced in their Joint Declaration, the Institutional Investor Group has taken affirmative steps to ensure the effective and efficient prosecution of the case, including, among other things, entering into competitive retainer agreements with counsel, discussing their joint litigation strategy among the group, and instructing counsel to continue their investigation of the case and interview of former employees with potentially relevant information.  *See* ECF No. 9-3, ¶¶ 8-12; 14-15.

This evidence demonstrating the Institutional Investor Group's commitment and ability to represent the Class is more than sufficient to satisfy the adequacy and typicality requirements.  *See LJM*, 2018 WL 3141814, at *4 (appointing lead plaintiff group that submitted joint declaration that "explains how and why the [group] made the decision jointly to seek appointment as lead plaintiff in this matter"); *Ulta*, 2018 WL 3141763, at *6 (appointing lead plaintiff group that "submitted a joint affidavit discussing how they will monitor the litigation and work to achieve the best outcome for the possible class").  Indeed, the Institutional Investor Group consists of the prototypical investors that Congress sought to encourage to serve as lead plaintiffs—three large, sophisticated, and prominent institutions with the resources and relevant experience to successfully oversee the prosecution of this complex securities fraud litigation.  *See LJM*, 2018 WL 3141814, at *5 (the PSLRA reflects a "presumption that institutional investors be appointed lead plaintiff").

**B.**     **Tampa's Motion Should Be Denied**

As set forth above, Tampa does not assert the largest financial interest in this Litigation, and no "proof" exists to rebut the Institutional Investor Group's presumptive status as the most adequate plaintiff under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *LJM*, 2018 WL 3141814, at *6-7 (rejecting challenges to a movant group's adequacy and typicality, including challenges to group's assignments of claims, as not rising "beyond mere speculation"). This, without more, is sufficient to deny Tampa's motion under the PSLRA's lead plaintiff selection process. *See LJM*, 2018 WL 3141814, at *7 (appointing lead plaintiff group with the largest financial interest where the presumption was not rebutted). Even were the Court to consider Tampa's motion, which it should not, Tampa must also be disqualified because, as discussed above, issues surrounding Tampa's outsized reliance on the unrelated November 2, 2021 disclosure renders it atypical and inadequate. *See, e.g.*, *Kraft*, 2019 WL 4958238, at *5 n.5 (rejecting movant reliant on questionable claims for the bulk of its financial interest).

**C.**     **The Court Should Approve The Institutional Investor Group's Selection Of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the class." *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice"). As detailed in the Institutional Investor Group's opening brief, Saxena White and Kessler Topaz are two of the leading securities class action law firms in the country and also have experience working together to jointly develop, prosecute, and settle class action lawsuits under

the federal securities laws.  *See* ECF No. 8 at 13-16 (detailing joint prosecution of *In re Apache Corp.*, No. 4:21-CV-00575 (S.D. Tex.), and *In re Sadia S.A. Sec. Litig.*, No. 08 CIV. 9528 SAS (S.D.N.Y.)).  Accordingly, the Institutional Investor Group's proposed counsel is well-suited to represent the Class.

## III.  CONCLUSION

For these reasons and the reasons set forth in its opening brief, the Institutional Investor Group respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint the Institutional Investor Group to serve as Lead Plaintiff for the Class; (3) approve the Institutional Investor Group's selection of Saxena White and Kessler Topaz to serve as Lead Counsel and the Cross Firm to serve as Local Counsel for the Class; and (4) deny the remaining competing motion filed by Tampa.

Dated: February 21, 2023

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ David R. Kaplan*
David R. Kaplan
505 Lomas Santa Fe Drive
Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

**SAXENA WHITE P.A.**

Steven B. Singer (*admission pending*)
Rachel A. Avan (*admission pending*)
Alec T. Coquin (*admission pending*)
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com

ravan@saxenawhite.com
acoquin@saxenawhite.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for the Office of the Treasurer as Trustee
for the Connecticut Retirement Plans and Trust
Funds, Industriens Pensionsforsikring A/S, and
Storebrand Asset Management AS, and Proposed
Lead Counsel for the Class*

**CROSS LAW FIRM, S.C.**

Mary C. Flanner
SBN: 1013095
Nola J. Hitchcock Cross
SBN: 1015817
The Lawyers' Building
845 N. 11th Street
Milwaukee, WI 53233
Telephone: (414) 224-0000
Facsimile: (414) 273-7055
mflanner@crosslawfirm.com
njhcross@crosslawfirm.com

*Proposed Local Counsel for the Class*