| | |
|---|---|
| OAKLAND COUNTY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, and OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:22-cv-1436 (BHL) Hon. Brett H. Ludwig CLASS ACTION |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| GENERAC HOLDINGS INC., AARON JAGDFELD, and YORK A. RAGEN, | |
| Defendants. | |
| CALIFORNIA IRONWORKERS FIELD PENSION TRUST, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:23-cv-0081 (BHL) Hon. Brett H. Ludwig CLASS ACTION |
| Plaintiff, | |
| v. | |
| GENERAC HOLDINGS INC., AARON JAGDFELD, and YORK A. RAGEN, | |
| Defendants. | |

**REPLY IN FURTHER SUPPORT OF THE MOTION OF
THE OFFICE OF THE TREASURER AS TRUSTEE FOR THE
CONNECTICUT RETIREMENT PLANS AND TRUST FUNDS, INDUSTRIENS
PENSIONSFORSIKRING A/S, AND STOREBRAND ASSET MANAGEMENT AS
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND
APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ....................................................................... 1

II.  ARGUMENT ............................................................................................... 2

    A.   The IIG Is the Presumptive Lead Plaintiff as Tampa's Claimed Losses Are Inflated ...................................................................................................2

    B.   The IIG Is an Ideal Lead Plaintiff Whose Losses Are Properly Aggregated...........4

        1.   Storebrand's Assignments Establish Its Standing.......................................9

        2.   The Prudential Exception Applies to Storebrand Fonder .........................12

III. CONCLUSION............................................................................................ 15

**Cases**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
No. 20-cv-200, 2020 WL 815136 (E.D. Pa. Feb. 19, 2020) .................................................. 5, 6

*Bang v. Acura Pharms., Inc.*,
No. 10 C 5757, 2011 WL 91099 (N.D. Ill. Jan. 11, 2011) .......................................................... 8

*Baydale v. Am. Express Co.*,
No. 09 Civ. 3016, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)............................................. 15

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
No. 16-cv-1106, 2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) ...................................... 10, 15

*Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*,
No. 22 Civ. 1014, 2022 WL 1515451 (S.D.N.Y. May 13, 2022) ............................................ 14

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,
No. 12 C 3297, 2012 WL 5471110 (N.D. Ill. Nov. 9, 2012) ........................................ 1, 4, 5, 7

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) ........................................................................................................ 1, 5

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
No. 11 C 8332, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012)............................................ 4, 6, 8

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
No. 20-cv-9132, 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021)...................................................... 3

*City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*,
No. 13-cv-03325, 2014 WL 4799659 (D. Colo. Sept. 26, 2014)............................................. 13

*Cohen v. Luckin Coffee Inc.*,
No. 20-cv-01293, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ...................................... 13, 14

*Crews v. Rivian Auto., Inc.*,
No. 22-cv-01524, 2022 WL 17883615 (C.D. Cal. July 1, 2022)............................................. 14

*Dang v. Amarin Corp. PLC*,
No. 21-cv-19212, 2022 WL 15524944 (D.N.J. Oct. 27, 2022)................................................. 7

*Das v. Unity Software Inc.*,
No. 5:22-cv-03962, 2023 WL 1927739 (N.D. Cal. Feb. 10, 2023) .......................................... 5

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ............................................... 10

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017) ................................................................................... 3

*Garnett v. RLX Tech. Inc.*,
No. 21 Civ 5125, 2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021) ............................................ 7

*Gross v. AT & T Inc.*,
No. 19-CV-2892, 2019 WL 3500496 (S.D.N.Y. July 31, 2019) ............................................ 14

*Gumm v. Molinaroli*,
No. 16-cv-1093, 2016 WL 6680462 (E.D. Wis. Nov. 14, 2016) ........................................ 5, 7

*Hedick v. Kraft Heinz Co.*,
No. 19-cv-1339, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ................................. 4, 9, 10, 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................................... 6, 8

*In re Cloudera, Inc. Sec. Litig.*,
No. 19-CV-03221, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) ......................................... 3

*In re IMAX Sec. Litig.*,
No. 06 Civ 6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009) .......................................... 12

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ............................................................................................ 1, 4, 7

*In re Molycorp, Inc. Sec. Litig.*,
No. 12-cv-0292, 2012 WL 13013602 (D. Colo. May 29, 2012) ............................................ 5

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y.) .................................................................................................. 12

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
No. 20-cv-08585, 2022 WL 17884165 (S.D.N.Y. Dec. 23, 2022) ........................................ 1

*In re Vivendi Universal, S.A. Sec. Litig.*,
605 F. Supp. 2d 570 (S.D.N.Y. 2009) ................................................................................. 13

*In re Vonage Initial Public Offering (IPO) Sec. Litig.*,
 No. 07-cv-177, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ........................................ 3

*Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*,
 No. 00-cv-152, 2000 WL 486956 (D.N.J. Apr. 24, 2000) ......................................... 3

*Leventhal v. Chegg, Inc.*,
 No. 21-cv-09953, 2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) ............................ 2, 10, 11, 12

*Maiden v. Merge Techs., Inc.*,
 No. 06-C-3492006, WL 3404777 (E.D. Wis. Nov. 21, 2006) .................................... 7

*Mustafin v. GreenSky, Inc.*,
 No. 18 Civ. 11071, 2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ............................ 5

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
 63 F. Supp. 3d 394 (D. Del. 2014) .................................................................. 11, 15

*Patel v. Coinbase Global, Inc.*,
 No. 22-cv-4915, 2022 WL 17582549 (D.N.J. Dec. 12, 2022) ........................... *passim*

*Peters v. Jinkosolar Holding Co., Ltd.*,
 No. 11-cv-7133, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) .................................. 9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
 275 F.R.D. 187 (S.D.N.Y. 2011) ...................................................................... 15

*Plymouth Cnty. Ret. Assoc. v. Array Techs., Inc.*,
 No. 21 Civ. 4390, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) .......................... 11, 12

*Plymouth Cnty. Ret. Assoc. v. Innovative Tech., Inc.*,
 No. 21 Civ. 4390, 2021 WL 4298191 (S.D.N.Y. Sept. 21, 2021) ........................... 14

*Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*,
 No. 06 Civ. 5797, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) .............................. 8

*S. Ferry LP No. 2 v Killinger*,
 271 F.R.D. 653 (W.D. Wash. 2011) .................................................................. 12

*Saye v. NIO Inc.*,
 No. 22-CV-7252 (VSB), 2022 WL 17666398 (S.D.N.Y. Dec. 14, 2022) ................. 3

*Sokolow v. LJM Funds Mgmt., Ltd.*,
 No. 18-CV-01039, 2018 WL 3141814 (N.D. Ill. June 26, 2018) ...................... *passim*

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ........................................................................................... 9

*Sun v. Han*,
   No. 15-cv-703, 2015 WL 2364937 (D.N.J. May 14, 2015) ...................................... 7

*Theodore v. Purecycle Techs., Inc.*,
   No. 21-cv-809, 2021 WL 5259840 (M.D. Fla. Aug. 5, 2021) .......................... 11, 12

*Topping v. Deloitte Touche Tohmatsu CPA Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015) ...................................................................... 4

*United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin.
Corp.*,
   No. 14-81064-CIV, 2014 WL 7236985 (S.D. Fla. Nov. 7, 2014) ...................... 13, 15

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) ............................................................................ 9, 13

*Weston v. DocuSign, Inc.*,
   No. 22-cv-00824, 2022 WL 1301770 (N.D. Cal. Apr. 18, 2022) .............................. 7

*Yen Hoang v. ContextLogic, Inc.*,
   No. 21-cv-03930-BLF, 2022 WL 1539533 (N.D. Cal. May 16, 2022) ................... 3, 4

## Statutes

15 U.S.C. § 78u-4(a) ............................................................................................ *passim*

# I.     PRELIMINARY STATEMENT

The Institutional Investor Group ("IIG"), which has the largest financial interest in this action, is a cohesive partnership of three institutional investors with experience overseeing counsel and prosecuting securities class actions, and a demonstrated commitment to the vigorous prosecution of the Litigation. Tampa's attempts to rebut the IIG's status as the presumptive lead plaintiff offer nothing more than speculation, which falls short of the "proof" required by the PSLRA. *See* 15 U.S.C.A. § 78u-4 (a)(3)(B)(iii)(II) (requiring "***proof***" to rebut presumption); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-08585, 2022 WL 17884165, at *1 (S.D.N.Y. Dec. 23, 2022) ("such proof must be more . . . than mere speculation").

First, recognizing the IIG members' qualifications to lead this action and ignoring well-settled (and recent) case law from courts within the Seventh Circuit appointing small, cohesive groups of sophisticated investors,[1] Tampa speculates about the formation of the IIG. Specifically, Tampa postulates that the IIG was formed to surpass an unnamed investor that, according to a press release filed by ***another*** law firm, purportedly suffered $10 million in losses but did not file a motion in this matter. Such conjecture does not amount to the level of proof necessary under the PSLRA to contradict the sworn declaration of the IIG's members (the evidence actually before the Court). Nor does it rebut the IIG's presumptive status. *See In re Mersho*, 6 F.4th 891, 901-02 (9th Cir. 2021) (granting writ of mandamus vacating district court's order rejecting a group that submitted a declaration and finding there was no "evidence of inadequacy"); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (rejecting speculative arguments about the formation of a group of institutional investors).

---

[1] *See, e.g.*, *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-CV-01039, 2018 WL 3141814, at *3 (N.D. Ill. June 26, 2018) (rejecting argument that groups must have a pre-existing relationship and stating that "the 'trend' has been to allow small groups of investors to act as lead plaintiff") (citing *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018)).

Second, despite clear and unambiguous evidence before the Court establishing Storebrand's standing to assert claims on behalf of its investment funds, *see* ECF No. 8, IIG Br. at 2 n.1 (attaching Storebrand's assignments), Tampa muses that "unanswered questions" about Storebrand's standing "preclude its appointment as lead plaintiff." ECF No. 20, Tampa Opp'n Br. at 16. Not only does Tampa fail to provide ***any*** explanation as to what these "unanswered questions" are, Tampa does not argue Storebrand's assignments of claims are ***actually invalid***. Courts consistently reject such unsupported contentions regarding standing as "amount[ing] to little more than speculation" that "fall[s] short of the actual proof required under the PSLRA" to reject a movant. *See, e.g.*, *Patel v. Coinbase Global, Inc.*, No. 22-cv-4915, 2022 WL 17582549, at *4 (D.N.J. Dec. 12, 2022) (rejecting standing challenges lobbed by movant, represented by Tampa's counsel, against a Swedish institutional investor); *see also Leventhal v. Chegg, Inc.*, No. 21-cv-09953, 2022 WL 4099454, at *3 (N.D. Cal. Sept. 7, 2022) (rejecting movant, represented by Tampa's counsel, that "failed to provide evidence contesting the validity of the assignment" because "speculation about the validity is insufficient to rebut the lead plaintiff presumption").

Accordingly, the Court should grant the IIG's motion and deny Tampa's motion.

## II.    ARGUMENT

### A.    The IIG Is the Presumptive Lead Plaintiff as Tampa's Claimed Losses Are Inflated

The PSLRA directs the Court to select a lead plaintiff "with the largest financial interest in the ***relief*** sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). "[I]t is difficult to see," as Tampa argues, "how approximating losses that a lead plaintiff may ***not*** recover as a matter of law . . . advances the statutory text of or the congressional goals in enacting the [PSLRA]." *Plagens v. Deckard*, No. 20-cv-2744, 2021 WL 3284265, at *8 (N.D. Ohio Aug. 2, 2021). Here, Tampa advocates for a loss methodology that ignores the plain text of the PSLRA and Supreme Court

precedent defining the contours of financial interest.[2] ECF No. 20 at 3-7. When considering these factors, as the Court must, the IIG is the presumptive Lead Plaintiff.

Consistent with *Dura*'s loss causation requirement, when assessing the financial interest of a lead plaintiff movant, "[a]ny losses incurred based on 'in-and-out' trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered" because they are not recoverable under *Dura*.[3] *Saye v. NIO Inc.*, No. 22-CV-7252 (VSB), 2022 WL 17666398, at *4 (S.D.N.Y. Dec. 14, 2022); *see also Yen Hoang v. ContextLogic, Inc.*, No. 21-cv-03930-BLF, 2022 WL 1539533, at *6-8 (N.D. Cal. May 16, 2022) (excluding in-and-out transactions that were not held over any of the three pled partial disclosures). When the movants' unrecoverable in-and-out transactions are properly excluded under *Dura*, it is

---

[2] Tampa touts the support of the Kujawiak Family, but "no authority exists for th[is] Court to favor [Tampa] as lead plaintiff because of [the Kujawiak Family's] support." *See, e.g.*, *In re Vonage Initial Public Offering (IPO) Sec. Litig.*, No. 07-cv-177, 2007 WL 2683636, at *2 (D.N.J. Sept. 7, 2007); *see also* IIG Opp'n Br. at 11 n.8. The reply filed by the Kujawiak Family, ECF No. 24, despite its prior withdrawal, ECF No. 19, should likewise be ignored. Indeed, when applying *Dura*'s loss methodology, the Kujawiak Family enjoyed a *gain* of $81,290, leaving little doubt as to why this former movant would argue for a loss method that ignores Supreme Court precedent. *See* Ex. A to Reply Decl. of David R. Kaplan ("Kaplan Reply Decl.") (Kujawiak loss analysis).

[3] It is irrelevant that the IIG did not advance *Dura* losses in its opening brief given the negligible difference between its own LIFO-adjusted *Dura* losses and LIFO losses. *See, e.g.*, *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 500 (D. Conn. 2017) (noting a movant "cannot be faulted for failing to raise the notion of *Dura* . . . in its initial motion [when] its own purported losses are largely unaffected by an application of *Dura* [and it] had no reason to raise the issue of *Dura* loss calculation before opposing [the other movant's] motion"); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-cv-9132, 2021 WL 396343, at *5 (S.D.N.Y. Feb. 4, 2021) (considering *Dura* losses raised only in opposition where, as here, movant "provide all the trading information necessary to calculate its financial interest under all possible metrics"). Equally meritless is Tampa's use of *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00-cv-152, 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000), a 22-year-old outlier, to question the vigor with which the IIG will prosecute this action given that its losses represent a smaller percentage of its members' portfolios than Tampa's loss does for Tampa, ECF No. 20 at 5-6, n.5. *See In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221, 2019 WL 6842021, at *4 (N.D. Cal. Dec. 16, 2019) (rejecting *Campbell Soup* and declining to give preference based on financial stake relative to size of portfolio); *Coinbase*, 2022 WL 17582549, at *3 (same).

indisputable that the IIG possesses—by far—the largest financial interest in the relief sought by the Class and is thus the presumptive Lead Plaintiff. ECF No. 22 at 3-7. Additionally, a further $6.8 million of Tampa's claimed losses is dependent upon the inclusion of a purported partial disclosure on November 2, 2021, that is highly implausible and obviously unrelated to the allegations in *Oakland County*. *See ContextLogic*, 2022 WL 1539533, at *8; *Topping v. Deloitte Touche Tohmatsu CPA Ltd.*, 95 F. Supp. 3d 607, 621 (S.D.N.Y. 2015) (rejecting purported partial disclosure that failed to reveal defendants' fraud); ECF No. 22 at 7-12.

Thus, the IIG is the presumptive Lead Plaintiff and, barring *proof* of inadequacy, must be appointed Lead Plaintiff.

**B.    The IIG Is an Ideal Lead Plaintiff Whose Losses Are Properly Aggregated**

As Tampa acknowledges, the PSLRA expressly contemplates and permits the appointment of a group of class members as Lead Plaintiff. *See* ECF No. 20 at 8; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (defining "most adequate plaintiff" as the "person or group of persons that . . . has the largest financial interest in the relief sought by the class"); *see also Mersho*, 6 F.4th at 899 ("The statute expressly allows a 'group of persons' to move for appointment"). It is well settled in this Circuit and across the country that it is entirely proper to appoint as lead plaintiff and consider losses in the aggregate of a group whose members are cohesive and capable of overseeing counsel. *See, e.g.*, *Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at *7 (N.D. Ill. Oct. 8, 2019) (concluding group of "sophisticated institutional investors" was "sufficiently cohesive to represent the interests of the class"); *Allscripts*, 2012 WL 5471110, at *6 (appointing unrelated group of institutions that submitted joint declaration); *LJM*, 2018 WL 3141814, at *3-6 (appointing group of institutions and individuals); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at *8 (N.D. Ill. Apr. 18, 2012) (appointing "small, and presumptively cohesive group of sophisticated and knowledgeable investors with

aligned interests . . . [that established] [t]hrough their affidavits, . . . [their intention] to work together cooperatively and cohesively").[4]  Indeed, the Supreme Court recently noted that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups" and that an analysis found "80% of securities class actions in post-PSLRA data sample had two or more co-lead counsel firms." *China Agritech*, 138 S. Ct. at 1807 n.3; *LJM*, 2018 WL 3141814, at *3 (citing *China Agritech* and noting that "the 'trend' has been to allow small groups of investors to act as lead plaintiff").

Here, the Joint Declaration establishes that the members of the IIG are sophisticated institutional investors, the majority of whom have significant prior experience overseeing securities actions and other complex litigation, *see* ECF No. 9-3 ¶ 5, the IIG was formed independently, *see id.* ¶ 7, the members of the IIG conferred with one another and counsel prior to filing their motion, *see id.* ¶ 9, and the IIG has developed and discussed methods to oversee and prosecute the action in the best interests of all Class members, *see id.* ¶¶ 9-11.  Notably, they also have demonstrated their ability to safeguard the Class's interests by executing "highly competitive fee agreements with counsel."  *See* ECF No. 9-3 ¶ 12. Thus, the members of the IIG have demonstrated a strong commitment to vigorously prosecuting this case in an efficient and effective manner and "have set forth a general working strategy [that] supports that they will function

---

[4] Tampa's counsel is well aware of this precedent as they served as co-lead counsel in *Allscripts*, *LJM*, and *Hospira*.  *See also Gumm v. Molinaroli*, No. 16-cv-1093, 2016 WL 6680462, at *4 (E.D. Wis. Nov. 14, 2016) (aggregating group's losses and rejecting mere "assertions" "without proof" that group's creation was lawyer-driven); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, No. 20-cv-200, 2020 WL 815136, at *4-5 (E.D. Pa. Feb. 19, 2020) (aggregating losses of group of institutions who attested to the reasons for joining together and protocols for prosecuting the case); *Das v. Unity Software Inc.*, No. 5:22-cv-03962, 2023 WL 1927739, at *2-3 (N.D. Cal. Feb. 10, 2023) (considering aggregated loss of pair of institutions that established their adequacy through a joint declaration); *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-0292, 2012 WL 13013602, at *2-3 (D. Colo. May 29, 2012) (appointing group of unrelated investors that "demonstrated that it can act in a cohesive manner to protect the interests of the absent class members"); *Mustafin v. GreenSky, Inc.*, No. 18 Civ. 11071, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (finding coalition of institutions that submitted joint declaration qualified to serve as lead plaintiff).

smoothly and coordinate the litigation strategy and decision making in this litigation." *Hospira*, 2012 WL 1339678, at *8; *see also Energy Transfer*, 2020 WL 815136, at *5 (according "substantial weight" to statements made "under penalty of perjury" in joint declaration).

Despite these attestations and the fact that the PSLRA and courts around the country have repeatedly endorsed groups of institutional investors serving as lead plaintiff, Tampa seeks to rebut the presumption that the IIG should be appointed as Lead Plaintiff by challenging the decision of the members of the IIG to jointly prosecute the Litigation. Notably, Tampa has not argued, nor can it argue, that the IIG would be "preclude[d] . . . from fulfilling the tasks assigned to a lead plaintiff." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). Rather, Tampa merely speculates—based on a press release issued by another law firm not seeking appointment—that the IIG's sworn motivations for joining together to prosecute this Litigation are somehow false.[5] This is demonstrably wrong. Likewise, Tampa's claim that the members of the IIG are controlled by their counsel is contradicted by the evidence before the Court. *See* ECF No. 9-3. Specifically, the IIG's detailed Joint Declaration evinces: the deliberations the members undertook prior to seeking appointment, the benefits of the members' leadership and prior PSLRA experience will provide to the Class; their ongoing oversight of counsel's investigation; and their commitment to devote the necessary resources to ensure the Class's claims are zealously represented. *Id.* This evidence belies Tampa's speculation that the sophisticated IIG members decided to prosecute this case based solely on their lawyers' say so. Such baseless conjecture is insufficient to rebut the presumption that the IIG is the most adequate plaintiff. *See LJM*, 2018 WL 3141814, at *7

---

[5] Indeed, by the same token, Tampa's own filing confirms that its counsel was aware that a competing law firm was "advising institutional investors that incurred losses in excess of $10 million" and may have motivated Tampa's counsel to file a complaint pleading an early disclosure of fraud unrelated to the facts in the *Oakland County* action necessary to increase Tampa's recoverable loss to more than $10 million. ECF No. 12-1 at 2, ECF No. 22 at 7-12.

(rejecting challenges as "mere speculation"); *Allscripts*, 2012 WL 5471110, at *6 (rejecting contention that group was "the product of lawyers selecting clients" when "no proof of this assertion" was submitted and was contradicted by joint declaration); *Gumm*, 2016 WL 6680462, at *4 ("without any proof" contentions that a "[g]roup's creation is 'lawyer-driven,' . . . these assertions are just that—assertions"); *Mersho*, 6 F. 4th at 901 (vacating district court's rejection of group where only actual evidence was the group's declaration); *see also Weston v. DocuSign, Inc.*, No. 22-cv-00824, 2022 WL 1301770, at *3-4 (N.D. Cal. Apr. 18, 2022) (explaining that "[p]roof is key" and "[c]ompeting movants must convince the . . . court that the presumptive lead plaintiff would not be adequate").

Tampa's reliance on *Maiden v. Merge Technologies* is misplaced as that case—which was decided more than fifteen years ago and before the emerging "trend" noted by *LJM* and *China Agritech*—involved investors that combined only "**after** the first round of motions and briefing," *i.e.*, after the deadline for lead plaintiff motions and **with full knowledge of the competing movants' losses**. No. 06-C-349, 2006 WL 3404777, at *3 (E.D. Wis. Nov. 21, 2006). Tampa cites **no authority** in the Seventh Circuit for the rejection of a small, cohesive group of institutional investors like the IIG, and all of the cases Tampa cites are readily distinguishable or actually support the IIG's appointment. *See Sun v. Han*, No. 15-cv-703, 2015 WL 2364937, at *3 (D.N.J. May 14, 2015) (rejecting a group of *individual* investors that did not provide evidence that they could work cohesively); *Garnett v. RLX Tech. Inc.*, No. 21 Civ. 5125, 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021) (considering whether the unopposed motion of a *post-motion group* of unrelated *individuals* met the adequacy requirement); *Dang v. Amarin Corp. PLC*, No. 21-cv-19212, 2022 WL 15524944, at *7 (D.N.J. Oct. 27, 2022) (noting "significantly lower" losses of group members – differences of at least $1 million or 38%, unlike the 0.2% difference between

properly calculated losses between Tampa and Connecticut here).[6]

Tampa's own cited cases undercut its arguments and support the "trend" that preexisting relationships are **not** required for groups of institutional investors. For example, in *Cendant*, the Third Circuit contrasted the history of attorneys seeking to control litigation through aggregating the losses of hundreds of individual investors with groups of five or fewer members that can work together effectively. 264 F.3d at 266-67 ("The statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"). Ultimately, the Third Circuit agreed with the district court's appointment of a group of three geographically dispersed, "legally sophisticated entities," including one composed of nine sub-funds, with two "well-qualified" counsel, and a "not plainly unreasonable" retainer agreement. *See id.* at 268, Joint Decl. of Counsel, No. 2:98-cv-1664, ECF No. 17 at 10-27.[7] Numerous courts in this Circuit and elsewhere have reinforced that while a pre-litigation relationship is a consideration, the lack of such a relationship alone does not bar appointment of an otherwise qualified group. *See Hospira*, 2012 WL 1339678, at *6 ("a group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive"); *Bang v. Acura Pharms., Inc.*, No. 10 C 5757, 2011 WL 91099, at *2 (N.D. Ill. Jan. 11, 2011) (noting "trend" allowing "small groups of investors to act as lead plaintiff even if they do not have pre-

---

[6] The fact that the properly calculated losses of Tampa and Connecticut differ by only $17,584, or 0.2%, further demonstrates the propriety of the IIG particularly where, as here, counsel for a competing movant has filed a complaint alleging a disclosure unconnected to the alleged fraud that increased the total loss its client is able to claim. *See* ECF 23-2 at 6-7; *see also Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (treating losses as "roughly equal" where the difference was $40,000 or 2%).

[7] Indeed, *Cendant* notes as a factor whether a movant "ha[s] negotiated a clearly unreasonable fee agreement with its chosen counsel" – a factor about which Tampa has made **no representation** to date in contrast to the IIG. *Id.* at 265-66; ECF Nos. 8 at 13 and 22 at 14.

existing relationships"); *Kraft*, 2019 WL 4958238, at *7 (explaining that "the [movant group members'] prior relationships alone should not be dispositive"); *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11-cv-7133, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012) (appointing group of unrelated individual investors submitting a declaration establishing ability to act cohesively).[8]

As established by the Joint Declaration, the IIG is well qualified to serve as Lead Plaintiff.

## C.    Storebrand Has Standing

### 1.    Storebrand's Assignments Establish Its Standing

The Supreme Court has explained "that history and precedent are clear" that plaintiffs relying on assignments of claims "have long been permitted to bring suit." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 279 (2008); *see also W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("an assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact'"). Here, as set forth in Storebrand's sworn PSLRA certification, "Storebrand has received assignments of claims from Storebrand Global Indeks, Storebrand Indeks – Alle Markeder, and Storebrand Fonder AB."  ECF No. 9-1 at 7 n.1.  These assignments, which were submitted with the IIG's motion, unquestionably demonstrate that Storebrand's funds—which purchased Generac stock during the Class Period—transferred title to their claims to Storebrand.  *See, e.g.*, ECF No. 9-1 at 14 ("[the funds] assign, transfer, and set over to Storebrand Asset Management AS . . . all

---

[8] Tampa's arguments against lead plaintiff movant groups ring particularly hollow given that on the same night it filed its opposition, its counsel filed a motion for appointment as lead plaintiff on behalf of a group of three individuals from two different countries in another securities class action. *See Mihaylov v. Tattooed Chef, Inc.*, No. 2:22-cv-09311 (C.D. Cal. Feb. 21, 2023), ECF No. 18 at 1 (seeking appointment of "Viktor Grigorescu, Gyrosol V. Johnston, Dan Kogan, and Kogan Holdings Limited"); *Id.* at 20-4 ¶¶ 2-4 (describing origins of group members), attached as Exhibit B to the Kaplan Reply Decl.  In fact, during the last five years, Tampa's counsel has filed motions for the appointment of lead plaintiff groups in more than 50 cases. *See* Kaplan Reply Decl., Ex. C.

rights, titles, and interests in the claims, demands, or causes of action . . . relating to transactions .

. . in any security issued by Generac").[9]

Storebrand's assignments *are not* controversial. Courts in this Circuit and across the country consistently appoint movants relying on similar assignments. *See, e.g.*, *LJM*, 2018 WL 3141814, at *6 (appointing institutional investors relying on assignments because "the Court has no reason to question the validity of the assignments"); *Kraft*, 2019 WL 4958238, at *14 (appointing European institutional investor relying on assignments); *Chegg*, 2022 WL 4099454, at *3 (appointing European institutional investor where assignments were "facially valid"); *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 16-cv-1106, 2017 WL 5759361, at *12 (N.D. Ohio Nov. 28, 2017) (appointing European institutional investor, represented by Tampa's counsel, relying on assignment). The court's analysis in *Faris v. Longtop Financial Technologies Ltd.*, No. 11 Civ. 3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011), is instructive. There, the court reviewed a European asset manager's assignment from its funds—which is substantively identical to Storebrand's assignments—and concluded the assignment was "virtually identical to the assignment found to be valid by the Supreme Court in *Sprint*" and "conclusively establishes [the movant's] standing." *Longtop*, 2011 WL 4597553, at *5; Kaplan Reply Decl., Ex. E (*Longtop* assignment).

---

[9] Tampa's notation that Storebrand did not submit assignments with its motion in *In re The Chemours Co. Securities Litigation*, No. 1:19-cv-01911-CFC (D. Del.), is a red herring. ECF No. 20 at 15 n.12. Had Storebrand's standing in *Chemours* been questioned, which it was not, Storebrand would have provided its assignments. *See* Kaplan Reply Decl. Ex. D (Storebrand's assignments in *Chemours*). Moreover, Storebrand's use of assignments was not "intended to keep the . . . Group's member count below the presumptive limit of five," ECF No. 20 at 14 n.11, as the IIG would still have consisted of only five members: (1) Connecticut; (2) Industrien; (3) Storebrand Global Indeks; (4) Storebrand Indeks – Alle Markeder; and (5) Storebrand Fonder.

Despite case law specifically analyzing the assignments before the Court, Tampa simply claims that "questions" regarding the assignments "will devolve into a 'needless litigation sideshow.'" ECF No. 20 at 16. While Tampa suggests the Court will need to make "overlapping determinations of Swedish, Norwegian, and New York law . . . to ascertain whether [Storebrand] has standing," ECF No. 20 at 16, Tampa is entirely silent as to ***what*** determinations must be made, ***why*** these determinations are not routine, or ***how*** either Swedish or Norwegian law would be relevant when the assignments contain a New York choice of law provision. Tellingly, Tampa does not even suggest—let alone prove—the assignments ***actually are invalid***. Such unsupported "speculation about the validity [of the assignments] is insufficient to rebut the lead plaintiff presumption." *Chegg*, 2022 WL 4099454, at *3 (rejecting movant, represented by Tampa's counsel, because it "failed to provide evidence contesting the validity of [another movant's] assignment"); *see also Coinbase*, 2022 WL 17582549, at *4 (rejecting standing challenges raised by movant, represented by Tampa's counsel, as "little more than speculation" that "fall[s] short of the actual proof required"); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) (explaining the PSLRA requires "more than speculation" about standing).[10]

Tampa's citation to *Theodore v. Purecycle Technologies, Inc.*, No. 21-cv-809, 2021 WL 5259840 (M.D. Fla. Aug. 5, 2021), and *Plymouth County Retirement Association v. Array Technologies, Inc.*, No. 21 Civ. 4390, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) ("*Array II*"), are not relevant to the facts before the Court and do not alter the analysis. ECF No. 20 at 14-15. In *Purecycle*, the court could not determine whether the movant's assignment was valid because

---

[10] To the extent Tampa suggests that Storebrand must do more than produce its valid assignments to establish standing, Tampa has failed to establish its own standing under this standard. For example, Tampa has not provided any evidence establishing that the shares in its certification [ECF No. 12-3] were actually owned by Tampa rather than some other entity.

the movant—unlike Storebrand here—***never provided its assignment to the court***. *See* 2021 WL 5259840, at \*4.  In *Array II*, the court rejected the same movant from *Purecycle* because—unlike here—there where "serious" questions as to whether the assignment (which did not contain a choice of law provision) "fail[ed] to convey a property interest" in the claims and was instead an insufficient power of attorney.  2021 WL 5051649, at \*2.[11]  Tampa has not articulated ***any*** basis to conclude that Storebrand's assignments failed to convey a requisite property interest.  *See Chegg*, 2022 WL 4099454, at \*3.

The assignments in the record unquestionably establish Storebrand's standing.[12]

### 2.    The Prudential Exception Applies to Storebrand Fonder

Not content with its baseless attack on Storebrand's assignments, Tampa also incorrectly suggests that Storebrand failed to establish that Storebrand Fonder had standing under the prudential exception to represent its nine Swedish funds (which purchased Generac stock).  *See* ECF No. 20 at 12-13.  Tampa's assertion is not grounded in either the facts or the law.

Critically, Tampa's own case law explains that there are "well-recognized, prudential exceptions to the 'injury-in-fact' requirement . . . where the plaintiff can demonstrate (1) a close

---

[11] Tampa's reliance on *In re IMAX Securities Litigation*, No. 06 Civ 6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009), *In re SLM Corp. Securities Litigation*, 258 F.R.D. 112 (S.D.N.Y.), and *S. Ferry LP No. 2 v Killinger*, 271 F.R.D. 653 (W.D. Wash. 2011), is inapposite as all three cases involved assignments that were not executed until ***after*** the plaintiffs commenced litigation—raising concerns as to whether the plaintiffs' defective standing could be cured after the fact.

[12] Tampa's claim that Storebrand violated the "PSLRA disclosure requirement" because it "failed to identify" transactions for any other funds it manages is nonsensical.  ECF No. 20 at 11 n.9.  The PSLRA requires a movant's certification only to "set[] forth all of the transactions ***of the plaintiff*** . . . during the class period."  15 U.S.C. § 78u-4(a)(2)(A)(iv).  Given that Storebrand did not purchase any Generac stock itself—and only has claims in this litigation through assignments from three specific entities—the PSLRA plainly does not require Storebrand to disclose transactions made by ***separate legal entities*** that did not assign their claims to Storebrand and are not before the Court.  For example, STOREBRAND SICAV—the investment vehicle identified by Tampa, *see* ECF No. 20 at 11 n.9—is a Luxembourgian corporation, with its own board of directors, that did not assign its claims, to the extent it has any, to Storebrand.  *See* ECF No. 21-1 at 2, 47.

relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Huff*, 549 F.3d at 109. Storebrand Fonder and its funds unquestionably satisfy these requirements. As set forth in both Storebrand's sworn PSLRA certification and Storebrand Fonder's assignment, the Swedish funds "are not legal entities" and are represented by Storebrand Fonder "in all legal and financial matters." ECF No. 9-1 at 7 n.1, 11 n.1. This evidence conclusively establishes the applicability of the prudential exception given the "close relationship" between Storebrand Fonder and its funds, and the inability of the funds "to assert [their] own interests." *Huff*, 549 F.3d at 109.[13] Not only is this conclusion facially apparent, it is entirely consistent with the litany of cases finding Swedish asset managers to have standing to act on behalf of their funds. *See, e.g.*, *Coinbase*, 2022 WL 17582549, at *4 (finding that Swedish asset manager had authority under prudential exception); *Cohen v. Luckin Coffee Inc.*, No. 20-cv-01293, 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020) (same); *Hachem v. Gen. Elec. Inc.*, No. 17 Civ. 8457 (JMF) (S.D.N.Y. May 23, 2018) (transcript of lead plaintiff hearing), ECF No. 140 at 5:4-10 (attached as Kaplan Reply Decl., Ex. H) (same); *Ocwen*, 2014 WL 7236985, at *3 (same); *W. Union*, 2014 WL 4799659, at *5 (same); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d

---

[13] In addition to the unrebutted representations to the Court, the publicly available prospectuses for Storebrand Fonder's funds expressly confirm that the funds are "not a legal entity" and that Storebrand Fonder represents the funds "in all legal and financial matters." Kaplan Reply Decl., Ex. F. As if this evidence was not clear enough, Storebrand respectfully submits the expert declaration of Setterwalls to confirm that: none of Storebrand Fonder's funds "has legal capacity"; Storebrand Fonder "is the sole entity vested to represent" its funds; and Storebrand Fonder "is authorized to pursue litigation, either directly or by assigning claims stemming from" its funds. Kaplan Reply Decl., Ex. G ¶¶ 6.1–6.3. Declarations from Setterwalls have been expressly relied upon in cases affirming applicability of prudential exception to Swedish institutional investors. *See, e.g.*, *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, No. 14-81064-CIV, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014) (relying on declaration of Anders Månsson from Setterwalls); *City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, No. 13-cv-03325, 2014 WL 4799659, at *3 (D. Colo. Sept. 26, 2014) (same).

570, 581 (S.D.N.Y. 2009) (same).[14]  As such, there can be no reasonable debate that Storebrand Fonder has standing to pursue claims in connection with its funds' stock purchases.[15]

Much like its unsupported arguments regarding the assignments, Tampa makes no attempt to argue that the prudential exception *actually* does not apply here and instead suggests there is a controversy where there is none.  But Tampa's counsel knows that such speculative attacks are insufficient under the PSLRA given that its repeated challenges of Swedish asset managers' standing have been consistently rejected.  Indeed, just three months ago, the *Coinbase* court rejected prudential exception challenges Tampa's counsel raised against a Swedish asset manager as "amount[ing] to little more than speculation" that "falls short of the actual proof required under the PSLRA."  *Coinbase*, 2022 WL 17582549, at *4; *see also Luckin Coffee*, 2020 WL 3127808, at *7 (rejecting arguments raised by Tampa's counsel against a Swedish asset manager as having "not presented [the required] proof"); *Gen. Elec.*, Kaplan Reply Decl., Ex. H at 5:4-10 (rejecting

---

[14] *Cf., e.g.*, *Kraft*, 2019 WL 4958238 (appointing Swedish asset manager relying upon prudential exception); *Crews v. Rivian Auto., Inc.*, No. 22-cv-01524, 2022 WL 17883615 (C.D. Cal. July 1, 2022) (same); *Lu v. Align Tech., Inc.*, No. 18-CV-06720-LHK (N.D. Cal. Mar. 22, 2019), ECF No. 72 (Kaplan Reply Decl., Ex. I) (same); *Felix v. Symantec Corp.*, No. C 18-02902 WHA (N.D. Cal. Aug. 23, 2018), ECF No. 75 (Kaplan Reply Decl., Ex. J) (same).

[15] Citations to *Gross v. AT & T Inc.*, No. 19-CV-2892, 2019 WL 3500496 (S.D.N.Y. July 31, 2019), and *Plymouth County Retirement Association v. Innovative Technology, Inc.*, No. 21 Civ. 4390, 2021 WL 4298191 (S.D.N.Y. Sept. 21, 2021) ("*Array I*"), are readily distinguishable.  ECF No. 20 at 13-14.  In *AT & T*, the movant lacked prudential standing because "there [was] no apparent barrier to the Funds' ability to assert their own interests" as the funds were distinct legal entities.  2019 WL 3500496, at *3.  Judge Marrero found the movant in *Array I* lacked prudential standing because it "failed even to establish *any barriers* that prevented [its fund] from bring[ing] the securities claims" on its own.  2021 WL 4298191, at *5; *cf. Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, No. 22 Civ. 1014, 2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022) (Judge Marrero's subsequent decision applying prudential exception where European asset manager's fund "lacks authority to sue on its own").

arguments raised by Tampa's counsel against a Swedish asset manager).[16]

Given the PSLRA proof requirements, Tampa's citations to the Honorable William H. Pauley III's opinions in *Baydale v. American Express Co.*, No. 09 Civ. 3016, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009), and *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, 275 F.R.D. 187 (S.D.N.Y. 2011), are also unpersuasive. *Pipefitters* and *Baydale* disqualified movants **without** requiring proof of their inadequacy and have been repeatedly criticized by numerous courts as inconsistent with the analysis required by the PSLRA. As explained in *OFI*, the approach in *Pipefitters* and *Baydale*—which "avoided the [standing] issue by appointing another movant" rather than resolving the challenge—"rel[ies] on mere speculation" and fails to "appropriately appl[y] the burden of proof" required by the PSLRA. 63 F. Supp. 3d at 403; *see also Coinbase*, 2022 WL 17582549, at *4 n.3 ("the Court does not find *Pipefitters* or its predecessor, *Baydale* . . . to be persuasive authority"); *Ocwen*, 2014 WL 7236985, at *3 ("[the] approach in *Baydale*, and by extension, *Pipefitters*, **has been rejected** by other courts"). As such, the widely criticized and outdated *Baydale* and *Pipefitters* decisions provide no basis to ignore uncontroverted evidence establishing Storebrand Fonder's standing to represent its funds.

## III.  <u>CONCLUSION</u>

Because the IIG has the largest financial interest in the relief sought by the Class and otherwise qualifies as the most adequate lead plaintiff under the PSLRA, and Tampa has not put forward proof that rebuts this presumption, the IIG's motion should be granted and the sole competing motion of Tampa should be denied.

---

[16] Tampa's counsel successfully argued in *HCP* that the prudential exception applied to its German asset manager client because its funds "cannot bring suit on their own behalf." 2017 WL 5759361, at *4. Tampa's counsel provides no explanation for demanding a different result here.

Dated: March 7, 2023

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ David R. Kaplan*
David R. Kaplan
505 Lomas Santa Fe Drive
Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

**SAXENA WHITE P.A.**

Steven B. Singer (*admission pending*)
Rachel A. Avan (*admission pending*)
Alec T. Coquin (*admission pending*)
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com
ravan@saxenawhite.com
acoquin@saxenawhite.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for the Office of the Treasurer as Trustee
for the Connecticut Retirement Plans and Trust
Funds, Industriens Pensionsforsikring A/S, and*

*Storebrand Asset Management AS, and Proposed
Lead Counsel for the Class*

**CROSS LAW FIRM, S.C.**

Mary C. Flanner
SBN: 1013095
Nola J. Hitchcock Cross
SBN: 1015817
The Lawyers' Building
845 N. 11th Street
Milwaukee, WI 53233
Telephone: (414) 224-0000
Facsimile: (414) 273-7055
mflanner@crosslawfirm.com
njhcross@crosslawfirm.com

*Proposed Local Counsel for the Class*