UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OAKLAND COUNTY VOLUNTARY
EMPLOYEES BENEFICIARY
ASSOCIATION, et al.,

               Plaintiffs,

v.                                              Case No. 22-cv-1436-bhl

GENERAC HOLDINGS INC., et al.,

               Defendants.

CALIFORNIA IRONWORKERS FIELD
PENSION TRUST,

               Plaintiff,

v.                                              Case No. 23-cv-0081-bhl

GENERAC HOLDINGS INC., et al.,

               Defendants.

**ORDER APPOINTING LEAD PLAINTIFF AND COUNSEL**

       In these consolidated cases, Plaintiffs—investors who Defendant Generac Holdings, Inc. allegedly defrauded—propose a class action comprising those who suffered similar fates between April 29, 2021, and November 1, 2022, inclusive. (Case Nos. 22-cv-1436 & 23-cv-0081). They have sued Generac, itself, as well as CEO Aaron Jagdfeld and CFO York A. Ragen, and seek relief pursuant to the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (PSLRA). (Case No. 22-cv-1436, ECF No. 1; Case No. 23-cv-0081, ECF No. 1.) But before the case can begin in earnest, the PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class . . . most capable of adequately representing the interests of class members." 15 U.S.C. §78u-

4(a)(3)(B)(i). Two competing groups argue they fit the bill.[1] (Case No. 22-cv-1436, ECF Nos. 4 & 7; 23-cv-0081, ECF Nos. 8 & 11.) The first is the City Pension Fund for Firefighters and Police Officers in the City of Tampa (Tampa). The second is the Institutional Investor Group (the Institutional Investors), which includes the Office of the Treasurer as Trustee for the Connecticut Retirement Plans and Trust Funds, Industriens Pensionsforsikring A/S, and Storebrand Asset Management AS. After considering the parties' dueling motions and the text of the PSLRA, the Court concludes that Tampa satisfies the statutory criteria and will, therefore, appoint it lead plaintiff in this action and approve its selection of lead counsel.

## FACTUAL BACKGROUND[2]

As part of its effort to enter the renewable energy market, Generac developed a battery-based storage solution called PWRcell, which stored and managed electricity generated from solar panels. (Case No. 22-1436, ECF No. 1 ¶20.) Systems like the PWRcell are required by law to include a rapid shutdown device meant to isolate solar panels that have exceeded safe operation voltage thresholds. (*Id.* ¶21.) In the PWRcell, the component designed to perform this rapid shutdown function was called "SnapRS." (*Id.* ¶1.)

Plaintiffs in this lawsuit allege that, as early as April 29, 2021, Generac knew of serious defects with SnapRS that caused the component to overheat, melt, and in some cases start fires. (*Id.* ¶26; Case No. 23-0081, ECF No. 1 ¶6.) Despite this, the company continued to publicly tout the safety and success of its renewable energy business for the next year and a half. (Case No. 22-1436, ECF No. 1 ¶3.) The nature of this fraud allegedly leaked out piecemeal over time, on November 2, 2021, (Case No. 23-0081, ECF No. 1 ¶10); August 1, 2022, (*id.* ¶62); October 19, 2022, (*id.* ¶12); and November 2, 2022. (*Id.* ¶70.) All the while, a variety of traders purchased Generac stock at inflated prices and subsequently sold it for a significant loss, after the truth about SnapRS emerged. (Case No. 22-1436, ECF No. 1 ¶¶89-91.) Those losses form the basis for the consolidated class action complaints in this case.

---

[1] A third movant initially also sought appointment as lead plaintiff but later withdrew its motion after realizing it would not prevail. (Case No. 23-0081, ECF Nos. 4 & 23.)

[2] When considering a motion to appoint a lead plaintiff, the Court treats all but the most "obviously frivolous" allegations as true. *Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009). That said, at this stage, allegations remain just that, and this Order should not be read to express any opinion on the merits of Plaintiffs' underlying case.

## LEGAL STANDARD

As previously stated, the PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The statute creates a presumption that "[t]he most adequate plaintiff . . . is the person or group of persons that . . . (1) either filed the complaint or made a motion in response to a notice . . .; (2) . . . has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* (a)(3)(B)(iii)(I)(aa)-(cc). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at (a)(3)(B)(iii)(II)(aa)-(bb).

## ANALYSIS

### I. Tampa Is the Most Adequate Lead Plaintiff.

Both Tampa and the Institutional Investors seek appointment as lead plaintiff. Based on the current record, neither would be a bad choice. Each filed a timely motion. And each also fulfills the purpose of the lead plaintiff provision of the PSLRA, which "is to discourage lawyer-driven lawsuits filed on behalf of parties with only nominal interests in the matter, and to favor suits by institutional investors that have suffered large losses." *Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 623 (E.D. Wis. 2009). The question is, thus, not whether either movant is adequate but rather which is "most adequate." Under the statute, the answer depends on which "has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(B)(i)(2).

Unfortunately, the PSLRA does not precisely define that phrase or offer any specific method for sussing out who satisfies its conditions. Courts have, therefore, devised their own methodologies, often incorporating the so-called *Lax* factors. *See Lax v. First Merchs. Acceptance Corp.*, Nos. 97-C-2715, 97-C-2716, 97-C-2737, 97-C-2791, 97-C-3767, 97-C-4237, 97-C-4013, 97-C-4236, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (enumerating four factors that "are surely relevant" to the determination of who has the largest financial interest in the relief sought: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the

plaintiffs"). But the law does not require a court to cleave to the *Lax* factors or assign any factor any specific weight. Indeed, the *Lax* approach derives not from statutory text or appeals court precedent but the suggestion of a movant in *Lax* itself. *Id.* Thus, while the *Lax* factors may provide guidance in certain situations, when assessing which potential lead plaintiff has the largest financial interest in the relief sought by the class, courts ought to bear in mind that the PSLRA says nothing about "shares purchased" or "total net funds," and instead "prefer[s] that the court make the determination based on whatever factors seem most appropriate under the facts of the case before it." *Plumbers*, 256 F.R.D. at 624.

In this case, both movants calculated their financial interest according to estimated losses, employing the widely accepted last-in-first-out (LIFO) method. (Case No. 22-1436, ECF No. 8 at 11; ECF No. 11 at 6.) Finding no reason to deviate from that approach, the Court will also look to each movant's estimation of the loss it suffered under LIFO. The totals are close, but in the end, Tampa prevails, claiming $16,200,000 in losses to the Institutional Investors $15,667,761. (*Id.*)

But given the narrow margin of victory, the Institutional Investors are not keen to peaceably submit. Instead, they propose a myriad of manipulations through which the Court might exclude certain alleged losses and thereby reduce Tampa's stake in the case. They ask the Court to strike an alleged partial disclosure of fraud and apply *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) to deduct millions from Tampa's avowed interest in the relief sought. But at the lead plaintiff stage, courts should not contort the record to suit one party's narrative absent strong evidence of unscrupulous conduct. *See Plumbers*, 256 F.R.D. at 624-25. The Institutional Investors have not produced such evidence here.

### A. There Is No Reason to Strike Any Alleged Partial Disclosure of Fraud.

This consolidated case comprises two separate class action complaints. The first, filed in *Oakland County Voluntary Employees Beneficiary Association, et al. v. Generac Holdings, Inc., et al.*, alleges three partial disclosures of fraud, occurring on August 1, 2022; October 19, 2022; and November 2, 2022. (Case No. 22-1436 ECF No. 1 ¶¶64, 74, 78.) The second, filed by Tampa's counsel, in *California Ironworkers Field Pension Trust v. Generac Holdings, Inc. et al.*, alleges that the first evidence of Generac's fraud actually emerged on November 2, 2021. (Case No. 23-0081, ECF No. 1 ¶10.) This date is of particular importance to Tampa because about half of its claimed losses occurred in May 2022 and, therefore, have no causal relation to any partial disclosure alleged in the original complaint. In other words, without the partial disclosure on

November 2, 2021 (which only Tampa's counsel alleged), Tampa no longer has the most losses under the LIFO method.

To the Institutional Investors, this smells suspicious enough to warrant striking the November 2, 2021 date from the *California Ironworkers* complaint. But this early in the case, "rather than ruling on the proper class period, courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period." *Plumbers*, 256 F.R.D. at 624-25. That approach respects the PSLRA's command to identify "the broadest, most inclusive potential class." *Id.* at 625. And should a nefarious movant attempt to game the system as the Institutional Investors suggest Tampa has, courts can always impose sanctions at a later date. *Id.* For these reasons, this Court has previously held "that an adequate safeguard against abuse is to simply review the complaint and briefs to make sure that the allegations supporting the longer class period are not obviously frivolous." *Id.*; *see also Christian v. BT Grp. PLC*, No. 2:17-cv-00497-KM-JBC, 2017 WL 3705804, at *7 (D.N.J. Aug. 28, 2017) ("In determining what is a partial disclosure for loss causation purposes, the case law instructs courts to hew closely to the allegations of the complaint.").

The *California Ironworkers* complaint alleges that the first partial disclosure of Generac's fraud occurred on November 2, 2021, when Generac posted disappointing earnings and lowered its fiscal year guidance, leading to a more than $50 dip in stock price. (Case No. 23-0081, ECF No. 1 ¶10.) There is nothing "obviously frivolous" about this allegation. Nor is it decisive that Tampa's counsel was the one to raise it; one would expect diligent lawyers to root out and plead every possible instance of fraud in order to maximize the client's potential recovery. The incentive to fabricate the record is no stronger than the incentive to accurately supplement it. Moreover, the Institutional Investor's gambit is not perfectly innocuous either. If successful, it "would have the effect of reducing the class size and limiting the potential amount of damages." *Marcus v. J.C. Penney Co., Inc.*, 6:13-CV-736; Nos. 6:13-CV-750; 6:13-CV-810, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014). "It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff." *Id.* "This self-serving behavior

is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [the Institutional Investors] lead plaintiff." *Id.*

In sum, reading the allegations as it must at this preliminary stage, the Court cannot grant the Institutional Investors' request to strike the November 2, 2021 partial disclosure of fraud.

**B. There Is No Reason to Exclude So-Called "In-and-Out Transactions" in the Way the Institutional Investors Propose.**

The Institutional Investors' other argument is that under the Supreme Court's holding in *Dura*, this Court must subtract at least $1.4 million from Tampa's alleged losses. *Dura* did not involve a motion to appoint a lead plaintiff, but some courts, specifically those in the Second Circuit, have applied it at the lead plaintiff stage to deduct "losses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (quoting *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 238 (E.D.N.Y. 2011)). The idea is that, to state a claim under the PSLRA, plaintiffs must allege that they suffered losses because they bought a stock under illusions about a company's stability and then sold that stock at a loss because the "share value depreciate[d] . . . when the [truth] bec[a]me generally known." *Dura*, 544 U.S. at 344. Thus, losses suffered prior to any revelation of fraud are unrecoverable under *Dura*, and, as the Institutional Investors and various courts see it, those unrecoverable losses ought not count toward a potential lead plaintiff's financial interest in the case either.

Relevant here are about $1.4 million in losses Tampa claims to have suffered in May 2022. These losses stemmed from the May 9, 2022 sale of 15,000 Generac shares purchased on February 16, 2022 and another 10,000 shares purchased on May 4, 2022. (Case No. 22-1436, ECF No. 22 at 9.) While Tampa indisputably incurred these losses *between* disclosures, the losses' causal relationship to any particular disclosure is less certain. The pertinent shares were purchased *after* the first alleged disclosure of fraud on November 2, 2021 and sold *before* any subsequent disclosures. For that reason, the Institutional Investors believe the losses should be excluded from Tampa's calculations. But to the Court's knowledge, no precedent, binding or otherwise, endorses this approach. Plenty of courts exclude losses incurred *prior to* the first alleged disclosure of fraud. *See In re Comverse Tech., Inc. Secs. Litig.*, No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007); *City of Sunrise Firefighter's Pension Fund v. Citigroup, Inc.*, Nos. 20-cv-9132, 20-cv-9573, 20-cv-10360, 2021 WL 396343, at *5 (S.D.N.Y. Feb. 4, 2021). Others have excluded losses for shares purchased *after* the final partial corrective disclosure. *See Africa v. Jianpu Tech., Inc.*, 21-

CV-1419 (JMF), 2021 WL 1999467, at *2 (S.D.N.Y. May 19, 2021). But no court "exclude[s] in-and-out transactions that occurred subsequent to the first alleged corrective disclosure." *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084, 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019). That makes sense, especially in a case like this one. "Where all movants are institutional investors that have suffered large losses rather than professional plaintiffs, judicial resources are not well-spent on finely-calibrated inquiries into which plaintiff has the largest financial interest." *Plumbers*, 256 F.R.D. at 623; *see Plaut*, 2019 WL 4512774, at *4 (refusing to exclude in-and-out transactions that occurred subsequent to the first alleged corrective disclosure because it would necessitate resolution of various factual issues related to causation). Courts that sleuth about excessively at this early juncture risk turning the lead plaintiff process into a trial on the merits, and that is not consistent with the PSLRA's goals. For that reason, this Court will not exclude alleged in-and-out transactions that occurred between partial disclosures of fraud.

### C. The Court Will Appoint Tampa Lead Plaintiff.

Because it filed a timely motion, has the largest interest in the relief sought by the class, and otherwise satisfies Federal Rule of Civil Procedures adequacy and typicality requirements, Tampa is the presumptive lead plaintiff under the PSLRA. The Institutional Investors have not rebutted this presumption, so the Court will appoint Tampa lead plaintiff.

### II. The Court Will Appoint Robbins Geller Rudman & Dowd as Lead Counsel.

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). Courts "generally defer[] to the plaintiff's choice of counsel, and will only reject the plaintiff's choice if necessary to protect the interests of the class." *Citigroup, Inc.*, 2021 WL 396343, at *6 (quoting *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 31 (E.D.N.Y. 2019)). In this case, Tampa has selected Robbins Geller Rudman & Dowd (Robbins Geller) as counsel. (ECF No. 11 at 7-8.) Robbins Geller has extensive experience litigating these sorts of cases. (*Id.* at 8-9.) The firm has also obtained the largest securities fraud class action recovery in the history of the Seventh Circuit. (*Id.* at 8.) It is,

therefore, well-suited to represent the class in this action. Accordingly, consistent with Tampa's selection, the Court will appoint Robbins Geller lead counsel.

## CONCLUSION

For the forgoing reasons,

**IT IS HEREBY ORDERED** that Tampa's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, (Case No. 22-1436, ECF No. 4) is **GRANTED**. Tampa is appointed lead plaintiff, and Robbins Geller is designated lead counsel.

**IT IS FURTHER ORDERED** that the Institutional Investors' Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, (Case No. 22-1436, ECF No. 7), is **DENIED**.

Dated at Milwaukee, Wisconsin on May 30, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge