## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

OAKLAND COUNTY VOLUNTARY
EMPLOYEES BENEFICIARY
ASSOCIATION, et al.,

        Plaintiffs,

    v.

GENERAC HOLDINGS INC., AARON
JAGDFELD, and YORK A. RAGEN,

        Defendants.

Case No. 2:22-cv-01436-BHL
      (Consolidated with Civil No.
      2:23-cv-00081-BHL)

<u>CLASS ACTION</u>

## <u>REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'</u>
## <u>MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................... 1

II. ARGUMENT ............................................................................................................... 2

    A.    The Complaint Is An Impermissible Puzzle Pleading ........................................... 2

    B.    The Complaint Fails To Adequately Plead Falsity ............................................... 3

        1.    The Complaint fails to plead with particularity that the HSB Statements were false or misleading ........................................... 4

        2.    The Complaint fails to plead with particularity that the SnapRS Statements were false or misleading ........................................... 8

        3.    The Complaint fails to plead with particularity that the Dealer Statements were false or misleading ........................................... 10

        4.    Forward-looking statements are protected by the PSLRA safe harbor ................................................................................ 11

        5.    Statements expressing corporate optimism are not actionable ................ 13

        6.    Allegations regarding SEC Regulation S-K do not plead falsity ............. 14

        7.    Allegations of supposed GAAP violations do not plead falsity .............. 14

    C.    The Complaint Fails To Adequately Plead Scienter ........................................... 15

    D.    The Alleged Misstatements And Omissions Were Immaterial ........................... 18

    E.    The Complaint Fails To Plead Loss Causation .................................................... 19

III. CONCLUSION ........................................................................................................... 20

Case 2:22-cv-01436-BHL    Filed 01/31/24    Page 2 of 26    Document 55

**Page(s)**

**Cases**

*Allison v. Oak St. Health, Inc.*,
2023 WL 1928119 (N.D. Ill. Feb. 10, 2023) ...........................................................2, 12, 13, 14

*Anderson v. Abbott Labs.*,
140 F. Supp. 2d 894 (N.D. Ill. 2001) ...............................................................................11, 13

*Azar v. Grubhub, Inc.*,
2021 WL 4077327 (N.D. Ill. Sept. 7, 2021) .............................................................................2

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .................................................................................................11

*In re Boeing Co. Aircraft Sec. Litig.*,
2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) .........................................................................19

*Bondali v. Yum! Brands, Inc.*,
620 F. Appx. 483 (6th Cir. 2015)..............................................................................................4

*In re CenturyLink Sales Practices and Sec. Litig.*,
403 F. Supp. 3d 712 (D. Minn. 2019).....................................................................................17

*Chandler v. Ulta Beauty, Inc.*,
2022 WL 952441 (N.D. Ill. Mar. 30, 2022)............................................................................17

*Constr. Workers Pension Fund-Lake Cnty. and Vicinity v. Navistar Int'l Corp.*,
2014 WL 3610877 (N.D. Ill. July 22, 2014).............................................................................3

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................................19, 20

*ECA, Loc. 134 IBEW Jt. Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).............................................................................................13, 18

*Flynn v. Exelon*,
2021 WL 1561712 (N.D. Ill. Apr. 21, 2021) ......................................................................2, 14

*Fryman v. Atlas Fin. Holdings, Inc.*,
462 F. Supp. 3d 888 (N.D. Ill. 2020) ..................................................................................5, 18

*Golubowski v. Robinhood Markets, Inc.*,
2024 WL 269507 (N.D. Cal. Jan. 24, 2024) .............................................................................6

*In re Harley-Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wis. 2009)....................................................................3, 16, 17, 18

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ...............................................................................................15

*J&R Mktg., SEP v. GMC*,
549 F.3d 384 (6th Cir. 2008) ...............................................................................................13

*Kampe v. Volta, Inc.*,
2024 WL 308262 (N.D. Cal. Jan. 26, 2024) ........................................................................4

*Macovski v. Groupon*,
2021 WL 1676275 (N.D. Ill. Apr. 28, 2021) ........................................................................3

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
513 F.3d 702 (7th Cir. 2008) ...............................................................................................15

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ...........................................................................................20

*In re Midway Games Inc. Sec. Litig.*,
332 F.Supp.2d 1152 (N.D. Ill. 2004) ..............................................................................13, 18

*In re Neopharm, Inc. Sec. Litig.*,
2003 WL 262369 (N.D. Ill. Feb. 7, 2003) ............................................................................8

*In re Newell Rubbermaid Inc. Sec. Litig.*,
2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) ..................................................................18, 19

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)......................................................................................7

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015).................................................................................................................7

*Parries v. Gateway 2000, Inc.*,
122 F.3d 539 (8th Cir.1997) .................................................................................................18

*In re Piedmont Lithium Inc. Sec. Litig.*,
2024 WL 197751 (E.D.N.Y. Jan. 18, 2024) ........................................................................15

*Pierrelouis v. Gogo, Inc.*,
414 F. Supp. 3d 1164 (N.D. Ill. 2019) ..............................................................................8, 10

*Plumbers and Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v.
Allscripts-Misys Healthcare Sols., Inc.*,
778 F. Supp. 2d 858 (N.D. Ill. 2011) ................................................................................11, 12

Case 2:22-cv-01436-BHL    Filed 01/31/24    Page 4 of 26    Document 55

*Reilly v. U.S. Physical Therapy, Inc.*,
  2018 WL 3559089 (S.D.N.Y. July 23, 2018) ...................................................................15, 16

*Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
  2018 WL 844420 (N.D. Ill. Feb. 12, 2018) ...........................................................................12

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
  2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)............................................................................4

*Ross v. Career Educ. Corp.*,
  2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)............................................................................4

*In re Spiegel, Inc. Sec. Litig.*,
  382 F. Supp. 2d 989 (N.D. Ill. 2004) .......................................................................................3

*St. Lucie Cnty. Fire Dist. Firefighters' Pension Tr. Fund v. Motorola, Inc.*,
  2011 WL 814932 (N.D. Ill. Feb. 28, 2011) ...........................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..............................................................................................................4, 15

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) ..................................................................................................19

*Van Noppen v. InnerWorkings, Inc.*,
  136 F. Supp. 3d 922 (N.D. Ill. 2015) .......................................................................................4

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
  495 F. Supp. 3d 622 (N.D. Ill. 2020) .............................................................................15, 19

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...............................................................................................................4

15 U.S.C. § 78u-5(c)(1) .............................................................................................................12

PSLRA ..................................................................................................................... *passim*

**Other Authorities**

Rule 10b-5.................................................................................................................................14

Case 2:22-cv-01436-BHL    Filed 01/31/24    Page 5 of 26    Document 55

## I. PRELIMINARY STATEMENT

In their Opposition (ECF No. 52) (the "Opposition" or "Opp.") to Defendants' Motion to Dismiss (ECF No. 47) (the "Motion" or "Mot."), Plaintiffs employ the same strategy as in their Complaint. Just as plaintiffs attempt in numerous similar shareholder cases each year, the Opposition here tries to bury the Court in a blizzard of theories, conjecture, and purported "facts," in hopes of obfuscating the Complaint's pleading deficiencies. Recognizing the weakness of their allegations, Plaintiffs also try to convince the Court that their pleading burden is easily attainable. Not so. The express intent of the PSLRA is to impose uniquely high pleading burdens on shareholder plaintiffs, so that courts may dispose of meritless claims like those here at the pleading stage. This is the reason that courts routinely peer through the plaintiffs' blizzards and dismiss even the lengthiest of shareholder complaints. This Court should do the same, as the Complaint fails to plead any theory of fraud with the particularity required by the PSLRA.

First, the Complaint does not plead particularized facts to show that any challenged statement was false or misleading. As to the HSB Statements, the Opposition makes clear that Plaintiffs' theory centers on "close rates." The Complaint, however, does not plead facts to demonstrate that, at the time of Defendants' opinions describing positive HSB demand, Defendants possessed data showing that close rates were declining, "demand" was actually declining, or any Defendant believed that HSB demand was not positive, whether based on close rate data or any other factor. To the contrary, the Complaint's allegations describe demand that was positive and facts showing that Defendants believed it to be so. As to the SnapRS Statements, the Complaint does not allege any facts—and the Opposition does not cite any—to plead that any Defendant knew before the end of the Class Period that the product issues were so pervasive or incurable as to require that the Company record a loss. As to the Dealer Statements, Plaintiffs mischaracterize and take entirely out of context the statements Defendants actually made. In

1

reality, Defendants did not refer to dealer "diversification." They instead referred to and explained the breadth of the dealer network. Critically, the Complaint does not allege any theory or facts to suggest that Generac did not have a broad network of dealers (it did and still does).

Second, the Opposition suggests that piecing together boilerplate scienter theories is sufficient—by the sheer number of theories—to satisfy the PSLRA's heightened pleading standard. It is not. Numerous courts have rejected just such a pleading tactic, recognizing plaintiffs' burden to allege particularized facts to establish a "strong inference of scienter."

Finally, the Complaint does not adequately plead materiality or loss causation.

For these reasons, and the reasons set out below and in the Motion, the Complaint should be dismissed in its entirety.

## II. ARGUMENT

### A. The Complaint Is An Impermissible Puzzle Pleading

The Motion explains that the Complaint should be dismissed as a threshold matter because it is a "puzzle pleading." Mot. at 12. The Complaint lists more than a hundred statements, followed by rote and often identical lists of reasons these statements are supposedly misleading, but does not connect any specific statement with the specific alleged reason(s). *Id*. at 12-13.

The Opposition first responds that courts have upheld "similar" complaints filed by Plaintiffs' counsel. Opp. at 31. In reality, *none* of the cases the Opposition cites actually addressed puzzle pleading. *See Flynn v. Exelon*, 2021 WL 1561712 (N.D. Ill. Apr. 21, 2021); *Azar v. Grubhub, Inc.*, 2021 WL 4077327 (N.D. Ill. Sept. 7, 2021); *Allison v. Oak St. Health, Inc.*, 2023 WL 1928119 (N.D. Ill. Feb. 10, 2023). It is therefore irrelevant whether other courts have upheld some complaints that Plaintiffs' counsel filed in other cases.

Next, the Opposition argues that it is sufficient for the Complaint to emphasize the alleged misstatements and then insert a laundry list of the supposed "factual bases" for alleging falsity.

2

Opp. at 31. As the Motion explains, courts have rejected exactly this kind of pleading: merely organizing alleged misrepresentations, using bold or italic typeface, and using formulaic assertions of the "factual basis" for alleging falsity. Mot. at 13; *Macovski v. Groupon*, 2021 WL 1676275, at *5-6 (N.D. Ill. Apr. 28, 2021) (dismissing puzzle pleading complaint that "left it to the defendants and to the Court to sort out the alleged misrepresentations and match them with the purportedly contrary facts"). Defendants' ability to discern three categories of alleged misstatements (*see* Opp. at 31) does not solve the Complaint's failures to connect each statement within those categories to the reason(s) each is allegedly false or misleading. *Macovski*, 2021 WL 1676275, at *6; *Constr. Workers Pension Fund-Lake Cnty. and Vicinity v. Navistar Int'l Corp.*, 2014 WL 3610877, at *5 (N.D. Ill. July 22, 2014) ("The PSLRA requires plaintiffs not only to identify specific false or misleading statements, but also to explicitly connect those statements to factual allegations demonstrating that they are false.").[1]

### B. The Complaint Fails To Adequately Plead Falsity

Plaintiffs' suggestion that the Court may end its scrutiny of the Complaint if it finds that the falsity element has been met for just some alleged misstatements, or some misstatement categories, is flat-out wrong. *See* Opp. at 15. Plaintiffs' suggestion that the Court ***not*** examine each challenged statement is also telling. Plaintiffs recognize that their Complaint does not adequately plead at least some (if not all) of the alleged misstatements, and thus seek to avoid the scrutiny that

---

[1] Notably, the Opposition does not address *In re Guidant*. This is likely because the complaint there, like here, relied on "lengthy quotations" followed by "a similar (in most cases identical) laundry list of 'specific' reasons the statements are allegedly false." 536 F. Supp. 2d 913, 926 (S.D. Ind. 2008). Moreover, Plaintiffs seek to distinguish *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969 (E.D. Wis. 2009), on which Defendants rely only to define "puzzle pleading." *See* Opp. at 31-32; Mot. at 12. Plaintiffs' citation to an earlier case, *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1012 (N.D. Ill. 2004), is not persuasive because it offered no rationale for suggesting that defendants suffer no prejudice from puzzle pleading.

3

the PSLRA mandates: courts routinely evaluate allegations on a "statement-by-statement" basis to "determin[e] whether Plaintiffs have alleged their securities fraud claims sufficiently." *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 932 (N.D. Ill. 2015) (analyzing statements individually). As recently as last week, a district court followed the PSLRA's mandate, examined alleged misstatements individually, and selected particular alleged misstatements to dismiss for failure to plead falsity. *See Kampe v. Volta, Inc.*, 2024 WL 308262, at *29 (N.D. Cal. Jan. 26, 2024); *see also Bondali v. Yum! Brands, Inc*., 620 F. Appx. 483, 491 (6th Cir. 2015) (circuit courts undertake a statement-by-statement analysis of falsity allegations).[2]

### 1. The Complaint fails to plead with particularity that the HSB Statements were false or misleading

On the Motion, the Court must decide whether the Complaint alleges particularized facts sufficient to plead that Defendants possessed information ***at the time*** each HSB Statement was made, the omission of which rendered each statement misleading. *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at *20 (N.D. Ill. Mar. 31, 2011) (plaintiffs "must allege facts with sufficient particularity that [the company] made statements that were 'false when made (not incorrect in retrospect)'"). The Complaint does not plead such contemporaneous knowledge.

***First***, Plaintiffs' attack on the HSB Statements rests on an allegation that there were undisclosed "then-existing contrary negative facts and trends" related to HSB demand—allegedly

---

[2] Plaintiffs mischaracterize *Ross v. Career Educ. Corp.,* 2012 WL 5363431, at *8 (N.D. Ill. Oct. 30, 2012). The court there found that it did not need to address a third category of statements because it was satisfied that the allegations already discussed in connection with other statements also pled falsity for the third category. In any event, *Ross* does not supersede the PSLRA and the Supreme Court, both of which require that shareholder plaintiffs plead specific allegations to explain the reason that ***each*** statement is allegedly misleading. *See* 15 U.S.C. § 78u-4(b)(1); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 321 (2007) (PSLRA requires plaintiffs to identify each specific statement alleged to be false or misleading and explain the reason it is misleading).

declining close rates. Opp. at 4-5, 16-18. The Complaint does allege that close rates declined during the Class Period. *E.g.*, ¶¶ 11-12. Critically, though—and even if that allegation is taken as true—the Complaint does **not** allege any facts to plead that Defendants knew at the time the HSB Statements were made that close rates were then-declining. The Complaint merely assumes that to be the case. An assumption does not satisfy the PSLRA's particularity requirement.[3]

While Plaintiffs point to Defendants' November 2022 statements that close rates had, in retrospect, declined earlier in the Class Period and "bottomed out in early 2022," Opp. at 18, Plaintiffs are again simply assuming that the data on which Defendants were commenting in November 2022 were known to Defendants when the HSB Statements were much earlier made— e.g., in July 2021. That assumption does not plead facts to show contemporaneous knowledge. *See Fryman v. Atlas Financial Holdings, Inc.*, 462 F. Supp. 3d 888, 901 (N.D. Ill. 2020) (omission claim based on nondisclosure of negative trend not adequately pled where factual allegations did not show that defendants knew information was wrong at the time statements were made).[4]

---

[3] The Complaint's own allegations demonstrate the reason the PLSRA does not permit Plaintiffs to substitute assumptions for well-pled facts. "Close rates" are the rates at which initial home consultations ("IHCs") convert to actual sales. ¶ 11. It necessarily follows that close rates cannot be estimated until after purchases are completed. Indeed, as the Complaint admits, the data are delayed by the product's lead time or backlog, and by dealer installation constraints. For example, the Complaints alleges that lead time was 28 weeks when Defendants made the July 2021 HSB Statements. ¶ 109(c). The Complaint's allegations thus show that Defendants **could not have known** the close rates for Q3 2021 IHCs until at least Q1 2022—well after the July 2021 HSB Statements. These factual allegations betray Plaintiffs' assumption. Similarly, Plaintiffs point to alleged omissions of promotional practices that were purportedly used to inflate orders (*see* Opp. at 17), but the Opposition does not respond to the Complaint's failure to allege facts to show that sales were actually inflated, or that Defendants knew so at the time of the HSB Statements. *See* Mot. at 17-18.

[4] The Opposition's cite to *Carpenters Pension Tr. Fun for N. Cal. v. Allstate Corp.* does not aid Plaintiffs. The court there found that later admissions suggested the alleged misstatements "were incorrect when made." 2018 WL 1071442, *6 (N.D. Ill. Feb. 27, 2018). The Complaint here does not plead any facts to show that the challenged statements were known to be false at the time made.

5

***Second***, even if the Complaint did plead that close rates were contemporaneously known (it does not), Plaintiffs mislead the Court by simply labeling close rates as an "essential indicator of end-customer demand," without any facts to support that label. Opp. at 4. Plaintiffs' argument boils down to this: if executives opine that there is strong demand for the company's products, and that opinion is based on multiple variables, plaintiffs can cherry-pick another, incomplete variable that they say might suggest otherwise, and then label the executives' opinions "securities fraud." That is not consistent with the law or the facts. *See Golubowski v. Robinhood Markets, Inc.*, 2024 WL 269507, at *11 (N.D. Cal. Jan. 24, 2024) (selected financial metrics, when viewed "in proper context," did not reflect an extraordinary or persistent decline requiring disclosure).

Contrary to Plaintiffs' labels, close rates are not determinative of demand. Most importantly, the Complaint does not allege any facts to show that they are. Indeed, simple logic and math shows that close rates can decline while demand increases. To illustrate: Assume that Generac dealers had 100 IHCs in a quarter, which resulted in 50 closed sales, for a 50% close rate. Now assume that Generac dealers had 300 IHCs in the next quarter, which resulted in 100 closed sales, for a 33% close rate. Although the close rate declined quarter-over-quarter, from 50% to 33%, it would be reasonable to opine that consumer demand remained strong, as sales doubled.[5]

***Finally***, the Opposition is further notable in shifting the Complaint's theory, articulating for the first time a "half-truth" theory under which Defendants allegedly concealed declining close rates as opposed to weakening overall demand.[6] This shift is likely because Plaintiffs cannot plead

---

[5] Plaintiffs' own allegations show that Generac's CFO referred to precisely this point when, in response to an analyst question about close rates, he forthrightly explained, "[Y]ou really have to look at the IHCs to really understand what's going on with the end market demand." *See* Opp. at 5 (citing ¶ 128(e)). He was not concealing data or misleading investors; he was explaining the reason that close rates, alone, do not describe overall demand.

[6] *See, e.g.,* Complaint at p. 37, titling section "False and Misleading Statements ***Concealing the Weakening Generator Demand***." (Emphasis added.)

6

plausible allegations that demand did actually decline. In any event, the Opposition now makes clear that Plaintiffs take issue with HSB Statements that are statements of opinion, rather than of fact, because they are subjective conclusions about demand drawn from the interpretation of multiple variables.[7] Such opinion statements are only actionable if either "the speaker did not hold the belief she professed" or if "the supporting fact[s] she supplied were untrue." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

The Complaint does not even attempt to allege that Defendants did not believe that HSB demand was strong, or that the facts Defendants supplied in support of their views were untrue. To the contrary, the Complaint details Defendants' decisions to invest in a new production facility and to increase HSB production—facts demonstrating that Defendants truly believed that demand remained strong. *See* ¶¶ 65-66, 70. The Complaint likewise concedes that Defendants often described the factual bases for their views, and makes no allegations that those bases were untrue. *See*, *e.g.,* ¶ 123(f) ("*[b]ased on the IHC volume*, we think the demand is there…,", ¶ 123(a) ("*home consultations. . . were nearly 3x higher. . . reinforcing our view* that demand. . . has once again achieved and held a new and higher baseline level") (emphases added).[8]

---

[7] These include statements alleged at ¶¶ 109(a), 109(h), 110(a), 110(b), 110(c), 113(a), 113(b), 113(d), 113(e), 114, 117, 118(a), 119(a), 119(b), 123(a), 123(c), 123(d), 123(f), 124, 127, 128(a), 128(d), 128(e), 129, and 132(c). Notably, the Opposition highlights the opinion nature of the statements. *See, e.g.*, Opp. at 5 (quoting Mr. Jagdfeld as stating home consultations were higher than prior year "*reinforcing our view*" regarding demand); *id*. at 6 (quoting Mr. Jagdfeld as stating "*we think*" the demand is there) (emphases added).

[8] Plaintiffs also claim that Defendants disclosed only positive data while ignoring "contrary negative facts and trends." Opp. at 16. Rather, as Defendants' statements made clear, they assessed the full picture and interpreted all the data, not just one data point. As a matter of law, "[a]n opinion statement . . . is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 189; *see also Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 26 (S.D.N.Y. 2019) (citing same and relied upon by Plaintiffs in the Opposition at 17).

The Motion explains that the Complaint does not allege facts to plead that Defendants possessed information about the scope and severity of the alleged SnapRS issues, such that they knew *at the time* each SnapRS Statement was made that Generac was exposed to "significant liabilities." Mot. at 20-24. The Opposition first responds with a transparent attempt to avoid Plaintiffs' burden to allege facts showing contemporaneous knowledge, by recasting the Motion's point as if it addressed scienter or raised a factual dispute. Opp. at 20.[9] The law, however, is clear that alleging such facts is required to plead the *falsity* element of a Section 10(b) claim. *See Pierrelouis v. Gogo, Inc.,* 414 F. Supp. 3d 1164, 1174 (N.D. Ill. 2019) (without specific facts to demonstrate that an alleged product defect was "of 'a sufficient magnitude,' . . . plaintiffs' allegations do not support a reasonable belief that defendants' statements were false, misleading, or without a reasonable basis at the time they were made").[10]

Next, Plaintiffs revert from denying that the Complaint must allege that Defendants knew the magnitude of the SnapRS problem, to arguing that the Complaint sufficiently alleges as much. The Opposition first relies on a handful of out-of-circuit cases to excuse the Complaint's deficient allegations. Selectively quoting a California case, the Opposition argues that it is enough to baldly

---

[9] The Motion did not raise any factual dispute about the magnitude of the alleged defect. Instead, it points out that the Complaint does not allege that Defendants possessed information prior to June 2022 about the alleged defect's scope, and does not allege *any* facts to show that Defendants knew information during the Class Period that established Generac was subject to "significant liabilities." Mot. at 21-24. The Opposition's cited case law (at 20) is beside the point.

[10] In fact, one of Plaintiffs' authorities confirms that the Complaint must allege that Defendants actually knew of the magnitude of the alleged defect. The Court in *In re Neopharm, Inc. Sec. Litig.*, 2003 WL 262369, at *13 (N.D. Ill. Feb. 7, 2003), denied the defendants' motion to dismiss, in part, because the complaint alleged specific reports to defendants regarding the results of clinical trials, sufficient to plead that "the full extent of the problems with [the product] was known by defendants." The Complaint here does not make any similar allegations.

8

suggest that the magnitude of the problem became apparent at some unspecified time during the Class Period. Opp. at 20. Plaintiffs' authorities stand for no such general proposition, and the Opposition fails to distinguish the contrary authorities Defendants cite. *See* Mot. at 20-24. The Opposition then urges the Court to simply "infer" that the SnapRS issue was of a magnitude requiring disclosure, based on allegations that Generac began selling solar products, including SnapRS, in 2019-2020 and that "[n]early 50% of all units sold were defective." Opp. at 20. No inference can be drawn from such sparse allegations, particularly as to **when** Defendants discovered the problem was allegedly so widespread. The "nearly 50%" allegation is based on a purported June 2022 statement (i.e., late in the Class Period); and even that statement was limited to only products Pink Energy sold, **not** all SnapRS units sold. *See* ¶ 95(c).

As a last ditch effort, the Opposition stretches the Complaint's actual allegations to misleadingly claim that the Complaint pleads earlier knowledge of the purported scale of the SnapRS issue and liabilities. Not so. This claim relies on vague and unconvincing allegations. For example, the Opposition cites an alleged December 2022 statement vaguely referencing "product challenges that ensued shortly after launch." Opp. at 20. That statement did not refer to the alleged SnapRS issue, let alone Defendants' knowledge of it. *See* ¶ 96. The Opposition's suggestion that the SnapRS issue arose "shortly after launch" in 2019 is also inconsistent with the Complaint's allegation that the first SnapRS malfunctions occurred two years later, in April 2021. *See* Opp. at 20; ¶ 76. The Opposition also relies on allegations concerning Pink Energy's knowledge, **not** Defendants' knowledge. *See* Opp. at 21; ¶¶ 80-82. The Opposition separately touts that, by late 2021, Generac was **investigating** certain SnapRS issues and **developing** an updated SnapRS model. *See* Opp. at 22. Those allegations only confirm that Defendants did not yet know whether there was a sufficiently severe or pervasive problem to expose the Company to significant liabilities. *Cf.*

*Pierrelouis*, 414 F. Supp. 3d at 1168-69 (insufficient allegations to allege falsity where complaint claimed company was developing "fixes" during period at issue).

Ultimately, none of Plaintiffs' arguments change the fact that the Complaint alleges only a *single instance* of a SnapRS product supposedly failing prior to August 2021 (¶ 78), and that the Complaint alleges *no* facts to show that Defendants knew before October 2022 that the SnapRS issue actually exposed the Company to significant liabilities. *See* Mot. at 22-24.

> **3.      The Complaint fails to plead with particularity that the Dealer Statements were false or misleading**

There are multiple bases on which the Court should conclude that the Dealer Statements allegations fail to sufficiently plead falsity. The Opposition concedes that Defendants had no affirmative duty to disclose sales volume on a dealer-by-dealer basis. *See* Opp. at 22. Recognizing this, Plaintiffs engage in sleight-of-hand—specifically, Plaintiffs claim that Defendants gave "repeated assur[ances]" that Generac was "selling solar products through a *diversified* base of thousands of dealers," which created a "duty to disclose that Generac's solar sales were highly *concentrated* through just one dealer." Opp. at 22 (emphases added). Those are Plaintiffs' words, not Defendants'. *None* of Defendants' alleged misstatements actually said anything about a "diversified" solar dealer base or referred to dealer "concentration."

Plaintiffs' choice to substitute their own terms and characterizations in place of the words Defendants' actually used gives away Plaintiffs' game. The actual statements Defendants made related to the *breadth* of Generac's distribution network.[11] Statements about the Company's broad

---

[11] *See, e.g.*, ¶ 101 (claiming that Defendants discussed a "diversified" dealer network, but quoting Mr. Ragen's statement that, "you need to have . . . very *broad* channels of distribution and a large pipe to be able to sell your products through" (emphasis added)); *see also* ¶ 155(a) (claiming statement that merely noted the *number* of dealers somehow touted Generac's "diversified" dealer network); ¶ 157(a) (same). The Complaint does not quote a single statement in which Defendants said the dealer network was "diversified" or was not "concentrated." This is the same tactic Plaintiffs employed regarding the HSB Statements—attempting to substitute "close rates" (to

network could not have misled any reasonable investor about dealer diversification. *See Anderson v. Abbott Labs.,* 140 F. Supp. 2d 894, 905-906 (N.D. Ill. 2001) (statements regarding market positioning and R&D expansion could not mislead a reasonable investor about quality control compliance). This is particularly true because—as the Complaint reveals—Defendants explained what they meant when they spoke about the broad distribution network: "a variety of different distribution channels" was important to "increase awareness" and "to ensure our products reach a broad, global customer base." ¶ 164(a); *see also* ¶¶ 156, 164(c). The Complaint does not make a single allegation to show that Generac did not have "a variety of different distribution channels." Nor did Defendants' general, true statements magically create a duty to disclose a metric to which those statements did not refer, simply because Plaintiffs now wish it so. *See Anderson*, 140 F. Supp. 2d at 903 ("Merely mentioning a topic, however, does not require the company to disclose every tangentially related fact that might interest investors . . .").[12]

### 4. Forward-looking statements are protected by the PSLRA safe harbor

The Motion explains that multiple alleged misstatements are quintessential forward-looking statements that were accompanied by meaningful cautionary language, and are thus

---

which Defendants' statements did not refer) as a proxy for opinions about "demand" (which Defendants did discuss).

[12] The Opposition appears to now concede that a majority of the Dealer Statements referred to a broader group of products than just solar products, and defends only the Complaint's challenge to statements about "clean energy" dealers. Opp. at 23. Accordingly, all of the alleged misstatements regarding the broader group of products should be dismissed. *See* Mot. at 26. Further, the Opposition does not explain how statements more **generally** about a broad array of clean energy products and solutions (which include solar, battery storage, and grid services applications) could mislead a reasonable investor about a **specific** product subset of that group. Unlike in *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986 (9th Cir. 2008) (*see* Opp. at 24), the Motion does not make a factual argument about what was said. The Motion demonstrates that Plaintiffs cannot mislead the Court and take statements out of context in a bid to plead falsity. *See* Mot. at 13-14, 26; *see also Plumbers and Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F. Supp. 2d 858, 878 (N.D. Ill. 2011) (to determine whether misleading statement was properly pleaded, court must examine statement's context).

11

protected under the PSLRA's safe harbor provision. Mot. at 26-28; s*ee* 15 U.S.C. § 78u-5(c)(1).

The Opposition does not challenge that 16 of the 17 statements at issue were statements regarding plans, projections, or the future, and thus plainly qualify as forward-looking.[13] Plaintiffs are also forced to agree that cautionary language did accompany each statement. The Opposition nonetheless argues that the cautionary language was too generic to be "meaningful."

To constitute meaningful cautionary language, "it is enough to point to the principal contingencies that could cause actual results to depart from the projection." *St. Lucie Cnty. Fire Dist. Firefighters' Pension Tr. Fund v. Motorola, Inc.*, 2011 WL 814932, at *9 (N.D. Ill. Feb. 28, 2011). Generac did just that, by pointing to COVID's impact, the possibility of claims and lawsuits related to product design, and the material reduction in sales that could result from impaired relationships or loss of dealers. *See* Mot. at 31-32; ¶¶ 133(b), 144(a), 164(d).[14] Plaintiffs' further argument that theoretical warnings are insufficient when the warned-of event is already happening is inapplicable here. As explained *supra* at 5-10, the Complaint does not allege facts sufficient to show that Defendants knew of the allegedly manifested risks at the time the statements were made.[15]

---

[13] The single exception is a counting error, addressed in the Opposition. The Opposition criticizes Defendants for interpreting the Complaint's puzzle pleading to include 17 (not 16) forward-looking statements. *Id*. The 17th statement is a quote that the Complaint did not bold and italicize ("our net sales during 2021 are expected to be…" (¶110(c)), while, in fact, the Complaint elsewhere does bold and italicize a nearly identical statement ("***our net sales during 2022 are expected to experience an increasing trend***" (¶119(b)) (emphasis in original)).

[14] *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc*., 2018 WL 844420 (N.D. Ill. Feb. 12, 2018), *see* Opp. at 25, is inapposite. The risks Generac identified were specifically tailored to its business; they were not merely "a generic list of factors that might affect future performance."

[15] *Oak St. Health* can also be distinguished on this basis, because that case concerned a disclosure that omitted information about then-occurring, potentially illegal activities. 2023 WL 1928119, at *6. There are no comparable allegations here.

### 5. Statements expressing corporate optimism are not actionable

The Motion identifies numerous challenged statements that were non-actionable corporate puffery. Mot. at 28. The Opposition's only response is to argue that the statements' topics were material to investors.[16] This argument is misplaced. Whether a statement is material is distinct from the question of whether a statement—even if made about a material topic—is non-actionable puffery. *ECA, Loc. 134 IBEW Jt. Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (statement may be non-actionable puffery even if the subject matter is material); *J&R Mktg., SEP v. GMC*, 549 F.3d 384, 396 (6th Cir. 2008) (statement was immaterial puffery and the "importance of the topic of the representation does not, however, automatically make it material"); *Anderson*, 140 F. Supp. 2d at 902 (plaintiffs "must first establish that these omissions were material" and then separately establish that the statement was not puffery). Thus, even if the topic of a statement is itself material, the statement may remain inactionable when it is "so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *See In re Midway Games Inc. Sec. Litig.*, 332 F.Supp.2d 1152, 1164 (N.D. Ill. 2004). Here, the Motion details that the vast majority (approximately 87) of the alleged misstatements are the type of general corporate optimism that courts in this Circuit and others consistently hold are non-actionable puffery. *See* Mot. at 28-30 (citing cases). The Opposition's cases concern statements that were more factual and specific, and made in differing contexts, than those here. *See* Opp. at 26-27.

---

[16] The Opposition again points to *Oak St. Health*, arguing that "the Court need not address whether statements alleged in the complaint falling within the same category of . . . statements are puffery." Opp. at 25. Unlike here, *see* Mot. at 28-30; Appendix 1, the defendants in *Oak St. Health* did not argue that particular statements were immaterial puffery. 2023 WL 1928119, at *6.

### 6. Allegations regarding SEC Regulation S-K do not plead falsity

The Opposition acknowledges that the Seventh Circuit has not decided whether a violation of Reg S-K can give rise to a section 10(b) claim. Opp. at 29-30. However, the Opposition ignores those courts within this Circuit that have dismissed section 10(b) claims premised on alleged Reg S-K violations. *See* Mot. at 30. Instead, the Opposition cites cases that determined the alleged misstatements were independently actionable under Rule 10b-5; pleading falsity thus was not dependent on an alleged Reg S-K violation. *See* Opp. at 30; *Oak St. Health*, 2023 WL 1928119, at *5-8 (omissions at issue rendered statements misleading under Rule 10b-5); *Exelon Corp.*, 2021 WL 1561712, at *4-7 (same). Further, the Opposition fails to refute the Motion's point that the Complaint's allegations do not establish an Item 303 or Item 105 violation. *See* Opp. at 29-31.

### 7. Allegations of supposed GAAP violations do not plead falsity

The Opposition theorizes that Defendants knew by Q1 2022 all of the information on which the SnapRS-related Q3 2022 charges were based. Opp. at 30. That theory suffers from multiple fatal flaws. First, the Complaint does not allege (nor could it) that Generac's Q1 and Q2 2022 financial statements have been restated, which would be required if Defendants had actually possessed such information before Q3 2022. *See* ASC 250-10-45-23 (requiring restatement for any material error of prior period that is later discovered). Second, the Opposition relies on allegations that primarily concern Pink Energy's knowledge, not Defendants'. *See* Opp. at 6-7, 30. As the Motion explains (Mot. at 23 and *supra* at 10), such allegations are insufficient to plead Defendants' knowledge before Q3 that a loss was reasonably possible and that the amount of the loss could be reasonably estimated. Notably, the Opposition does not address the Complaint's allegations demonstrating that Defendants did ***not*** know by Q1 2022 the remedy that might be implemented, and thus the amount of loss that might be incurred or whether the loss was likely to be material. *See* Mot. at 33.

14

### C. The Complaint Fails To Adequately Plead Scienter

The Opposition attempts to minimize Plaintiffs' pleading burden by claiming that the Motion exaggerates the scienter standard. Opp. at 32. The PSLRA "unequivocally raised the bar for pleading scienter." *Tellabs*, 551 U.S. at 321. The Complaint must therefore state ***particularized facts*** that give rise to a "strong inference" that each defendant acted with "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false," *Higginbotham v. Baxter Int'l, Inc.,* 495 F.3d 753, 756 (7th Cir. 2007).[17]

As with the Complaint's attempts to plead falsity, the Complaint does not plead any particularized facts to show that any Defendant actually knew of information, at the time, that rendered the statements false or misleading. *See* Mot. at 35-36. Instead, the Complaint strings together boilerplate scienter theories of the kind that courts routinely reject. *See, e.g.,* ¶¶ 273-276 (stock trading); ¶ 259 (core operations); ¶¶ 252-255 (Defendants' positions). The Opposition then argues that, because the Complaint tosses together so many theories, the Court should simply infer scienter. Opp. at 32-40. Contrary to Plaintiffs' suggestion, cobbling together a litany of inadequate scienter theories does not satisfy the pleading standard. *In re Piedmont Lithium Inc. Sec. Litig.*, 2024 WL 197751, at *15 (E.D.N.Y. Jan. 18, 2024) (allegations regarding stock sales, defendants' positions and access to information, subsequent admissions, core operations and other scienter allegations were insufficient, even when reviewed "holistically"); *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 658-67 (N.D. Ill. 2020) (finding insufficient allegations of post-class statements, motive, and stock purchases, among others); *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *19 (S.D.N.Y. July 23, 2018)

---

[17] For "forward-looking" statements, the Seventh Circuit has held that actual knowledge of falsity is required. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704-705 (7th Cir. 2008).

("inadequate allegations of motive and inadequate allegations of recklessness cannot be combined to demonstrate scienter—zero plus zero cannot equal one"). Countless cases show that this tactic does not fool courts, and it should not do so here. *See, e.g., id.*

The scienter allegations and circumstances here are analogous to *In re Harley–Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969 (E.D. Wis. 2009). As here, the *Harley–Davidson* plaintiffs alleged that the defendants concealed weakening demand for the company's product. 660 F. Supp. 2d at 975. The court rejected the plaintiffs' arguments that the totality of allegations concerning the defendants' positions, internal reports, core operations, and stock trading adequately pled scienter. *Id.* at 995-1003. The court first rejected the plaintiffs' attempt to satisfy their pleading burden through group pleading allegations, because the complaint "reveal[ed] very little to tie any of the individual defendants directly to the receipt of evidence contradicting statements made during the class period." *Id.* at 997. Apparently realizing that their Complaint suffers from the same defect, Plaintiffs here try to obscure this crucial point by baldly asserting "[t]here is no 'group pleading'" and noting that they alleged which Individual Defendant made which misstatement. Opp. at 40. But, as in *Harley-Davidson*, this does nothing to tie each Individual Defendant to knowledge of specific information contradicting each of their respective statements.

The *Harley-Davidson* court further rejected claims that the defendants must have been aware of facts contradicting their statements due to their positions at the company, "receipt of reports," and the significance of the issues to the company's operation. *Id.* at 996-1000. The complaint in that case did not allege that the defendants "actually received and reviewed the statistical information said to be in the reports." *Id.* at 999. Here, too, none of the Complaints' allegations identify any specific information that any Individual Defendant supposedly received— and, importantly, ***when*** they received it—that should have put them on notice at the time of their

16

statements that those statements would be misleading.[18] Mr. Jagdfeld's alleged statement that "we monitor" several key metrics for HSB demand does not connect "a speaker, a statement, and *specific, contradictory information* presumably known to that speaker at the time the statement was made." *Harley–Davidson*, 660 F. Supp. 2d at 1000 (emphasis added); Opp. at 34.[19]

The *Harley-Davidson* court also rejected scienter allegations concerning stock sales valued at $66 million. The court held that those stock sales were not suspicious, in part because the defendants retained significant stock holdings and one defendant increased his holdings during the class period. *Harley–Davidson*, 660 F. Supp. 2d at 1000-03. Here, too, Plaintiffs attempt to establish scienter merely by alleging that the Individual Defendants sold some stock during the Class Period (notably valued at far less than the *Harley-Davidson* sales). ¶¶ 273-74. As in *Harley–Davidson*, both Individual Defendants retained significant holdings, and Mr. Ragen actually increased his holdings during the Class Period. *See* Mot. at 38.[20]

---

[18] To invoke the core operations doctrine, the Complaint must plead specific facts to establish that the matters at issue were of such extraordinary importance to the Company that the Court can reasonably infer that the Individual Defendants "must have known" about then-existing information contradicting their public statements. *See Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441, at *25 (N.D. Ill. Mar. 30, 2022). The Complaint makes no such allegations. Indeed, SnapRS sales and the ultimate charges were a miniscule portion of Generac's revenue, suggesting instead that any issues concerning those matters would *not* have been elevated to the CEO and CFO. Mot. at 42-43. Notably, the Opposition cites no case in which matters such as these sufficed to invoke the core operations doctrine. *Cf. In re CenturyLink Sales Practices and Sec. Litig.*, 403 F. Supp. 3d 712, 731 (D. Minn. 2019) (business segment at issue accounted for more than one-third of company's revenue).

[19] The so-called "admissions" to which the Opposition points, Opp. at 36-37, also do not help satisfy the scienter standard. None of those statements—late in the Class Period—show that any Individual Defendant knew his much earlier statements to be false or misleading when made. Indeed, none of the so-called "admissions" correct prior statements or even contradict them.

[20] Moreover, there are no allegations that the Individual Defendants sold stock suddenly and had no history of similar sales (like in *Hospira*) or liquidated a majority of their holdings (like in *Allstate*). *See* Opp. at 38-39. To evaluate alleged stock sales on a motion to dismiss, courts can and do consider Form 4s showing, as here, that the individuals' stock sales were not suspicious because they were executed pursuant to Rule 10b5-1 plans, to satisfy tax obligations associated with vesting

17

In sum, as in *Harley-Davidson*, the Complaint's inadequate scienter theories—whether one or many—do not combine to satisfy the PSLRA's high burden to plead scienter.

**D.      The Alleged Misstatements And Omissions Were Immaterial**

It is well-established that courts can and do decide materiality as a matter of law when the facts allow. *In re Midway Games*,332 F.Supp.2d at 1164 (N.D. Ill. 2004) (collecting cases). The overwhelming indications are that a reasonable investor would not view additional information about SnapRS issues as material, given the miniscule size of SnapRS sales and the related loss charged to the Company's financial statements.

The Opposition does not dispute that Generac's core clean energy business (of which SnapRS was only a subset) accounted for *less than 5%* of the Company's revenues, or that the losses related to SnapRS amounted to *less than 1%* of Generac's annual revenues. The Opposition instead relies on out-of-circuit cases finding that, in certain circumstances, materiality was pled as to misstatements related to less than 5% of a particular metric. Opp. at 28. The Complaint does not plead comparable circumstances here. *Cf. In re Newell Rubbermaid Inc. Sec. Litig.*, 2000 WL 1705279, at *8 (N.D. Ill. Nov. 14, 2000) (alleged undisclosed expense constituting less than 10% of the company's pre-tax income "could not possibly have been material");[21] *Parries v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir.1997) (company's overstatement of assets by 2% not material); *ECA*, 553 F.3d at 202–03 (transactions not material because they were "a minute fraction of assets"). Moreover, while qualitative factors "may cause misstatements of quantitatively small

---

equity awards, or constituted a small percentage of total holdings. *See, e.g.*, *Fryman* 462 F. Supp. 3d at 894-95, 903-04.

[21] Despite the Opposition's attempt to distinguish *Newell*, 2000 WL 1705279, at *8-9 (*see* Opp. at 29), Plaintiffs cannot dispute that the court held alleged misstatements immaterial as a matter of law, in large part, because of the miniscule amounts at issue.

amounts to be material" in certain circumstances (*see* SAB 99 (listing qualitative considerations)), the Complaint does not plead most such factors.[22]

The Opposition also appears to argue that simply aggregating every stock drop for a year (November 2, 2021 through November 2, 2022)—whether or not related to the Complaint's allegations—together with cherry-picked analyst commentary, somehow pleads materiality. The Seventh Circuit, however, has not adopted a rule allowing these types of aggregate, long-term price changes to establish materiality at the pleading stage. *See Conagra Brands, Inc*., 495 F. Supp. 3d at 653 (post-merger stock drop and investor reactions not enough to plead materiality).

### E.     The Complaint Fails To Plead Loss Causation

Contrary to the Opposition's attempt to again minimize Plaintiffs' pleading burden (*see* Opp. at 41, *citing Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005)), the Seventh Circuit reads *Dura* to require that a plaintiff specify, for each alleged misstatement, the misleading or omitted information that caused a loss when that information became known. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007).

The Complaint's primary deficiency is that it does not allege any corrective disclosure that actually revealed that a previous representation to the market was false or misleading. *See In re Boeing Co. Aircraft Sec. Litig*., 2022 WL 3595058, at *29 (N.D. Ill. Aug. 23, 2022) (plaintiffs did not connect specific statements to corrective disclosures and failed to plead causal connection between alleged misstatements and corrective disclosures). No disclosure revealed that Defendants

---

[22] For example, there are no allegations that any of the SnapRS or Dealer Statements "arises from an item capable of precise measurement," "masks a change in earnings or other trends," "hides a failure to meet analysts' consensus expectations," "changes a loss into income or vice versa," "affects compliance with regulatory . . . [or]   contractual requirements," "has the effect of increasing management's compensation," or "involves the concealment of an unlawful transaction." *See id*.

knew HSB demand was declining at the time of the HSB Statements. No disclosure suggested that Generac could or should have taken an earlier accrual for the SnapRS issue; not even Pink Energy's lawsuit goes this far. No disclosure revealed that Generac did not have a "broad" network of dealers.

Further, for some of the alleged "corrective disclosures," there are other more plausible explanations for the allegedly associated stock price declines. The Opposition first attempts to claim that the Motion fails to describe any such explanations. Opp. at 45. But, Defendants need not do so—it is Plaintiffs' burden to plead plausible allegations that a revelation of truth caused the share price to drop. *See Dura*, 544 U.S. at 347. In any event, the Motion does explain that the October 19, 2022 and November 2, 2022 disclosures contained negative news (unrelated to the allegations here) that more likely caused any contemporaneous stock drop. *See* Mot. at 44-45.The Opposition also does not convincingly address that neither the analyst reports or Pink Energy's unproven accusations constitute corrective disclosures. This is not the fact-based "truth on the market" defense that Plaintiffs claim (*see* Opp. at 43); it is a well-established rule that "mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure."[23] *See Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013).

## III.     CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Motion to Dismiss, Defendants respectfully request that the Court grant the Motion.

---

[23] Plaintiffs are also incorrect that all of the analyst reports alleged as corrective disclosures reported on previously non-public information. *See*, *e.g*., Mot. Ex. 32 at 2 (advising that the report is "based upon interpretation of certain facts and observations, *all of which are based upon publicly available information*").

Dated: January 31, 2024  Respectfully submitted,

By: */s/ Glenn K. Vanzura*
Glenn K. Vanzura
Jacqueline M. Vallette
**MAYER BROWN LLP**
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071
(213) 229-9500
gvanzura@mayerbrown.com
jvallette@mayerbrown.com

Joseph De Simone
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
(212) 506-2559
jdesimone@mayerbrown.com

Andrew J. Spadafora
**MAYER BROWN LLP**
1999 K Street NW
Washington, DC 20006
(202) 263-3043
aspadafora@mayerbrown.com

*Counsel for Defendants Generac Holdings Inc.,*
*Aaron Jagdfeld, and York A. Ragen*

21