UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

OAKLAND COUNTY VOLUNTARY
EMPLOYEES' BENEFICIARY
ASSOCIATION, et al., Individually and on
Behalf of All Others Similarly Situated,

               Plaintiff,

    vs.

GENERAC HOLDINGS INC., et al.,

               Defendants.

Civil No. 2:22-cv-01436-bhl (Consolidated
with Civil No. 2:23-cv-00081-bhl)

<u>CLASS ACTION</u>

---

PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION
COMPLAINT

In moving to dismiss the case, and more specifically, in challenging the scienter allegations, Defendants make a new (and factually inaccurate) claim. Defendants claim that they could not have acted with scienter in omitting the negative trend of declining close rates during the Class Period because "close rates cannot be estimated until after purchases are completed" so they "could not have known the close rates for Q3 2021 IHCs until at least Q1 2022 – well after the July 2021 HSB statements." ECF 55 at 5 n.3 (emphasis omitted). This argument is waived and misrepresents Plaintiffs' allegations.

First, arguments raised for the first time on reply, and raised in footnotes, are waived. *See Carroll v. Lynch*, 698 F.3d 561, 567-68 (7th Cir. 2012) (holding party waived argument that was "not raised in her opening brief"); *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) (holding party waived argument by "presenting it only in an undeveloped footnote"). In their opening brief, Defendants suggested they only learned of the close rate declines after "many" of their challenged statements. ECF 48 at 16. Apart from that brief reference, Defendants essentially conceded (as they must) the allegation that close rates were declining at the time of the Class Period statements but argued there were other metrics that remained "strong" that justified their positive assessments. *Id.* at 15-16 (stating "even assuming that Plaintiffs' speculation that close rates were declining earlier is on point, the Complaint's own allegations demonstrate that there was a mix of many other metrics" and that some of those "pointed to continued strong HSB demand") (emphasis omitted). But, as Plaintiffs pointed out, disclosing only the good, without the bad, is exactly what the securities laws prohibit. *See* ECF 52 at 17-18, 34-38. In their Reply, Defendants changed course to assert, as supposed fact, that they "could not have known" close rates were declining because "close rates cannot be estimated until after purchases are completed." ECF 55 at 5 n.3 (emphasis omitted). This argument is new and, therefore, waived.

Second, the argument is also inaccurate and contrary to the allegations in the Complaint. Defendants tracked IHCs and close rates each quarter before, during, and after the Class Period. *See, e.g.*, ¶53 (admitting to tracking); ¶60 (discussing close rate trends prior to the Class Period); ¶262 (admitting to evaluating "the close rates that we're seeing" during the Class Period); ¶269 (discussing close rate trends after the Class Period). And those close rates were declining through the Class Period before bottoming out in Q1 2022 as inventory sat with dealers. *See* ¶269 (admitting that "we knew" there was a "negative impact on close rates" and that close rates "bottomed [in] the beginning of" 2022); *see also* ECF 53-1 (admitting that "[c]lose rates decline[d] over 40%" and "bottom[ed] in Q1 2022"); ¶239 (Defendant Jagdfeld admitting he had been discussing inventory builds with dealers "for several quarters" during the Class Period). Plaintiffs do not claim that Defendants failed to "estimate" or predict in Q3 2021 what the close rate would be for those consultations in some future quarter, *i.e.*, Q1 2022. Rather, Plaintiffs allege that Defendants failed to disclose, for example, that the Q3 2021 close rate (derived from earlier consultations) had declined from the prior Q2 2021 close rate. *See, e.g.*, ¶¶109-111, 113-115. At this stage, Defendants can argue Plaintiffs have failed to establish scienter, but the allegations must be accepted as true. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008). What Defendants cannot do is add or attempt to contradict facts. *Id.*

Thus, just as noted in Plaintiffs' Opposition brief (*see, e.g.*, ECF 52 at 1, 17-18, 24, 27), Defendants cannot twist the case into one about failed predictions of future close rates. *See also* ECF 48 at 41-42. Those diversionary tactics only highlight their inability to contest the actual claims, based on the omitted, historical, and negative trends, which further supports that their motion should be denied. *See id.* at 16-18.

4866-8351-2485.v1

DATED: February 14, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
FRANK A. RICHTER
MICHAEL J. STRAMAGLIA

      s/ James E. Barz
    JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
mstramaglia@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com

Lead Counsel for Plaintiffs

ADEMI LLP
GURI ADEMI
JESSE FRUCHTER
JOHN D. BLYTHIN
3620 East Layton Avenue
Cudahy, WI  53110
Telephone:  414/482-8000
414/482-8001 (fax)
gademi@ademilaw.com
jfruchter@ademilaw.com
jblythin@ademilaw.com

- 3 -

ATOLLES LAW, S.C.
K. SCOTT WAGNER
222 E Erie Street, Suite 210
Milwaukee, Wisconsin  53202
Telephone:  414/644-0391
414/278-7590 (fax)
swagner@atolles.com

Local Counsel

KLAUSNER, KAUFMAN, JENSEN
   & LEVINSON
ROBERT D. KLAUSNER
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
stu@robertdklausner.com

Additional Counsel for Plaintiffs

4866-8351-2485.v1