| | |
|---|---|
| OAKLAND COUNTY VOLUNTARY EMPLOYEES BENEFICIARY ASSOCIATION, et al., | Case No. 2:22-cv-01436-BHL |
| Plaintiffs, | (Consolidated with Civil No. 2:23-cv-00081-BHL) |
| v. | CLASS ACTION |
| GENERAC HOLDINGS INC., AARON JAGDFELD, and YORK A. RAGEN, | |
| Defendants. | |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

# TABLE OF CONTENTS

**Page(s)**

I.     **PRELIMINARY STATEMENT** ...................................................................... 1

II.    **ARGUMENT** ................................................................................................... 2

     A.     **The SAC Fails To State A Claim As To The HSB Statements** ........................... 2

         1.     The SAC Fails To Plead Falsity As To The HSB Statements ...................... 2

         2.     The SAC Fails To Plead Scienter As To The HSB Statements ................... 6

         3.     The SAC Fails To Plead Loss Causation As To The HSB Statements ...... 10

     B.     **The SAC Fails To State A Claim As To The SnapRS And Dealer Concentration Statements** ................................................................................ 11

         1.     The SAC Fails To Plead That The Statements Were Material ................... 11

         2.     The SAC Fails To Plead That The SnapRS Statements Were False Or Misleading ..................................................................................... 15

         3.     The SAC Fails To Plead That The Dealer Concentration Statements Were False Or Misleading ......................................................... 17

         4.     The SAC Fails To Plead Scienter As To The SnapRS And Dealer Concentration Statements ......................................................................... 19

         5.     The SAC Fails To Plead Loss Causation As To The SnapRS And Dealer Concentration Statements.............................................................. 20

     C.     **The Section 20(a) Claim Should Also Be Dismissed** ........................................ 20

III.   **CONCLUSION** ............................................................................................. 20

Case 2:22-cv-01436-BHL     Filed 07/30/25     Page 2 of 27     Document 81

# TABLE OF AUTHORITIES

**Cases**                                             **Page(s)**

*Altayyar v. Etsy, Inc.*,
242 F. Supp. 3d 161 (E.D.N.Y. 2017) ...................................................................................12

*Arora v. HDFC Bank Ltd.*,
671 F. Supp. 3d 305 (E.D.N.Y. 2023) .............................................................................13, 14

*Azar v. Grubhub, Inc.*,
2021 WL 4077327 (N.D. Ill. Sept. 7, 2021) ...........................................................................8

*Baxter Int'l Inc. Sec. Litig.*,
2021 WL 100457 (N.D. Ill. Jan. 12, 2021) .............................................................................9

*Beaver Cnty. Emps'. Ret. Fund v. Tile Shop Holdings, Inc.*
94 F. Supp. 3d 1035 (D. Minn. 2015) ...................................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................11

*Berson v. Applied Signal Tech., Inc.*
527 F.3d 982 (9th Cir. 2008) ............................................................................................9, 18

*Boeing Co. Aircraft Sec. Litig.*,
2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) .......................................................................10

*Carpenters Pen. Tr. Fund for N. Cal. v. Allstate Corp.*,
2018 WL 1071442 (N.D. Ill. Feb. 27, 2018) ..........................................................................6

*Chandler v. Ulta Beauty, Inc.*,
2022 WL 952441 (N.D. Ill. Mar. 30, 2022)..........................................................................14

*Chew v. Moneygram Int'l, Inc.*,
2024 WL 4346522 (N.D. Ill. Sept. 30, 2024) .........................................................................5

*Chow v. Archer-Daniels-Midland Co.*,
2025 WL 790854 (N.D. Ill. Mar. 12, 2025).............................................................................7

*City of Lakeland Emps. Pen. Plan v. Baxter Int'l Inc.*,
2012 WL 607578 (N.D. Ill. Jan. 23, 2012) .............................................................................8

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*,
46 F.4th 22 (1st Cir. 2022)....................................................................................................17

*Constr. Indus. and Laborers Joint Pension Trust v. Carbonite, Inc .*
22 F.4th 1 (1st Cir. 2021).......................................................................................................13

Case 2:22-cv-01436-BHL    Filed 07/30/25    Page 3 of 27    Document 81

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) ...........................................................................................7

*Desai v. Gen. Growth Props., Inc.*,
    654 F. Supp. 2d 836 (N.D. Ill. 2009) .............................................................................9

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
    81 F.4th 918 (9th Cir. 2023) ...................................................................................13, 14

*Eaton Corp. Sec. Litig.*,
    318 F. Supp. 3d 659 (S.D.N.Y. 2018), *aff'd sub nom. S.C. Ret. Sys. Grp. Tr. v.*
    *Eaton Corp. PLC*, 791 F. App'x 230 (2d Cir. 2019) ...............................................13, 14

*ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...........................................................................................12

*Enzymotec Sec. Litig.*,
    2015 WL 8784065 (D.N.J. Dec. 15, 2015) .....................................................................8

*Estee Lauder Co., Inc. Sec. Litig.*,
    2025 WL 965686 (S.D.N.Y. 2025)..................................................................................6

*Facebook, Inc. Secs. Litig.*,
    87 F.4th 934 (9th Cir. 2023) .........................................................................................17

*Fryman v. Atlas Fin. Holdings, Inc.*,
    462 F. Supp. 3d 888 (N.D. Ill. 2020) ..........................................................................8, 9

*Fugman v. Aprogenex, Inc.*,
    961 F. Supp. 1190 (N.D. Ill. 1997) .............................................................................8, 19

*Grupo Televisa Sec. Litig.*,
    368 F. Supp. 3d 711 (S.D.N.Y. 2019)..............................................................................6

*Harley-Davidson, Inc. Sec. Litig.*,
    660 F. Supp. 2d 969 (E.D. Wis. 2009).............................................................................7

*Hedick v. Kraft Heinz Co.*,
    2021 WL 3566602 (N.D. Ill. 2021) ...............................................................................14

*Hutchison v. Deutsche Bank Sec. Inc.*,
    647 F.3d 479 (2d Cir. 2011)......................................................................................11, 14

*Lindelow v. Hill*,
    2001 WL 830956 (N.D. Ill. July 20, 2001).....................................................................9

*Litwin v. Blackstone Grp.*,
    634 F.3d 706 (2d Cir. 2011)......................................................................................11, 12

*Makor Issues & Rts., Ltd. v. Tellabs*,
   437 F.3d 588 (7th Cir. 2006) ...................................................................................4, 8

*McDonald v. Compellent Techs., Inc.*,
   2011 WL 13228408 (D. Minn. Aug. 3, 2011) ...................................................18, 19

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
   2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ........................................................11

*Pierrelouis v. Gogo, Inc.*,
   2021 WL 1608342 (N.D. Ill. Apr. 26, 2021) ......................................1, 2, 15, 16, 17

*Pierrelouis v. Gogo, Inc.*,
   414 F. Supp. 3d 1164 (N.D. Ill. 2019) .......................................................1, 15, 17

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.*
   *Holdings Ltd.*,
   886 F. Supp. 2d 328 (S.D.N.Y. 2012)..........................................................10, 11, 20

*Ross v. Career Educ. Corp.*,
   2012 WL 5363431 (N.D. Ill. Oct. 30, 2012).........................................................8, 13

*Schleicher v. Wendt*,
   529 F. Supp. 2d 959 (S.D. Ind. 2007) ......................................................................8

*Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001)..................................................................................8, 14

*SEC v. Ustian*,
   229 F. Supp. 3d 739 (N.D. Ill. 2017) ..............................................................5, 9, 14

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2019)..................................................................................5

*Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*,
   604 F. Supp. 2d 1188 (N.D. Ill. 2009) ..............................................................9, 13

*United States v. Mirama Enters., Inc.*,
   185 F. Supp. 2d 1148 (S.D. Cal. 2002), *aff'd*, 387 F.3d 983 (9th Cir. 2004) .........................15

*Van Noppen v. InnerWorkings, Inc.*,
   136 F. Supp. 3d 922 (N.D. Ill. 2015) ....................................................................14

*Washtenaw Cnty. Emps'. Ret. Sys. v. Walgreen Co.*,
   2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) .......................................................10

*In re XP Inc. Sec. Litig.*,
   524 F. Supp. 3d 23 (E.D.N.Y. 2021) ....................................................................12

**Statutes**

15 U.S.C. § 2064(b) ...............................................................................................................15

Case 2:22-cv-01436-BHL    Filed 07/30/25    Page 6 of 27    Document 81

## I.   PRELIMINARY STATEMENT

The SAC fails to cure the deficiencies in the FAC that the Court identified. It thus appears that Plaintiffs' primary strategy in their Opposition (ECF No. 80) (the "Opposition" or "Opp.") to Defendants' Motion to Dismiss (ECF No. 74) (the "Motion" or "Mot.") is to declare that the Court's FAC Order got it all wrong.[1] In reality, the FAC Order faithfully applied the governing law, the SAC makes very few new factual allegations and none that cure the FAC's deficiencies, and the Opposition does little more than recycle arguments the Court previously rejected in its FAC Order.

Perhaps most telling of the SAC's shortcomings is the Opposition's heavy-but-misplaced reliance on *Pierrelouis v. Gogo, Inc*. ("*Gogo II*"), 2021 WL 1608342 (N.D. Ill. Apr. 26, 2021) to defend the SAC's amended allegations concerning the SnapRS Statements.[2] The Opposition argues that the SAC's amendments are "similar" to those in the *Gogo II* amended complaint, but that is far from the case. In *Gogo II*, the amended complaint added an array of new concrete factual allegations, which resolved the court's previous pleading concerns by describing with well-pleaded facts the ***what*** and ***when*** of the alleged product defect. The amended facts established the problem's widespread scope, that it "had begun to manifest itself prior to the beginning of the class period," and that the individual defendants had actual knowledge of the problem and its scope at the time of their misstatements. *Id*. at \*2, \*6. Contrasting the *Gogo II* amended complaint with the SAC here only highlights the SAC's shortcomings. None of the SAC's very few amended allegations say anything about the scope of the SnapRS issue prior to or at the time of the alleged misstatements, establish when the issue became so widespread as to require disclosure, or describe particularized

---

[1] Unless otherwise noted, this memorandum uses the same defined terms as the Motion. Paragraph citations are to the SAC by paragraph number.

[2] *Gogo II* is an opinion on a motion to dismiss an amended complaint that was filed after the initial complaint was dismissed in *Pierrelouis v. Gogo, Inc*. ("*Gogo I*"), 414 F. Supp. 3d 1164 (N.D. Ill. 2019). Defendants previously used "*Pierrelouis*" as the shortform for *Gogo I*. To avoid confusion, this memorandum adopts Plaintiffs' naming convention.

facts to show that either Mr. Jagdfeld or Mr. Ragen knew of a widespread problem at the time of his statements. Thus, unlike in *Gogo II*, Plaintiffs here have not given the Court any reason to change its previous conclusions.

Further, as to all three of the SAC's liability theories, the SAC again fails to plead: facts demonstrating the reason(s) any statement was misleading or that contradictory facts were known to the speaker at the time such statements were made (*see* FAC Order at 21, 26-27, 29-30); anything more than generalized allegations insufficient to plead scienter (*see id*. at 24, 28, 30); a nexus between the alleged misstatements and alleged corrective disclosures (*see* ECF No. 48 at 43-45); or, as to the SnapRS and Dealer Concentration Statements, that the alleged omissions were material (*see id*. at 28, 30). For these reasons, the reasons explained in the Motion, and the reasons described more completely herein, the Court should dismiss the SAC in its entirety, this time with prejudice.

## II.     ARGUMENT

### A.     The SAC Fails To State A Claim As To The HSB Statements.

#### 1.     The SAC Fails To Plead Falsity As To The HSB Statements.

It is undisputed that the Court must decide at this stage whether the SAC alleges "with particularity the facts—known to the speaker at the time—that render the statement false or misleading." *See* Mot. at 10 (quoting *Constr. Workers Pension Fund-Lake Cnty. and Vicinity v. Navistar Int'l*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015)). The Opposition argues that the HSB Statements were misleading because—although Defendants accurately described a variety of metrics concerning HSB sales and demand—Defendants did not always disclose a single metric: close rates.[3] Opp. at 22. As before, Plaintiffs fail to satisfy their "heavy burden" to plead falsity because the SAC does not adequately allege how fluctuating close rates rendered the HSB Statements misleading. *See*

---

[3] The Opposition concedes that Defendants did not have an affirmative duty to disclose close rates.

FAC Order at 21.

The most apparent illustration of the SAC's failure to allege how the HSB Statements are misleading is that Plaintiffs cannot even decide what it is that Defendants supposedly misled investors about. In several instances, the SAC baldly asserts that investors were misled without explaining how; in others, the SAC only generically alleges that the HSB Statements were misleading about Generac's "business" or "risks." *Compare* ¶ 7 *with* ¶¶ 4, 44. Even though the Motion quoted language that the SAC repeats at least five times (¶¶ 62, 64, 66, 68, 69) to address Plaintiffs' challenge to statements about "generator sales," the Opposition now claims that the Motion "misconstrue[s]" the SAC, and Plaintiffs invent a new, third theory in the Opposition: the HSB Statements allegedly misled investors about "correlating end-customer contracts." *See* Opp. at 23. This new theory has numerous problems.

*First*, the term "correlating end-customer contracts" does not appear anywhere in the SAC. The ever-shifting nature of Plaintiffs' theory and their inability to articulate how the HSB Statements were allegedly misleading are hallmarks of an after-the-fact theory in search of a fraud. *See* FAC Order at 3 (noting plaintiff temptations of hindsight and second-guessing).

*Second*, as with the SAC, the Opposition assiduously attempts to avoid suggesting that Defendants misled investors about HSB demand, as Plaintiffs recognize that the FAC Order forecloses such an argument. *See* FAC Order at 17-19; Mot. at 8-9. Plaintiffs cannot avoid their pleading problems so easily. The HSB Statements, both read literally and in their proper context, are explicitly about HSB demand and say nothing about "end-customer contracts." *See, e.g*, ¶ 61(b) ("[T]hese key *demand* metrics for home standby have continued to trend higher . . . including home consultations increasing at a strong double-digit rate."); ¶ 63 ("[D]emand has been continuing just to be off the charts."). In other words, Plaintiffs' new theory is that the HSB Statements—accurate

statements regarding demand and certain related metrics—were allegedly misleading about another metric (close rates) that the HSB Statements plainly did not address. Because Plaintiffs do not contend that those metrics Defendants disclosed were false, they instead again criticize that the HSB Statements did not always discuss close rates.[4] The Court, however, previously rejected this same critique. *See* FAC Order at 19-21. The SAC cannot shift Plaintiffs' falsity theory by ignoring what Defendants actually said to avoid the FAC Order's holdings that (1) general statements observing demand are not actionable under *Makor Issues & Rights, Ltd. v. Tellabs*, 437 F.3d 588, 597 (7th Cir. 2006), and (2) by describing the metrics on which they relied for their opinions about HSB demand, Defendants established that they had a reasonable basis for their beliefs. *See* FAC Order at 16-19; Mot. at 8-9.

*Third*, the SAC does not plead any facts to support the new, bald assertion that Defendants misled investors to believe that just because IHCs and dealer orders were increasing, close rates *must* also be increasing. *See, e.g.*, Opp. at 1 ("Defendants continued to tout increased consultations and dealer orders, but concealed the decline in close rates, which misled the market into believing . . . that close rates had also increased."). As the Motion explained, IHCs and dealer orders could increase, while close rates increased *or* decreased (and, in fact, close rates sometimes went up and sometimes went down during the Class Period, highlighting that there is no correlation between IHCs, dealer orders, and close rates that Defendants or investors could assume). Mot. at 11-12. The Opposition has no response. More critically, the SAC does not allege that Defendants ever claimed

---

[4] While Plaintiffs argue that certain statements referencing "key demand metrics" were false (*see* Opp. at 7), Plaintiffs fail to provide the Court with critical context. Specifically, in one instance, Mr. Jagdfeld identified in sentences just preceding the "key demand metrics" phrase the specific metrics to which he was referring. *See* ¶¶ 61(a), (b) (disclosing numbers for IHCs, activations, and residential dealers, and then referring to "these key demand metrics"). In the other instance Plaintiffs cite, after referring generally to "everything," Mr. Jagdfeld went on to describe the exact metrics he had taken into account; critically, close rates were not one of them. *See* ¶ 63.

4

to investors that there is any such correlation. To the contrary, the SAC actually admits that Defendants told investors they should **not** consider IHCs as matching 1:1 to sales. *See* ¶ 67(e) (quoting Ex. 15 at 22). For example, when asked in May 2022 if IHCs at three times above 2020 levels meant HSB revenue was likely to be up 3x, Mr. Jagdfeld explained that assessing HSB growth requires the consideration of many factors; he then mentioned some of the relevant variables and concluded that he could not say that the HSB growth rate was three times 2020 levels. Ex. 15 at 22-23. In other words, Defendants warned investors not to correlate metrics (like IHCs and end-customer contracts) and not to look at a single metric (like close rates) in isolation. These warnings directly contradict Plaintiffs' absurd and made-up theory that Defendants were intentionally trying to trick investors into believing that increasing IHCs and dealer orders necessarily meant that close rates were correlated and also increasing.[5]

**Fourth**, Plaintiffs' fixation on statements mentioning close rates years before the start of the Class Period is a red herring. *See* Opp. at 5-6. According to the SAC, Defendants sporadically—but not always—referenced close rates prior to the Class Period. Those occasional references did not create an affirmative duty to disclose close rates for all eternity and every time Generac discussed HSB demand, nor do those earlier references to close rates make misleading the HSB Statements, some of which were made as many as eight years later. *See Chew v. Moneygram Int'l, Inc.*, 2024 WL 4346522, at *8 (N.D. Ill. Sept. 30, 2024) ("A corporation and its officers are entitled to make truthful reports of specific . . . performance metrics without incurring an obligation to air every ounce of the corporation's dirty laundry."); *cf. Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2019) ("[R]easonable investors understand that opinions sometimes rest on a weighing of competing

---

[5] The Opposition does not address Defendants' channel stuffing argument (Mot. at 12 n.9). Plaintiffs have thus waived the argument that the related allegations (¶¶ 57-59) support falsity. *See SEC v. Ustian*, 229 F. Supp. 3d 739, 771 (N.D. Ill. 2017).

facts.").[6]

*Finally*, the Opposition's debate about whether the Individual Defendants knew about close rates at the time they made the HSB Statements is another diversion tactic. *See* Opp. at 5-7. The SAC does not, in fact, make a single allegation that either Mr. Jagdfeld or Mr. Ragen had information regarding declining close rates ***during the Class Period***.[7] Regardless, the crux of the Motion is that even if the SAC had alleged such knowledge (it does not), Plaintiffs do not adequately allege that any HSB Statement was misleading—to the contrary, each was true and accurate. *See* Mot. at 10-11. Additionally, Plaintiffs fail to allege (or address the Motion's point) that, even assuming Defendants knew close rates ***at the time***, they had not already factored that into the HSB Statements and used their experience and judgment to discuss the metrics they believed were important at that time, including in the context of disclosed risk factors like seasonality and the new COVID business environment. *See id.* at 11-12; FAC Order at 19-20.

### 2. The SAC Fails To Plead Scienter As To The HSB Statements.

The Opposition hopes to sidestep the PSLRA-mandated scienter inquiry by arguing that "direct evidence" of scienter is not required and that, instead, "circumstantial allegations" considered in totality are sufficient. Opp. at 28. But the inquiry does not turn on the type of allegations and instead on whether the SAC alleges ***particularized facts*** that support ***a strong inference*** that ***each defendant*** knew or recklessly disregarded that any HSB Statement was false or misleading. *See*

---

[6] The cases on which the Opposition relies (at 22-24) are readily distinguishable. In each, the alleged misstatements touting the company's or product's success omitted that the reason for the claimed success was that the company was engaged in illegal, improper, or undisclosed conduct. *See, e.g.*, *In re Estee Lauder Co., Inc. Sec. Litig.*, 2025 WL 965686, at *3 (S.D.N.Y. 2025); *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 721 (S.D.N.Y. 2019); *Carpenters Pen. Tr. Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442, at *3, *6 (N.D. Ill. Feb. 27, 2018). There is no such allegation here—only that Defendants were making accurate statements about IHCs and orders.

[7] The SAC alleges Defendants (usually as an undifferentiated group) monitored and discussed close rates at various points ***before*** the Class Period. ¶¶ 50-52. The SAC then skips over the Class Period and cites only Mr. Jagdfeld's "isolated statements" ***post-Class Period*** (*see* FAC Order at 20). ¶¶ 54-55, 59.

6

*Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 601-02 (7th Cir. 2019).[8] The SAC makes no such particularized allegations for either Mr. Ragen or Mr. Jagdfeld and should be dismissed.

As a preliminary matter, the Opposition does not explain how the SAC's group-pleading allegations (¶¶ 190-96, 198, 200-07, 209-15, 219) are sufficient. The Court should therefore disregard them. *See Cornielsen*, 916 F.3d at 601-02.

As to Mr. Ragen, the Opposition does not even try to dispute that the SAC alleges ***no particularized facts whatsoever*** that Mr. Ragen had actual knowledge that his single HSB Statement (¶ 67(d)) was false or misleading, or that he made it with reckless disregard for its falsity. *See* Opp. at 28-29; Mot. at 13-14. Indeed, the ***only*** scienter allegations the SAC can even muster against Mr. Ragen are that he sold Generac stock (¶ 218) and was paid for his work at Generac (¶ 220). Stock sales are meaningless without allegations establishing that they were made at suspicious times or in suspicious amounts, and the SAC makes no such allegations. *See* Mot. at 16-17. Moreover, even Plaintiffs' own authority confirms that the "generic" practice of tying an executive's compensation to company performance is not enough alone to raise a strong inference of scienter. *See Chow v. Archer-Daniels-Midland Co.*, 2025 WL 790854, at *5 (N.D. Ill. Mar. 12, 2025) (finding scienter allegations sufficient because defendants' compensation was linked to a *specific* segment of the company, rather than a "generic" corporate incentive like company's profits as a whole).

With respect to Mr. Jagdfeld, the SAC's pleading failure lies in its inability to make factual allegations showing he had specific, contradictory information that put or should have put him on notice, at the time of his HSB Statements, that those statements were false or misleading. *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 1000 (E.D. Wis. 2009) ("Lacking from the Complaint are ***fact-based*** connections between a speaker, a statement, and specific, contradictory

---

[8] Contrary to Plaintiffs' argument (Opp. at 28), this is exactly the standard that the Court articulated and applied to dismiss the FAC. *See* FAC Order at 23-24.

information presumably known to that speaker at the time the statement was made." (emphasis added)).[9] First, the Opposition (at 35) points to Mr. Jagdfeld's November 2022 and May 2023 post-Class Period statements purportedly showing his knowledge of declining close rates, but the Court previously considered and rejected the same allegations. *See* FAC Order at 23-24. In addition, Mr. Jagdfeld's post-Class Period statements do not show that he was aware of or disregarded a substantial risk that, by not discussing close rates, his ***accurate*** statements about other matters were misleading.[10] Second, the allegation that Mr. Jagdfeld purportedly monitored close rates fails for the same reason—neither the SAC nor the Opposition explains how monitoring close rates was supposed to alert Mr. Jagdfeld that his accurate statements were false or misleading. *See Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 902 (N.D. Ill. 2020) (close monitoring allegations insufficient because they "[did] not state with particularity the information to which Defendants had access" that undermined the veracity of their statements). Finally, the allegations about Mr. Jagdfeld's stock sales and compensation do not plead scienter for the same reasons that those

---

[9] To the extent the Opposition contends that no such allegations are required (at 28-29), it is wrong. In fact, Plaintiffs' own authorities confirm that more concrete allegations are required. *See, e.g.*, *Tellabs*, 437 F.3d at 603 ("One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting that their public statements were materially inaccurate."), *vacated on other grounds*, 551 U.S. 308 (2007); *Schleicher v. Wendt*, 529 F. Supp. 2d 959, 972 (S.D. Ind. 2007) (scienter supported "where the defendants either knew or had access to information showing that their public statements were not accurate"); *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at *9 (N.D. Ill. Oct. 30, 2012) (confidential witness alleged that defendants were informed directly of issue contrary to statements made); *City of Lakeland Emps. Pen. Plan v. Baxter Int'l Inc.*, 2012 WL 607578, at *5 (N.D. Ill. Jan. 23, 2012) (confidential witness set forth with specificity "how informed the individual defendants were about the operations and financial state of the company").

[10] The Opposition's recycled *Allstate* is inapposite. Unlike there, Mr. Jagdfeld's purported admissions do not suggest that he knew his HSB Statements "were incorrect when made." 2018 WL 1071442, at *6; *see also Azar v. Grubhub, Inc.*, 2021 WL 4077327, at *5 (N.D. Ill. Sept. 7, 2021) (defendant's later admission that it was "logical" that new diners would be "less valuable" given Grubhub's lack of restaurant density indicated knowledge the statements were false when made). The rest of the cases the Opposition cites in support did not even consider any purported admissions. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74-78 (2d Cir. 2001); *In re: Enzymotec Sec. Litig.*, 2015 WL 8784065, at *17-19 (D.N.J. Dec. 15, 2015); *Fugman v. Aprogenex, Inc.*, 961 F. Supp. 1190, 1195-96 (N.D. Ill. 1997).

8

concerning Mr. Ragen do not. *See supra* at 7; Mot. at 16-17.[11]

The remaining generic allegations—that the Individual Defendants held leadership positions, HSB is Generac's core business, and the problem was purportedly "significant"—do not make up for the SAC's lack of specificity, even considered in totality.[12] *See* Mot. at 14-16; *Guidant*, 536 F. Supp. 2d at 932 (defendants' positions insufficient to infer scienter because allegations did not show "with *any* particularity that *any* Individual Defendant had knowledge of the product defects"); *Fryman*, 462 F. Supp. 3d at 902 (core operations allegations insufficient without allegations of any internal information that contradicted the misstatements); *In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *18 (N.D. Ill. Jan. 12, 2021) (magnitude allegations insufficient absent facts suggesting that the magnitude was evident to defendants at the time).[13]

Finally, following a theme repeated throughout the Opposition, Plaintiffs muddy the waters by lumping together all of their scienter allegations across more than ten consecutive pages (at 27-37), without clearly differentiating among each of their three separate liability theories. This bid to suggest a "totality" of circumstances by conflating unrelated liability theories is not supported by

---

[11] Because the Opposition does not attempt to defend the SAC's only two new scienter allegations—SOX certifications (¶¶ 194-95) and that Messrs. Jagdfeld and Ragen did not buy Generac stock at "artificially inflated prices in the open market" (¶¶ 217-18) (*see* Mot. at 17-18)—Plaintiffs have waived arguments that such allegations support scienter. *See Ustian*, 229 F. Supp. 3d at 771.

[12] Contrary to Plaintiffs' suggestion (Opp. at 28), the Court *did* conduct a totality analysis. *E.g.*, FAC Order at 30.

[13] *Berson v. Applied Signal Tech., Inc.* is distinguishable because allegedly concealed facts here did not have a "devastating effect on the corporation's revenue." 527 F.3d 982, 987 (9th Cir. 2008); *accord. Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 860 (N.D. Ill. 2009) (company's very survival hinged on its ability to refinance $27 billion debt and it, thus, was inconceivable that the defendants would be unaware of this problem); *Lindelow v. Hill*, 2001 WL 830956, at *8 (N.D. Ill. July 20, 2001) (because the statements concerned the market launch of company's sole product, defendant "either had the knowledge of the feasibility of launching [the product], or, if not, that his failure to have such knowledge equated to reckless disregard"); *In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1197 (N.D. Ill. 2009) (misstatements concerned the major problems existing within the company). Unlike in *Berson*, Generac's net sales *grew* almost $1 billion between 2021 and 2022. Ex. 14 at 26. And as explained below, the SnapRS devices amounted for a small fraction of the Company's sales in 2022. *See infra* at 11.

any authority the Opposition cites. The Court should reject Plaintiffs' ploy.

### 3. The SAC Fails To Plead Loss Causation As To The HSB Statements.

The Motion explains that the SAC fails to plead loss causation. Mot. at 18-20. The Opposition's only response is to lump together all three liability theories and then argue (1) because corrective disclosures need not "mirror" alleged misstatements, Plaintiffs have no burden to allege a clear causal connection, and (2) dismissal on loss causation grounds is inappropriate. Opp. at 38-39. The Opposition is wrong on both counts.

*First*, Plaintiffs' "mirror image" claim is beside the point. The SAC still must allege that the disclosures "have something to do with the circumstances that prior false statements concealed or misrepresented." *In re Boeing Co. Aircraft Sec. Litig.*, 2022 WL 3595058, at *29 (N.D. Ill. Aug. 23, 2022). Advancing a partial disclosure theory does not relieve Plaintiffs of this burden.[14] Despite Plaintiffs' assertion to the contrary, merely "link[ing] price declines to the new Company-specific information" (Opp. at 38) is not sufficient to plead loss causation. *See* Mot. at 18-19. Rather, the SAC must plead a disclosure, or series of disclosures, that "possess a sufficient nexus to a prior misstatement such that it reveals at least part of the falsity of that misstatement." *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012); *see also Boeing*, 2022 WL 3595058, at *29.

The SAC makes no attempt to meet this burden. The SAC only conclusively asserts that the disclosures "revealed" the "declining close rates." *See, e.g.*, ¶¶ 138, 140. In reality, the nine corrective disclosures on which the SAC relies do not actually reveal anything about close rates and instead illustrate the minimal changes made between the FAC and SAC after the Court rejected

---

[14] Plaintiffs' cited authorities do not hold otherwise. *See, e.g.*, *Washtenaw Cnty. Emps'. Ret. Sys. v. Walgreen Co.*, 2019 WL 4597518, at *7 (N.D. Ill. Sept. 23, 2019) ("At the motion to dismiss stage, 'a plaintiff who has suffered an economic loss' must 'provide a defendant with some indication of the loss and the ***causal connection*** that the plaintiff has in mind.'" (emphasis added)).

Plaintiffs' initial demand-focused theory. *See* ¶¶ 138, 141, 142, 144, 153, 162, 166, 168, 176; Mot. at 18-20 (seven of nine disclosures silent as to close rates; remaining two merely announce disappointing financial results).

**Second**, Plaintiffs' attempt to rest on Rule 8's notice pleading requirements (Opp. at 37-38) does not relieve Plaintiffs of their burden to adequately plead loss causation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, courts can, and do, dismiss Section 10(b) claims on loss causation grounds. *E.g.*, *Fairfax*, 886 F. Supp. 2d at 338 (dismissing without leave to amend where loss causation allegations were "far too tenuous to support a claim").

**B.** **The SAC Fails To State A Claim As To The SnapRS And Dealer Concentration Statements.**

**1.** **The SAC Fails To Plead That The Statements Were Material.**

The Opposition confirms that the SAC does not, and cannot, plead materiality. The Opposition does not dispute that Generac's entire solar business—of which SnapRS is only a *subset*—accounted for *less than 4%* of the Company's revenues in 2022 (*see* Mot. at 20-21). Instead, the Opposition obfuscates the issue by comparing apples to oranges, to argue an irrelevant solar guidance number indicates solar exceeded a 5% threshold. *See* Opp. at 20-21. Specifically, the Opposition takes the *admittedly-never-materialized* August 2022 solar sales *forecast* and compares it to *actual* FY 2022 total revenues. *See id*. Yet, the Opposition provides no justification, let alone legal authority, for suggesting these measures are properly comparable. *See* FAC Order at 28.[15]

---

[15] Further, contrary to the Opposition's argument, financial impact of reduced solar guidance *within* the clean energy segment does not show materiality. Opp. at 21. This is because the SAC does not allege (nor could it) that the clean energy business was of distinct interest to investors, or that clean energy was Generac's flagship business segment. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 488 (2d Cir. 2011) (declining to compare the value of the loans at issue to the value of company's one business segment); *see also Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *21 n. 23 (S.D.N.Y. Mar. 30, 2021) (comparison of sales within a newly acquired subsidiary was inappropriate because plaintiffs never had an independent investment interest in the subsidiary beyond its ability to add to the parent's bottom line); *cf. Litwin*

To band-aid over this flaw, the Opposition (at 18-20) advances the same arguments (purported admissions, stock drop, and analyst reactions) that the Court already rejected. *See* FAC Order at 28. Worse yet, Plaintiffs again lump together ***HSB and solar businesses***—even though the Motion does not seek dismissal on materiality grounds as to HSB—in a clear attempt to hide their inability to plead materiality for the SnapRS and Dealer Concentration Statements. *See* Opp. at 19-20. Despite their efforts to muddle the materiality analysis, Plaintiffs' recycled arguments fail.

***First***, Plaintiffs' support for claiming that Defendants "admitted that . . . the solar business, including the defects and customer concentration, were important business matters" is unavailing and confused. *See id*. As to SnapRS, the Opposition cites statements regarding the "safety and quality" of solar products. *Id*. Regarding Dealer Concentration, the Opposition cites statements about "dealer diversification," dealer base, and that Pink Energy was an "important" and "major" customer. *Id*. These citations miss the point. The statements do not demonstrate the importance of solar to the business overall, let alone the importance of the topics referenced. *See ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("While a bank's reputation is undeniably *important*, that does not render a particular statement by a bank regarding its integrity per se *material*." (emphasis added)); *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 36 (E.D.N.Y. 2021) (finding no materiality because plaintiffs were "conflat[ing] the importance of [a business issue] with the materiality of a statement regarding the [business issue]"). In any event, even if solar was "important," that characterization alone is not enough to plead materiality. *See Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 172 (E.D.N.Y. 2017) (that an investor might have considered the misrepresentation or omission important is not enough). Further, the possibility that solar revenue might be important at some point in the future also does not plead materiality. *See*

---

*v. Blackstone Grp.*, 634 F.3d 706, 720 (2d Cir. 2011) (comparison within the segment was appropriate because the business component at issue was company's "flagship segment").

*Dekalb Cnty. Emps' Ret. Sys. v. Controladora Cuela Compañía de Aviación, S.A.B. de C.V.*, 2016 WL 3685089, at *4-5 (S.D.N.Y. July 6, 2016) ("[M]ateriality is determined in light of the circumstances existing at the time the alleged misstatement occurred, not based on what could occur on some future date.").[16]

*Second*, the alleged stock drops cannot support materiality, given the SAC's failure to allege corrective disclosures that actually relate to any specific misstatement. *See supra* at 10-11; *infra* at 20. Further, the Opposition lumps together disclosures related to *both* HSB and solar businesses (and some solely related to HSB) to attribute the entire stock drop to only solar-related statements. *See* Opp. at 18 (citing ¶¶ 137-189). It defies logic to suggest such stock drops could support materiality as to the more narrow SnapRS and Dealer Concentration Statements. Case law confirms that even the stock drops allegedly related to both HSB and solar do not support materiality—stock drops related to the disclosure of multiple pieces of news cannot support materiality. *In re Eaton Corp. Sec. Litig.*, 318 F. Supp. 3d 659, 670 (S.D.N.Y. 2018) (stock drop did not support materiality where it occurred on a day when other negative news was revealed), *aff'd sub nom. S.C. Ret. Sys. Grp. Tr. v. Eaton Corp. PLC*, 791 F. App'x 230 (2d Cir. 2019); *Dekalb*, 2016 WL 3685089, at *5 (same).[17] This is underscored by the SAC's acknowledgment that disclosures related to only the solar business resulted in stock drops of less than 3%. *See* ¶¶ 150-152 (1.1% stock drop), 164-165 (2.84% stock drop). Such miniscule stock drops do not support materiality. *See Eaton*, 318 F. Supp. 3d at 670 (8%

---

[16] The Opposition's cited authority (at 19) does not support Plaintiffs. In *Construction Industry and Laborers Joint Pension Trust v. Carbonite, Inc.*, the court did not find materiality based on a product's potential future importance; rather the court considered such allegations only in its scienter analysis. 22 F.4th 1, 9 (1st Cir. 2021). And, unlike the miniscule impact of the revenue derived from *one dealer* in a *subset* of Generac's clean energy business, the defective product in *Carbonite* derailed that company's *entire* effort to expand into a new market. *Id.* at 4.

[17] None of the Opposition's authorities (at 18) involved multiple negative disclosures on the alleged corrective disclosure days. *See Ulta Salon*, 604 F. Supp. 2d at 1196, 1192; *Ross*, 2012 WL 5363431, at *5; *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 936-37, 927 (9th Cir. 2023).

stock drop not material); *Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 316 (E.D.N.Y. 2023) (2.83% stock drop not material). As the Court already recognized, the more plausible inference is that the waning pandemic caused the stock's price decline. *See* FAC Order at 30-31.[18]

**Third**, analyst reactions do not support materiality. The Opposition again lumps together analyst discussions of **both** HSB and solar businesses to argue that the analyst reactions to reduced **solar** guidance suggest materiality. *See* Opp. at 18-19. In fact, not a single analyst report Plaintiffs rely upon refers only to solar. *See* ¶¶ 57; 69, 141-142, 144-146, 158-160, 162, 166, 171-174, 184 (alleging discussion of HSB in analyst reports); *see also* Ex. 16. The Opposition cites no authority to support the notion that such reactions to multiple news items can support materiality as to **one** of them. In any event, market reaction to disclosures "is by itself too blunt an instrument to be depended on in considering whether a fact is material." *Hutchison*, 647 F.3d at 490.[19]

In sum, the Court can and should again dismiss the SnapRS and Dealer Concentration theories for failure to plead materiality—as courts often do. *See, e.g.*, *Arora*, 671 F. Supp. 3d at 318 (dismissing misstatements on materiality grounds); *Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441, at \*7-22 (N.D. Ill. Mar. 30, 2022) (dismissing complaint for failure to plead materiality); *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 942 (N.D. Ill. 2015) (same).

---

[18] Contrary to Plaintiffs' argument, the waning pandemic was not already "baked into the stock price" because "no reasonable investor expected [it] to last forever." *See* Opp. at 18. As common sense and experience counsel, nobody was able to predict **when** the pandemic would end or **what** financial impact on the Company it would have.

[19] The Opposition's quote from *Ustian* (at 19) is misplaced—the court was making a non-controversial point that it can take judicial notice of analyst reports to determine what "information [was] available to investors during the relevant time period, *but not the truth of the matters asserted within the reports*." 229 F. Supp. 3d at 761-62 (emphasis added). The rest of the Opposition's authorities are factually inapposite because, in those, defendants intentionally lied or concealed material information in response to pointed analyst questions. *See Scholastic*, 252 F.3d at 76-77; *NVIDIA*, 81 F.4th at 926-27, 935-36, 940; *Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at \*6, \*10 (N.D. Ill. 2021). There are no such allegations here.

### 2. The SAC Fails To Plead That The SnapRS Statements Were False Or Misleading.

The Motion establishes that Plaintiffs made negligible changes to their SnapRS allegations and, as a result, the SAC again fails to plead any false or misleading statements. Mot. at 21-25. The Opposition responds that the SAC's *two* new allegations—regarding a CPSC report and SnapRS upgrades—resolve their pleading deficiencies and make the SAC more like the amended complaint in *Gogo II* than the complaint dismissed in *Gogo I*. Opp. at 26. Plaintiffs are wrong. The SAC makes no factual allegation to show that either Mr. Jagdfeld or Mr. Ragen knew of *any* widespread defect during the Class Period. Accordingly, neither new allegation affects the Court's holding that Plaintiffs failed to allege "sufficiently specific and detailed information about when *Defendants* were not only aware of the pervasiveness of the defect, but also that it would expose them to the increased liabilities, warranty claims, and reputational harm alleged." *See* FAC Order at 27 (emphasis in original; internal quotation omitted).

The Opposition's argument based on the SAC's first new allegation (at 26)—that "the Company reported the defect as 'significant' in November 2021"—misleads the Court on both the alleged facts and the law. Nowhere does the SAC allege that Generac reported a "significant" defect. The SAC alleges only that the Company reported a "*potential* defect" to the CPSC. ¶ 88 (emphasis added). This is because Plaintiffs are forced to concede that the standard for submitting a CPSC report is only whether a company obtains information that could reasonably support the existence of a product defect that "*could* create a substantial product hazard." *See* Opp. at 11 (citing 15 U.S.C. § 2064(b)) (emphasis added); Mot. at 23-24. In fact, the CPSC instructs that "[f]irms should clearly err on the side of over-reporting" (*United States v. Mirama Enters., Inc.*, 185 F. Supp. 2d 1148, 1158, 1160 (S.D. Cal. 2002), *aff'd*, 387 F.3d 983 (9th Cir. 2004)), and permits companies to deny that their products contain any defect. *See* Mot. at 24. The SAC's allegation does nothing to plead that a defect

existed *at all*, much less on a *widespread scale*, whether in November 2021 or at any other time. In addition, the Opposition does not respond to the Motion (at 29) or point to a single factual allegation to show that Mr. Jagdfeld or Mr. Ragen even knew or had reason to know of the CPSC report.

The Opposition's next argument based on the SAC's second new allegation (at 26)—that "Generac has replaced at least 500,000 defective SnapRS units"—again mischaracterizes the SAC. The SAC conspicuously does not allege that Generac replaced such quantities of SnapRS devices *before or during the Class Period*. Rather, the SAC alleges only that, in a later court filing, a Generac employee stated that the Company had replaced "more than 500,000 SnapRS 801 and 801A devices" *by October 2024*. ¶ 100 n.26. Thus, as the Motion explained, the SAC does not allege *when* the SnapRS replacement program began, much less that it occurred during the Class Period. Mot. at 25. The Opposition fails to respond to, and therefore concedes, that point and the Motion's additional point that a mere "goal" of replacing SnapRS devices does not plead a product defect of any magnitude or any Individual Defendants' awareness of such a defect. *See id*. at 24-25.

The Opposition's heavy reliance on *Gogo II* serves only to highlight the SAC's deficiencies. In *Gogo II*, the amended complaint added numerous new factual allegations—including facts supplied by five witnesses—detailing Gogo engineers' and executives' actual knowledge about the alleged product defect, and making clear that each individual defendant had such knowledge at the time of his challenged statements. 2021 WL 1608342, at \*2, \*6. For instance, the *Gogo II* court credited amended factual allegations from former employees specifically quantifying the scope of the defect and demonstrating that 12% of Gogo's fleet was experiencing problems "*prior* to the beginning of the class period," that company engineers had determined the cause of the problem *before* the class period, and that senior executives knew about the issue and attended weekly meetings concerning the issue *during* the class period. *Id*. (emphasis added). Here, by contrast, the

SAC includes no witness allegations, and its two new allegations do not plead when the purported problem manifested at scale or that either Individual Defendant knew of the issue at the time of his statements.[20]

Finally, the SAC's failure to allege that a widespread defect manifested during the Class Period also dooms Plaintiffs' argument that Generac's risk disclosures were misleading. *See* Opp. at 25-26. Companies warning of a hypothetical future risk are obligated to disclose information regarding the extent of that risk only when it attains "sufficient magnitude." *Gogo I*, 414 F. Supp. 3d at 1174; *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 35 (1st Cir. 2022). Unlike in *Gogo II*, where the company's "financial future was heavily dependent on the success of the [product]" (2021 WL 1608342, at *2), SnapRS sales made up only a tiny fraction of Generac's revenue, and there is no allegation to demonstrate that the SnapRS issue attained "sufficient magnitude" during the Class Period. *See supra* at 11.[21]

### 3. The SAC Fails To Plead That The Dealer Concentration Statements Were False Or Misleading.

While the SAC challenges nearly identical statements as those that the FAC challenged, the Opposition ignores Defendants' arguments that the SAC's few new allegations related to the Dealer Concentration Statements do nothing to address the deficiencies the Court previously identified— specifically that the majority of statements "do not relate specifically to Generac's solar products" and none "speaks to the concentration or lack of concentration of sales in or among Generac's

---

[20] Plaintiffs' recycled allegation of a "50% failure rate"—which the Court has already found insufficient (*see* FAC Order at 26-27)—is unlike the 12% rate in *Gogo II* both because Plaintiffs never assert that that alleged failure rate manifested ***during the Class Period*** and because the allegation applies to one product within one small Generac division, unlike Gogo's flagship product.

[21] Plaintiffs' other authorities are inapposite. No disclosure was specific to SnapRS (or even mentioned SnapRS), and there is no allegation that Defendants engaged in illegal activity. *See In re Facebook, Inc. Secs. Litig.*, 87 F.4th 934, 948-49 (9th Cir. 2023) (disclosures warned against risk of improper third-party access to user data without disclosing known improper access to that specific data); *Allison v. Oak St. Health*, 2023 WL 1928119, at *7 (N.D. Ill. Feb. 10, 2023) (noting, in passage Opposition omitted, that general warnings do not "satisfy the duty to disclose specific illegal activities").

PWRcell product dealers." *See* FAC Order at 29-30; Mot. at 25-27.

Rather than challenging the arguments the Motion actually makes, the Opposition first asserts that Defendants had a duty to disclose the amount of concentration, but points to no allegation or case law supporting that assertion. *See* Opp. at 26-27. The Opposition cites a single out-of-circuit case and then suggests a hard-and-fast rule that concentration rates above 30% require disclosure. *Id.* Plaintiffs misread that case. *Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.* addressed a test for the duty to disclose under Item 303 of Regulation S-K. 94 F. Supp. 3d 1035, 1048 (D. Minn. 2015). That test is irrelevant here, as the SAC dropped Plaintiffs' claim alleging Regulation S-K violations. *See* ECF No. 66.[22]

Next, the Opposition (at 27) points to new allegations about analyst reports but, as the Motion explains (at 26-27), these allegations cannot overcome the Court's holding that the statements do not speak to concentration. *See* FAC Order at 29-30.[23] Statements about dealer numbers do not address concentration; they are relevant to other issues, including sales growth and geographic reach. *See* Opp. at 14 (quoting statement that dealer numbers are related to "supporting . . . rapid growth"). Plaintiffs *still* conflate Defendants' actual statements with claims about "diversification" (*see id.* at 15) but they do not, and cannot, contest that Defendants said nothing about "diversification." Also, the fact that some analysts commented with hindsight that they did not fully appreciate Pink Energy was a "material customer in the solar business" (*see id.*) does not reflect on the truthfulness of statements unrelated to concentration. *See, e.g.*, *McDonald v. Compellent Techs., Inc.*, 2011 WL

---

[22] *Beaver County* also involved 32% of *entire* company sales, not sales in one small division. *Id.*

[23] Plaintiffs' non-binding authorities (Opp. at 27) are not to the contrary. *Berson* does not address sales concentration, and the defendant there made statements that confused stockholders by mixing unlike categories in a manner that has no parallel here. 527 F.3d at 986-87. In *In re Obalon Therapeutics, Inc.*, omission of concentrated sales of the company's *sole* product rendered statements about the company's overall *financial state* misleading, not statements about its dealer network. 2019 WL 4729461, at *7-8 (S.D. Cal. Sept. 25, 2019).

13228408, at *10 n.5 (D. Minn. Aug. 3, 2011) ("[T]o the extent that analysts made inaccurate predictions based on truthful statements by Compellent, the complaint's allegations would not support a finding that Compellent was so 'entangled' with the analysts that Compellent assumed a duty to correct those predictions."). Plaintiffs give the Court no reason to reconsider its analysis of the same Dealer Concentration Statements its FAC Order previously addressed.

### 4. The SAC Fails To Plead Scienter As To The SnapRS And Dealer Concentration Statements.

As with the HSB Statements, the SAC lacks *particularized facts* that either Mr. Jagdfeld or Mr. Ragen knew or recklessly disregarded that any SnapRS or Dealer Concentration Statement was false or misleading. Notably, the Opposition does not even attempt to defend the SAC's failure to plead any particularized facts regarding Mr. Ragen's knowledge, and all claims against him should therefore be dismissed. *See* Opp. at 27-37; *see also* ¶¶ 212-13.

As to Mr. Jagdfeld, the Opposition's arguments fail for the same reason the overall claims fail—the SAC does not allege that he knew of the SnapRS issues or dealer concentration *at the time* of the challenged statements.[24] The Opposition insists that Mr. Jagdfeld admitted to being aware of attempts to fix the SnapRS issue. Opp. at 36. But the Court already rejected this argument. *See* FAC Order at 27; Mot. at 28. The CPSC report allegation is also a non-starter, as explained above, including because there is no allegation that Mr. Jagdfeld even knew about the CPSC report. *See supra* at 16; Mot. at 23-24.[25] Regarding the Dealer Concentration Statements, while the Opposition

---

[24] For this reason, *Fugman* is a red herring. There, the court found scienter because the complaint pleaded facts showing that defendants *knew*, despite their statements to the contrary, that the company's product was never marketable. 961 F. Supp. at 1195-96.

[25] Contrary to the Opposition's claim (at 33), the SAC does not allege that either Mr. Ragen or Mr. Jagdfeld regularly monitored SnapRS issues. Rather, the SAC alleges only that a *Product Safety Committee* regularly reviewed safety concerns related to Generac products, but does not allege that it reviewed concerns about SnapRS, or that either Mr. Jagdfeld or Mr. Ragen was on that committee. To the extent the Opposition is referring to the SAC's allegations regarding the Powerplay CE tool

misleadingly claims Mr. Jagdfeld "admitted tracking solar dealer sales" (at 36), nowhere does the SAC allege that. And Mr. Jagfeld's post-Class Period statement that Generac should diversify its customer base going forward does not show that Mr. Jagdfeld *knew* sales were purportedly concentrated in Pink Energy *at the time* of the challenged statements, much less that his statements—which did not even discuss dealer concentration—were misleading.[26]

### 5. The SAC Fails To Plead Loss Causation As To The SnapRS And Dealer Concentration Statements.

Plaintiffs' loss causation arguments as to SnapRS and Dealer Concentration fail for the same reasons that they fail as to HSB. *See supra* at 10-11. The four alleged corrective disclosures concerned customer complaints about SnapRS and Pink Energy's shutdown as a dealer, but have no connection to the challenged statements regarding Generac's overall, generalized safety functions and dealer base. *See* Mot. at 29-30; *also Fairfax*, 886 F. Supp. 2d at 338.

### C. The Section 20(a) Claim Should Also Be Dismissed.

The Opposition does not dispute that the Section 20(a) claim rises and falls with the Section 10(b) claim. *See* Opp. at 40. Because the SAC fails to plead a Section 10(b) claim, the Court also should dismiss the Section 20(a) claim.

### III. CONCLUSION

The Opposition confirms that the SAC fails to cure the pleading deficiencies that the Court previously identified, and that further amendments would thus be futile. Accordingly, the SAC should be dismissed in its entirety and with prejudice.

---

(¶ 181), the SAC does not allege that, *at the time of the statements*, Powerplay could be used to compare dealers' respective shares of PWRcell, that Mr. Jagdfeld regularly monitored that tool, or that it showed Generac's sales were highly concentrated in Pink Energy. *See* Mot. at 27-28.

[26] The statement that no single customer provided more than 6% of Company's total sales in 2021 (¶ 129(a)) cannot support an inference of scienter because it is simply not misleading—of course, Pink Energy did not account for more than 6% of Generac's total sales, not even clean energy as a whole did. *See* Opp. at 28 (conceding that statements that are not misleading do not support scienter).

20

Dated: July 30, 2025                    Respectfully submitted,


By: _____
Glenn K. Vanzura
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
(310) 855-3000
gvanzura@willkie.com


By: _____
Jacqueline M. Vallette
**MAYER BROWN LLP**
700 Louisiana Street, Suite 3400
Houston, TX 77002
(713) 238-3000
jvallette@mayerbrown.com

Joseph De Simone
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2559
jdesimone@mayerbrown.com

Andrew J. Spadafora
**MAYER BROWN LLP**
1999 K Street NW
Washington, DC 20006
(202) 263-3043
aspadafora@mayerbrown.com

*Counsel for Defendants Generac Holdings Inc.,*
*Aaron Jagdfeld, and York A. Ragen*